# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TEXAS PELLETS, INC.,[1] | ) | Case No. 16-_____ |
| | ) | |
| Debtor. | ) | (Request for Joint Administration Pending) |
| | ) | |

**DEBTORS' _EMERGENCY_ MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING; (2) AUTHORIZING DEBTORS IN POSSESSION TO USE CASH COLLATERAL; (3) PROVIDING ADEQUATE PROTECTION; AND (4) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**NOTWITHSTANDING THE ABOVE, DEBTOR PLANS TO REQUEST AN EMERGENCY HEARING ON THIS MOTION.**

Texas Pellets, Inc. ("LPI") and German Pellets Texas, LLC ("GPTX"; and together with TPI, the "Debtors"), as debtors and debtors in possession in the above-captioned cases (together, the "Chapter 11 Case"), hereby file their Emergency Motion ("Motion") for Interim Order and Final

---

[1] The last four digits of the Debtor's Federal Tax Identification Number of **Texas Pellets, Inc**. is 3478.  The Debtor's principal place of business and service address is 164 County Road 1040, Woodville, Texas 75979.

46571509v.4
183459v.1

Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Debtors in Possession to Use Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims (the "Motion"), pursuant to sections 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to authorize the Debtors to obtain debtor in possession financing from UMB Bank, National Association, as successor trustee (the "Bond Trustee") in an interim amount not to exceed $3,434,000 (the "DIP Facility"), pursuant to the terms and conditions set forth in the form of an interim order attached hereto (the "Interim Order"[2]) and possible additional amounts under a Final Order as set forth below.  In further support of the Motion, the Debtors respectfully state:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 364 and 105, 362, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Interim Order.

2

## II.
## INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

4. The Debtors file this Motion for approval of an interim and final order to approve a debtor in possession financing facility extended by the Bond Trustee, as well as for agreed use of cash collateral pursuant to the agreed Budget (as defined below). The debtor in possession financing facility and use of cash collateral will allow the Debtors to cover their necessary operating expenses and ensure continued normal business operations of their wood pellet mill facility, to preserve and enhance the value of the Debtors' assets.

## III.
## BACKGROUND

5. On April 30, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Texas (the "Court") commencing the Chapter 11 Case. The factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the Davis Declaration, filed on the Petition Date and fully incorporated by reference.

6. The Debtors have continued in possession of their properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. No trustee or examiner has been appointed in the Chapter 11 Case, and no committees have yet been appointed or designated.

8. TPI is the owner and developer of a solid waste disposal and wood biomass pellet manufacturing facility located in Woodville, Tyler County, Texas (the "Manufacturing Facility"),

3

and a five-silo pellet storage facility located at Port Arthur, Texas (the "Storage Facility"; and together with the Manufacturing Facility, the "Facility").

9.  GPTX is the operator of the Facility and leases the Facility, pursuant to that certain Facilities License Agreement, dated July 25, 2012 (the "Operator License"), by and between TPI and GPTX. Under the Operator License, GPTX received a license to operate the Facility to manufacture and sell wood biomass pellets as part of one operational project (the "Project").

10. TPI is a party to that certain Ground Lease by and between Port of Port Arthur Navigation District of Jefferson County, Texas, as lessor, and TPI as lessee, dated February 28, 2012 (as amended and supplemented from time to time, the "Ground Lease"), pursuant to which TPI leases certain real and personal property located at Port Arthur as a wood pellet warehouse, storage, and loading facility. The Ground Lease is for an initial 20-year term and granted to TPI a right of first refusal to purchase the property subject to the lease.

11. TPI (as assignee of GPTX) is a party to that certain Agreement for the Sale and Purchase of Biomass FOB Loading Port, dated as of March 29, 2012, by and between Drax Power Limited ("Drax") and GPTX (as amended and supplemented from time to time, the "Drax Contract"). Under the Drax Contract, Drax has agreed to purchase a set amount of pellets per year with an option to increase or decrease its pellet purchase amount up to a certain percentage of the original purchase amount. The receipts from the Drax Contract are deposited into the Revenue Fund held under the Indenture, which are used, among other things, to fund the debt service obligations on the Bonds (ad defined herein) under the Indenture.

12. Prior to the Petition Date, the Debtors experienced an acute liquidity crisis by which they required sufficient funds in order to operate in the weeks leading up to filing the within Chapter 11 Case. The Debtors approached the Bond Trustee on behalf of the holders of the Bonds

and requested an emergency loan sufficient to fund the acute liquidity needs of the Debtors in the three weeks prior to the Petition Date.[3]  The Bond Trustee agreed to provide an emergency loan in the aggregate amount of $1,507,275 to bridge the Debtors into an orderly commencement of the Chapter 11 Case (the "Bridge Loan").  The Bridge Loan is fully secured by valid, perfected liens on assets of the Debtors and are entitled to priority in repayment ahead of all other obligations under the Bond Documents.

13. The Interim and Final Orders submitted herewith will provide for repayment in full of the Bridge Loan from the proceeds of the DIP Loans.

## IV.
## RELIEF REQUESTED

14. By this Motion, the Debtors request authority to enter into the DIP Facility on an interim basis (and subject to the Final Hearing, on a final basis), by which the Bond Trustee, as DIP lender, will provide a postpetition loan to the Debtors up to in an interim amount of $3,434,000 and additional amounts which may be agreed upon by the Debtors and the Bond Trustee (each, a "DIP Loan"; and collectively, the "DIP Loans"), provided, however, that the Debtors shall use the proceeds of the DIP Loans solely in compliance with the budget attached hereto as **Exhibit A** and incorporated herein by reference (the "Budget").

15. In addition to the request to enter into the DIP Loan, the Debtors have requested the use of the cash collateral (as defined in section 363(a) of the Bankruptcy Code) constituting proceeds of accounts and revenues from operations of the Facilities of the Bond Trustee in

---

[3] The Bond Trustee on behalf of the holders of the Bonds funded additional amounts to the Debtors prior to the three week period before the Petition Date.  The Debtors and Bond Trustee are limiting the Bridge Loan to the emergency loans made to the Debtors in the three weeks prior to the Petition Date.

5

connection with the Chapter 11 Case (the "Cash Collateral"). The Bond Trustee does not consent to the use of its Cash Collateral, except upon the express terms of the Interim Order and Final Order. Without the use of Cash Collateral, it would disrupt the Debtors as a going concern, the value of the underlying assets would significantly decline, and would not be in the best interest of the Debtors, their estate, or their creditors.

16. The Debtors expressly acknowledge that at the expiration of the Interim Order, the Bond Trustee, in its sole and absolute discretion and subject to entry of the Final Order, may continue to advance funds under the DIP Facility, up to a maximum amount as established and agreed to between the parties. The Debtors further expressly acknowledge that there is no obligation by the Bond Trustee to continue funding upon expiration of the Interim Order.

17. The Debtors have determined that they are unable to obtain secured credit from sources other than the Bond Trustee that would be allowable under sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code for the purposes set forth in the Interim Order. Further, the Bond Trustee would not consent to any priming liens except as set forth in the Interim Order, asserting that the Debtors could not have provided adequate protection for any such proposed financing.

18. The Bond Trustee has agreed to provide the requested DIP Loan under the DIP Facility and use of Cash Collateral in accordance with the terms contained in the Interim Order, including in the amounts, categories and times set forth in the Budget, which shall be used on an interim basis for: (i) operational expenses of the Debtors and the Facility; (ii) repayment of the Bridge Loan in full; and (iii) other costs and expenses of administration of the Chapter 11 Case.

19. Further, the Debtors seek authority under this Motion to enter into additional DIP Loans in amounts which may be agreed upon between the Debtors and the Bond Trustee and submitted in advance of the Final Hearing on the Motion.

20. Without the DIP Loan and use of Cash Collateral, the Debtors will be unable to pay its necessary preservation and maintenance costs, payroll and other operating expenses, and obtain goods and services needed to preserve the Facility in a manner that will avoid irreparable harm to the Debtors' estates. At this time, the Debtors' ability to finance the preservation and maintenance of their assets and the availability of sufficient liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations as provided herein are vital to the preservation of the Facility and maintenance of the going concern value of the Debtors' estates.

21. The Bond Trustee has indicated its willingness to provide the DIP Loans and allow the use of Cash Collateral, subject to the terms and conditions set forth in the Interim Order. The Bond Trustee's lending of the DIP Loans is conditioned upon the grant of a lien that (a) will prime and remain senior to the Prepetition Liens; and (b) will otherwise constitute a first priority lien in all other Postpetition Collateral, subject only to (i) valid, binding, enforceable and perfected liens, having priority over the liens of the Bond Trustee as of the Petition Date that are set forth on Schedule 1 to the Interim Order, and (ii) the Carve-Out.

22. The terms of the DIP Loan and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and the Bond Trustee. The terms of the DIP Loan are at least as favorable to the Debtors as those available from alternative sources, under all of the circumstances. Given the current market conditions and under the particular circumstances of the Chapter 11 Case, there are no other sources of funding. Given the exigencies of the case, the Debtors believe the DIP Facility is the best and only option. In connection with its consent to this

7

Interim Order, the Debtors acknowledge and agree that the Bond Trustee exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs and the Bond Trustee acted consistent with its duties and responsibilities under, and entry of the Interim Order does not violate, the terms of any agreement relating to the Bonds.

23. The terms for the proposed DIP Facility and use of Cash Collateral are set forth in the Interim Order and the principal terms are summarized as follows:[4]

| | |
|---|---|
| Borrowers: | Texas Pellets, Inc. and German Pellets Texas, LLC |
| Lender: | UMB Bank, National Association, as successor trustee with respect to the Sanger Texas Industrial Development Corporation Industrial Development Revenue Bonds (Texas Pellets Project), Series 2012B and 2012C issued under that certain Indenture of Trust, dated as of August 1, 2012 |
| DIP Facility: | A credit facility, with an interim amount disbursed up to $3,434,000. All DIP Loans shall be subject to the Budget. |
| Use of Proceeds: | DIP Loan proceeds shall be used on an interim basis exclusively for (i) the necessary operation and maintenance costs associated with the Project in the amounts and categories and time set forth in the Budget; (ii) other costs and expenses of administration of the Chapter 11 Case as set forth in the Budget. |
| Use of Cash Collateral: | The Debtors' use of Cash Collateral shall be solely as set forth in the Budget and as otherwise provided in this Interim Order for: (i) the necessary operation and maintenance costs associated with the Project in the amounts and categories and time set forth in the Budget; (ii) repayment of the Bridge Loan in full; and (iii) other costs and expenses of administration of the Chapter 11 Case as set forth in the Budget. Use of Cash Collateral other than as set forth in this Interim Order, including in accordance with the Budget, shall be strictly prohibited. |

---

[4] To the extent the following summaries and descriptions in the Motion conflict with the express provisions of the Interim Order, the Interim Order shall control.

| | |
|---|---|
| Interest and Fees: | The DIP Loans under the Interim Order shall not accrue under the Interim Order. Under the Final Order, however, the DIP Loans will accrue interest at a rate equal to [TBD]% per annum based upon the principal amount of necessary bonds issued to fund the DIP Loans, in the aggregate, under the Final Order.<br><br>Upon the occurrence of an Event of Default, the DIP Loans shall accrue interest at a default rate of interest equal to 2% over the Applicable Rate and such interest will be payable on demand. |
| Maturity Date: | The earliest to occur of the following: (i) the occurrence of an Event of Default; and (ii) May 31, 2016. |
| Security and Priority to Bond Trustee for DIP Loans: | Postpetition Liens granted pursuant to Bankruptcy Code sections 364(c)(2), (c)(3) and (d) in the Postpetition Collateral, consisting of all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, excluding Avoidance Actions (pending Final Order).<br><br>A Superpriority Claim pursuant to Bankruptcy Code section 364(c)(1), having priority over all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (subject only to Carve-Out).<br><br>The Postpetition Liens and Superpriority Claim granted to the Bond Trustee are subject only to the Carve-Out. |
| Adequate Protection to Bond Trustee for Prepetition Liens and Bond Claim: | The Bond Trustee will receive: (a) Rollover Liens, (b) Supplemental Liens, (c) Prepetition Superpriority Claim, (d) Financial Reports, and (e) covenant to comply with certain terms of the Bond Documents (subject only to Carve-Out).<br><br>In addition, the Bond Trustee, for the benefit of holders of the Bonds, shall be entitled to interest payments at the non-default contract rate (provided, however, that the Bond Trustee reserves the right to assert interest at the default rate in connection with any claims asserted in the Chapter 11 Case), which shall be accrued in accordance with the Bond Documents and payable pursuant to the Budget (the "Adequate Protection Payments") |

9

| | |
|---|---|
| <u>Carve Out:</u> | (a) $100,000 for the sole benefit of the estate professionals (to the extent of any unpaid amounts set forth in the Budget at the time of a Termination Event, and subject to approval by the Court), and (b) the payment of fees pursuant to 28 U.S.C. § 1930. |
| <u>Milestones:</u> | (i) On or before May 8, 2016, the Debtors shall file a motion with the Bankruptcy Court seeking the retention of an independent Chief Restructuring Officer (the "<u>CRO</u>") acceptable to the Bond Trustee, upon such terms and conditions of retention acceptable to Debtors and the Bond Trustee. Such terms and conditions shall provide that the CRO shall, among other things, and subject to his business judgment and fiduciary responsibilities and with the assistance of the Debtors' executive officers, assume a lead management position in guiding the Debtors through their reorganization efforts and the evaluation, development, negotiation and implementation of such restructuring efforts, provide advisory services, management of the Project and Debtors' business, facilitate, assist in the development and implementation of an affiliation or sale, if any, of substantially all assets under the Bankruptcy Code; |
| | (ii) The Bankruptcy Court shall have entered an order no later than May 15, 2016, in form and substance satisfactory to the Bond Trustee authorizing the Debtors' retention of the CRO; |
| | (iii) On or before July 11, 2016, the Debtors shall file a motion with the Bankruptcy Court seeking the retention (the "<u>IB Motion</u>") of an investment banker (the "<u>IB</u>") acceptable to the Bond Trustee, upon such terms and conditions of retention acceptable to the Debtors and Bond Trustee to solicit offers relating to the affiliation or acquisition of the Project through a section 363 sale or as a plan sponsor under a plan of reorganization; <u>provided</u>, <u>however</u>, that the obligation to file the IB Motion shall be suspended to the extent the Bond Trustee receives a term sheet in form and substance acceptable to the Bond Trustee in its sole and absolute discretion that provides for the refinancing/restructuring of the Bonds and the process for consummation of such refinancing/restructuring within a time period acceptable to the Bond Trustee; |

10

| | | |
|---|---|---|
| | (iv) | Subject to the proviso in subsection (iii) above, the Bankruptcy Court shall have entered an order no later than August 1, 2016, in form and substance satisfactory to the Bond Trustee approving the IB Motion; |
| | (v) | On Tuesday of each week (or such other day as may be agreed upon by the parties) the Debtors, CRO and IB (if/when approved) shall make available representatives reasonably acceptable to the Bond Trustee for a telephone conference call with the Bond Trustee, holders of the Bonds, and their respective agents, advisors and/or representatives to discuss the cash flows, operations, the marketing, affiliation or acquisition process of the Project, and such other matters as are relevant or are reasonably requested by the Bond Trustee; and |
| | (vi) | On or before fourteen days after approval of the IB Motion, the Debtors and the Bond Trustee shall have agreed to a marketing and sale process with specific further milestone dates acceptable to the Bond Trustee. |
| <u>506(c) Waiver</u> | | Except to the extent of the Carve-Out, subject to entry of the Final Order no expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Postpetition Collateral, the Prepetition Collateral or collateral subject to Rollover Liens and Supplemental Liens, pursuant to section 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Bond Trustee and no such consent shall be implied from any other action, inaction, or acquiescence by the Bond Trustee. |

## V.
## BASIS FOR RELIEF REQUESTED

24. Pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the Debtors request that the Court authorize the Debtors to enter into the DIP Loan as set forth in the Interim Order, which will provide for emergency funds necessary for the preservation and maintenance of the Facility and Project including to provide for payroll, insurance, and other basic operating expenses, all subject to the Budget.

11

25. The Debtors have determined that they are unable to obtain financing in another manner, or on any terms superior to those in the Interim Order. The Debtors submit that obtaining the Interim Order is necessary to fund their postpetition operating expenses for preservation and maintenance and allows the Debtors to successfully pursue a reorganization or disposition of their assets as a going concern.

26. The Debtors request the Court enter the Interim Order as soon as practicable to allow the Debtors access to the funds necessary to cover operational expenses; and that the Court schedule a Final Hearing on the matter with notice to creditors. Without the DIP Loan, the Debtors will be unable to pay its necessary payroll and other operating expenses, and obtain goods and services needed to preserve and operate the Facility in a manner that will avoid irreparable harm to the Debtors' estates.

27. The terms of the DIP Loan have been negotiated in good faith and at arm's length among the Debtors and the Bond Trustee. The terms of the DIP Loan are more favorable to the Debtors than those available (if any) from alternative sources, under all of the circumstances. Given the current market conditions and under the particular circumstances of the Chapter 11 Case, there are no other sources of funding. Given the exigencies of the case, the Debtors believe the DIP Loan is the best and only option.

28. Pursuant to this Motion and the Final Hearing under this Motion, the Debtors will further request entry of a Final Order concerning potential additional financing (beyond the 30-day period under the Interim Order) under an amended and extended Budget, details of which are currently being discussed. To the extent agreed upon, the amended longer term form of Budget will be filed and presented to the Court and parties in interest as soon as possible.

29. Regarding use of Cash Collateral, the Debtors' use of property of their estates, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

30. It is essential to the Debtors' successful reorganization and the going concern value of their businesses that they have sufficient funds to operate in the ordinary course, and at a level that is on par with their prepetition performance. Absent the use of Cash Collateral (in conjunction with the DIP Facility), the Debtors will not have sufficient working capital to (a) make payments to employees, vendors, or suppliers, (b) satisfy ordinary operating costs, and (c) fund the administrative costs of these chapter 11 cases. Accordingly, the Debtors submit that the use of Cash Collateral under the terms set forth herein and in the Interim and Final Order, is in the best interests of the Debtors' estates and should be approved.

31. Pursuant to section 363(c) of the Bankruptcy Code, the Debtors may only use Cash Collateral, either subject to the consent of the Bond Trustee or the grant of adequate protection. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

32. The Bond Trustee has agreed to consent to the use of Cash Collateral, but only under the terms set forth above including adequate protection as set forth above. The Debtors submit that such terms are reasonable and should be approved.

13

# VI.
# NOTICE

33. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002 and 3017; (iii) counsel for and the members of any committees appointed by this Court; (iv) Daniel S. Bleck, Esq., of Mintz Levin, counsel to UMB Bank, National Association, as Bond Trustee; (v) the twenty (20) largest unsecured creditors of each Debtor; and (vi) governmental agencies having a regulatory or statutory interest in these cases. In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtors submit that no further notice is necessary.

# VII.
# NO PRIOR REQUEST

34. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order, in substantially the same form as that attached, granting the relief requested herein; (ii) schedule a Final Hearing on the Motion at the Court's convenience; and (iii) provide such other relief as the Court deems appropriate and just.

Dated: May 2, 2016.                           Respectfully submitted,

                                              __/s/ W. Steven Bryant_____
                                              W. Steven Bryant
                                              Texas Bar. No. 24027413
                                              Federal I.D. No. 32913
                                              Locke Lord LLP
                                              2800 JP Morgan Chase Tower
                                              600 Travis Street
                                              Houston, Texas 77002

Telephone: (713) 226-1489
Fax: (713) 229-2536
sbryant@lockelord.com

-and-

C. Davin Boldissar (La. #29094)
*(pro hac vice motion to be filed)*
Bradley C. Knapp (Tex. #24060101)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 681-5211
dboldissar@lockelord.com
bknapp@lockelord.com

**PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

46571509v.4
183459v.1