

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| TEXAS PELLETS, INC.[1] | ) | under Case No. 16-90126 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

## ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN BRYAN M. GASTON AS CHIEF RESTRUCTURING OFFICER AND THE FIRM OF OPPORTUNE, LLP
### [Relates to dkt #64]

Upon the *Expedited Application of Debtors Pursuant to Section 363(B) of the Bankruptcy Code to Employ and Retain Bryan M. Gaston as Chief Restructuring Officer* ("CRO") *and the Firm of Opportune, LLP* [dkt #64] the "Application")[2] of the Debtors for an order, pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to employ and retain Bryan M. Gaston ("Mr. Gaston") as Chief Restructuring Officer ("CRO") and the firm of Opportune, LLP ("Opportune"), all as more fully described in the Application, the Court finds that on May 10, 2016, it shortened the response time to the Application to May 20, 2016 and provided notice that no actual hearing would be conducted on the Application unless an objection was filed. The Court finds that, although the U.S. Trustee filed a comment to the Application, no actual objection was filed by the court-imposed deadline. In that regard, the Court further finds that due and proper notice of the Application and the accelerated objection deadline was provided to (i) the Office of the United States Trustee for the Eastern District of Texas; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002 and 3017;



---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are Texas Pellets, Inc. (3478) and German Pellets Texas, LLC (9084). The corporate headquarters and service address for the jointly-administered is: 164 CR 1040, Woodville, TX 75979.

[2] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Application.

(iii) counsel for and the members of any committees appointed by this Court; (iv) Daniel S. Bleck, Esq., of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., as counsel to UMB Bank, National Association, as Bond Trustee; (v) the twenty (20) largest unsecured creditors for both Debtor on a consolidated basis; and (vi) governmental agencies having a regulatory or statutory interest in these cases (collectively, the "Notice Parties"); and it appearing that no other or further notice need be provided; and, if necessary; and upon the *Declaration of Mr. Gaston in Support of Emergency Application of Debtors Pursuant to Section 363(b) of the Bankruptcy Code to Employ and Retain Bryan Gaston as Chief Restructuring Officer and the Firm of Opportune* (the "Gaston Declaration"), annexed to the Application as Exhibit B; and the Court having found and determined that Opportune does not hold or represent an interest adverse to the Debtors' estates and that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1.      The Application is hereby **GRANTED** to the extent set forth herein

2.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to employ and retain Mr. Gaston as CRO and the firm of Opportune, in accordance with the terms and conditions set forth in the Engagement Letter annexed to the Application as Exhibit A.

3.      Upon employment and retention by the Debtors, Mr. Gaston shall be empowered and authorized to carry out all duties and responsibilities set forth in the Engagement Letter.

4.      Mr. Gaston shall serve as the CRO for the Debtors, commencing from the date of this Order until further order of this Court. Mr. Gaston may be assisted in his duties by other

representatives of Opportune and collectively Mr. Gaston and Opportune will provide, in an efficient, prudent and diligent manner, all of the Services as set forth in the Application, subject to any required further orders of the Court.

5.      In addition to the Services set forth in the Application, the CRO shall have control of the Debtors' cash management system including primary check signing authority (or other similar authority for wire transfers), overseeing receipts and payments of vendor invoices (subject to any orders of this Court), reconciling the Debtors' bank statements and otherwise having authority over the Debtors' receipts and disbursements.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or any exhibits thereto, the engagement of Mr. Gaston and Opportune is subject to the following terms:

(a)     Opportune and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator or investor/acquirer) in connection with the Bankruptcy Cases absent Court approval by separate motion;

(b)     In the event the Debtors seek to have Opportune personnel assume executive officer positions that are different than the positions disclosed in the Application or to materially change the terms of the engagement by either (i) materially modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

(c)     Mr. Gaston and Opportune shall, no later than thirty (30) days after the entry date of this Order, file with the Court a budget and staffing plan for this engagement ("Initial Budget") and, contemporaneously with such filing, shall serve copies of such Initial Budget on (i) the Office of the United States Trustee for the Eastern District of Texas (the "U.S. Trustee"), (ii) counsel for and the members of any committees appointed by this Court; (iii) Daniel S. Bleck, Esq., of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., as counsel to UMB Bank, National Association, as Bond Trustee; and (iv) the twenty (20) largest unsecured creditors for the Debtors on a consolidated basis (collectively, the "Notice Parties"). The Initial Budget must detail the initial staffing and anticipated monthly fees and expenses for the period from April 30, 2016 through July 31, 2016 ("Initial Period"). Every sixty (60) days thereafter, Mr. Gaston and Opportune shall file with the Court and serve on the Notice Parties a budget and staffing plan ("Subsequent Budget") for the next upcoming 60-day period, with such

Subsequent Budget to include the same information for that next upcoming 60-day period as was included in the Initial Budget for the Initial Period. Such Subsequent Budget for the next upcoming 60-day period must be filed no later than five (5) days before the conclusion of the-then current sixty-day period. (For purposes of clarification, the first Subsequent Budget for the period of August 1, 2016 through September 30, 2016 shall be due by July 26, 2016.);

(d)      Mr. Gaston and Opportune shall, no later than five (5) days after the end of each month, file with the Court and serve on the Notice Parties a report ("Fee/Expense Report") on the staffing of the engagement and compensation earned and expenses incurred for the previous month. Such Fee/Expense Report shall include the names and functions filled by the individuals assigned and a summary chart that describes the compensation earned by each executive officer and staff employee and itemizes the expenses incurred for the relevant period. All time records shall (i) be appended to such reports, (ii) contain detailed time entries describing the task(s) performed and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in increments of one-tenth of an hour and corresponding charge (multiplied by hourly rate) for each task. The Notice Parties shall have twenty-one (21) days after the date such Fee/Expense Report is served to object, and if no objection is filed, then the Debtors may pay such fees and reimburse such expenses. In the event an objection is raised to a Fee/Expense Report and not consensually resolved by the Debtors and the objecting party, the objected-to portion of the Fee/Expense Report shall be subject to review by the Court. No hearing shall be set on such Fee/Expense Report unless a formal Request for Hearing is filed with the Court. No payments shall be made to Opportune or Mr. Gaston on account of the objected-to  portion  of  such Fee/Expense Report until such objection is resolved;

(e)      If the fees and/or expenses set forth in a given Fee/Expense Report deviate by more than fifteen percent (15%) from the amounts budgeted for the month covered by such Fee/Expense Report in the Initial Budget or any Subsequent Budget, as the case may be, then Mr. Gaston and Opportune shall file with the Court and serve on the Notice Parties an explanation of this deviation at the same time as Mr. Gaston and Opportune file such Fee/Expense Report; provided, however, notwithstanding anything to the contrary herein, payments made by the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the terms of any order authorizing the use of cash collateral and/or debtor in possession financing, including any budget thereunder.

(f)      During the course of these Bankruptcy Cases, Mr. Gaston and Opportune will only seek reimbursement of actual and necessary expenses itemized in the Fee/Expense Report;

(g)      No principal, employee or independent contractor of Opportune and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the Bankruptcy Cases;

(h)      Success fees or other back-end fees, if any are provided for in the Engagement Letter, shall be subject to approval by the Court only at the conclusion of

**Page 4 of 8**

the Bankruptcy Cases on a reasonableness standard and shall not be pre-approved under section 328(a) of the Bankruptcy Code. No success fee or back-end fee shall be sought upon conversion of the Bankruptcy Cases, dismissal of the Bankruptcy Cases for cause or appointment of a trustee.

(i)     The Debtors are permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws, operating agreements and applicable state law, along with insurance coverage under the Debtors' D&O policy(ies);

(j)     For a period of three years after the conclusion of the engagement, neither Opportune nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors;

(k)     There shall be no indemnification of Opportune, its affiliates and/or personnel of Opportune who are not serving as corporate officers of the Debtors;

(l)     Opportune shall not assign any tasks for which Opportune is responsible to any person or entity other than employees of Opportune or its affiliates other than for ministerial tasks for which Opportune is not entitled to compensation hereunder. For the avoidance of doubt, this subparagraph (l) is meant solely to restrict Opportune's ability to legally assign and/or subcontract its obligations and is not meant to prohibit Opportune personnel from assigning tasks in the course of their role (i.e., as CRO) to the Debtors' other personnel, professionals, and contractors;

(m)     Absent a termination for "Good Reason," Mr. Gaston and Opportune shall provide at least fourteen (14) days' written notice to the Debtors of Opportune's intention to terminate the engagement. "Good Reason" shall mean the Debtors' misrepresentation of or failure to disclose material facts, failure to pay fees or expenses when due (or circumstances indicating to Opportune that fees or expenses will not be paid when due), circumstances such that it is unethical or unreasonably difficult for Opportune personnel to continue performance of the related services, or other just cause;

(n)     Opportune personnel serving as corporate officers of the Debtors shall be subject to the same fiduciary duties and obligations applicable to other persons serving in such capacity;

(o)     Any language that caps the liability or obligations on contribution of an Indemnified Person (as such term is defined in the Engagement Letter) shall be deemed stricken in its entirety during the pendency of these Bankruptcy Cases;

(p)     Mr. Gaston and Opportune shall follow the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Bankruptcy Court regarding limitations on reimbursement of expenses, and all such reimbursements of expenses of Mr. Gaston and Opportune shall be subject to *the Guidelines for Compensation and Expense Reimbursement of Professionals in Complex*

*Chapter 11 Cases* then applicable in this district;

(q)     Mr. Gaston and Opportune shall make appropriate disclosures of any and all facts that may have a bearing on whether Mr. Gaston, Opportune, its affiliates and/or any individuals working on the engagement have any conflict of interest with or hold/represent a material adverse interest to, the Debtors, their creditors or other parties in interest. The obligation to disclose identified in this subparagraph (q) is a continuing obligation; and

(r)     Mr. Gaston and Opportune shall not increase their applicable billing rates during this engagement based solely upon the fact that Mr. Gaston, Opportune, and/or any of Opportune's other representatives or employees may be called to testify during any proceedings in these Bankruptcy Cases.

7.     Notwithstanding any language in the Engagement Letter, the indemnification provisions set forth in the Engagement Letter, as modified in this Order, are approved, subject during the pendency of these Bankruptcy Cases to any modifications herein and the following:

(a)     There shall be no indemnification of Opportune, its affiliates and/or personnel of Opportune other than Mr. Gaston in his capacity as CRO of the Debtors;

(b)     The CRO shall not be entitled to any indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, unless such services and indemnification therefore are approved by the Court;

(c)     The Debtors shall have no obligation to indemnify the CRO, or provide contribution or reimbursement, for any claim or expense that is either (i) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of the CRO, (ii) for a contractual dispute in which the Debtors allege the breach of contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but  determined by the Court, after notice and hearing, to be a claim or expense for which the CRO should not receive an indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order;

(d)     If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in these Bankruptcy Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Bankruptcy Cases, the CRO believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the

Engagement Letter as modified by this Order, including without limitation the advancement of defense costs, the CRO must file an application therefor in this Court, and the Debtors may not pay any such amounts to the CRO before the entry of an order by this Court approving the payment; and

(e)    In no event shall the Debtors' obligation of indemnification and/or contribution exceed the aggregate amount in fees actually received by the CRO under the Agreement.

8.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

9.    This Order shall be immediately effective and enforceable upon its entry.  To the extent it may be applicable, the fourteen-day stay imposed by the Bankruptcy Rule 6004(h) is hereby waived.

10.    To the extent there is any inconsistency between this Order and the Engagement Letter, the Application, or any exhibits thereto, the provisions of this Order shall govern.

11.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Signed on 05/24/2016

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

**SUBMITTED BY:**


___/s/ W. Steven Bryant_____

W. Steven Bryant
Texas Bar. No. 24027413
Federal I.D. No.  32913
Locke Lord LLP
2800 JP Morgan Chase Tower
600 Travis Street
Houston, Texas 77002
Telephone: (713) 226-1489
Fax: (713) 229-2536
sbryant@lockelord.com

-and-

C. Davin Boldissar (La. #29094)
(admitted pro hac vice motion)
Bradley C. Knapp (Tex. #24060101)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 681-5211
dboldissar@lockelord.com
bknapp@lockelord.com

**PROPOSED COUNSEL FOR TEXAS PELLETS, INC.
AND GERMAN PELLETS TEXAS, LLC**