IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION



EOD
12/19/2017

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEXAS PELLETS, INC.[1] | § | **JOINTLY ADMINISTERED** |
| | § | under Case No. 16-90126 |
| | § | |
| | § | |
| Debtors | § | Chapter 11 |

## MEMORANDUM OF DECISION

This matter came before the Court upon hearing of the Request for Allowance and Payment of Administrative Claim (the "Motion") filed by J Riley Enterprises, LLC d/b/a JB Industries ("JBI") and the objections filed to such Motion by Texas Pellets, Inc. and German Pellets Texas, LLC, Debtors and Debtors-in-Possession (the "Debtors"), and by NAPCO[2] in this jointly-administered Chapter 11 case. The Motion seeks the payment of an administrative expense under § 503(b)(1)(A). After hearing, the Court took the matter under advisement. Upon due consideration of the evidence submitted and the applicable legal authorities, the Court concludes that the Motion must be granted in part and denied in part. This memorandum of decision disposes of all issues pending before the Court.[3]

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are: Texas Pellets, Inc. (3478), and German Pellets Texas, LLC (9084). The corporate headquarters and service address for the jointly-administered Debtors is: 164 CR 1040, Woodville, Texas 75979.

[2] NAPCO's objection relates only to the timing of the payment of any administrative expense awarded by the Court, rather than a substantive objection regarding the allowance of the requested administrative expense claim.

[3] This Court has jurisdiction to consider the motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

**Background**

Many of the facts are not in dispute. Indeed, the parties submitted a stipulation of agreed facts regarding the circumstances surrounding the procurement and rendition of services for which JBI now seeks an administrative expense award.[4] On February 27, 2017, a fire which damaged the Debtors' ship-loading mechanism occurred at the Debtors' pellet storage facility in Port Arthur, Texas while a ship was being loaded with wood pellets from the Debtors' silos. Once the fire was under control, the Debtors determined that they needed to unload the pellets that had been previously loaded on the ship and JBI was procured to provide trucking services to facilitate the removal.[5] Such trucking services were to be tendered on a 24/7 basis until the removal process was completed. Though the contractual arrangement began on March 1, 2017 on a per-load basis, the Debtors continually experienced significant delays in the pellet extraction process, primarily due to ongoing fires, which limited the trucks which were loaded. After two days of severely limited truck usage due to the Debtors' continued struggle to provide pellets available to be transported, the contract was altered at the truckers' insistence to a payment basis of $160 per hour. That limitation occurred with varying frequency throughout the eight (8) days in which JBI provided trucking services to the

---

[4] Ex. 75. The stipulated facts are incorporated herein by reference and specific factual references based upon the stipulation are included as needed.

[5] Undamaged pellets were to be transported 75 miles to the Debtors' manufacturing facility in Woodville and damaged pellets would be transported 43 miles to a disposal facility in Deweyville. *Id.* at ¶ 5, 7-8.

Debtors under the contract. In that period, JBI and its subcontractors transported 668 loads of undamaged pellets to Woodville and six loads of damaged pellets to Deweyville.[6]

JBI subsequently submitted a series of revised invoices for services rendered totaling $767,007.38.[7] Within 30 days of the completion of services, the Debtors made a partial payment of $303,000 to JBI. The Debtors admitted during the hearing that, of the remaining $464,007.38 requested by JBI in its final invoice, $161,287.38 is uncontested by the Debtors and is due and owing. However, controversy among the parties remains as to the additional compensation of $302,720.00 requested by JBI. The disputed amount represents 1,892 hours of "stand-by time" in which the trucks supplied by JBI were purportedly sitting in line at the Port Arthur and Woodville facilities awaiting access to, or acceptance of, the pellets. JBI contends that all such hours are compensable because it was under a duty to supply trucks on a 24/7 basis as the Debtors attempted with varying success to unlade the ship and that the invoiced stand-by hours reflect delays in that extraction process for which the Debtors are solely responsible. The Debtors claim that such stand-by time conferred no benefit upon the estate and that the downtime primarily occurred due to the truckers' unilateral decision to convoy together on trips which unnecessarily worsened an accretion of unused trucks, particularly at the Port Arthur facility.

---

[6] *Id.* at ¶ 15.

[7] Ex. 9.

**Discussion**

When assets of a bankruptcy estate are distributed to the creditors of a debtor, claims for administrative expenses are among the very first unsecured claims that are paid. "To be entitled to administrative claim status, the claim must arise from a debt incurred post-petition, in connection with a transaction between the claimant and the trustee or debtor-in-possession, and which benefits the debtor in the operation of its business." *In re J.A.V. AG, Inc*., 154 B.R. 923, 929 (Bankr. W.D. Tex. 1993). Among various statutory categories, such a payment priority is awarded for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The "conceptual justification" for this payment priority status is that "creditors must pay for those expenses necessary to produce the distribution to which they are entitled." *Tex. v. Lowe (In re H.L.S. Energy Co., Inc*.), 151 F.3d 434, 437 (5th Cir. 1998). Such priority status is designed "to encourage post-petition conduct that will assist the debtor's efforts to rehabilitate the estate or organize the estate's assets in an orderly fashion to ensure an efficient sale." *In re Am. Coastal Energy, Inc*., 399 B.R. 805, 815 (Bankr. S.D. Tex. 2009).

An "actual and necessary" cost or expense is one which conferred a benefit upon the bankruptcy estate. *H.L.S. Energy Co.,* 151 F.3d at 437 [concluding that "the benefit requirement . . . is merely a way of testing whether a particular expense was truly 'necessary' to the estate . . . if it was no 'benefit,' it cannot have been 'necessary.'"]; *In re Lovay*, 205 B.R. 85, 86 (Bankr. E.D. Tex. 1997) [finding that the benefit bestowed by a

creditor must be "concrete" and not just a "mere possibility"]. Notwithstanding such a test, courts recognize that, because the benefit requirement is "simply a gloss on the underlying concept of what is necessary," it is not restricted to goods or services that lead to a direct economic enhancement of the estate. *H.L.S. Energy,* 151 F.3d at 438 [finding a benefit to the bankruptcy estate by fulfilling its duty under state law to plug its unproductive oil and gas wells]. "Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual." *Toma Steel Supply, Inc. v. GHR Energy Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1420 (5th Cir. 1992).

However, because of the priority status granted by its terms, § 503(b) is narrowly construed in order to hold administrative expenses to a minimum amount and thus preserve the estate assets for the benefit of all creditors. *Brickley v. Scattered Corp. (In re H & M Oil & Gas, LLC)*, 514 B.R. 790, 825 (Bankr. N.D. Tex. 2014) (citing *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991)); *In re Lovay*, 205 B.R. at 86. The burden of proof rests upon the administrative expense applicant to demonstrate that its cost or expense was actual and necessary. Specifically, "a *prima facie* case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern. After the movant has established a *prima facie* case, the burden of producing evidence shifts to the

objector; but the burden of persuasion, by a preponderance of the evidence, remains with the movant. *TransAmerican,* 978 F.2d at 1416.

This administrative expense request is clearly rooted in the movant's transaction with the Debtors-in-Possession. It is also unquestioned that, to the degree to which the pellets could actually be relocated from the port facility, such relocation would enhance the Debtors' efforts to restore its ordinary course operations. However, the issue regarding which party was responsible for the repeated delays that forced lines of trucks to wait for loading for considerable periods of time is more problematic. Though the Court has carefully reviewed a substantial amount of documentary evidence submitted by the parties, such evidence offers limited insight into the actual cause of the disputed stand-by hours.

JBI has failed to establish that the Debtors were in any way responsible for the delays occurring in the delivery of pellets to the Woodville facility. In fact, JBI has failed to offer any credible evidence to explain the charging of stand-by hours in Woodville. The Debtors presented credible evidence without contradiction that convoying by the truckers was, in fact, occurring on the Woodville trips and none of the proffered evidence indicated that any delay occurring on-site at the Woodville facility was caused by any internal process occasioned by the Debtors' normal transportation operations. With no other credible explanation offered, JBI has failed to establish by a preponderance of the evidence that the 167 hours which it billed as stand-by hours in Woodville occurred due to the conduct of the Debtors and for which the Debtors' estates should be held justly

accountable.

Consideration of the stand-by hours at the Port Arthur facility is a bit more convoluted. The Court is compelled to acknowledge the financial pressures imposed upon the Debtors by the accruing demurrage charges and the then-existing imperative that the Debtors "clear the decks" in order to restore normal plant and shipping operations. These pressures drove the Debtors to demand that JBI supply trucking services on a 24/7 basis — i.e., at any time that the Debtors were capable of producing extracted pellets for transport at the port facility. Contrary to the Debtors' position, that scenario creates not just the possibility, but the probabilities that significant stand-by hours incurred by JBI were, in fact and in law, actual and necessary because of the Debtors' demands that trucks be *available* to them on a round-the-clock basis. Though some credence must undoubtedly be given to the evidence of the truckers' convoying efforts and, while it is true that such convoying would have created more significant delays in Port Arthur than it did in Woodville, a greater degree of responsibility for the Port Arthur delays must be laid upon the Debtors based upon their inability to extract the pellets from the ship and to make them available to the truckers on a consistent basis. The Debtors contend that the only delays that can be legitimately charged to them are those that are documented by their personnel in various Vessel Activity Reports and Port Logs.[8] However, an analysis of the entirety of the evidence presented at the hearing reveals that the Debtors' internal

---

[8] *See, e.g.*, Ex. D-F.

documents do not supply a reliable, comprehensive chronology of all of the intermittent delays that constantly plagued the extraction process and delayed the utilization of the trucks. Thus, upon review of the evidence submitted, and imposing some degree of responsibility upon JBI for the excessive accrual of stand-by hours arising from its failure to control undue convoying of loaded trucks by its subcontractors, the Court finds that JBI has established, by a preponderance of the evidence, that 1,256.25 of the 1,892 stand-by hours billed by JBI should be allowed.

*Timing of Payment*

The Debtors and NAPCO object to JBI's demand for immediate payment of the remaining amount of its allowed administrative expense claim. The timing of payment of administrative expenses is clearly within the Court's discretion. Courts within this circuit have cited a three-factor test for use in determining the appropriate timing of payment of administrative expense claims: "(1) the prejudice to the debtor; (2) the hardship to the claimant; and (3) potential detriment to other creditors." *In re ATP Oil & Gas Corp.*, 2014 WL 1047818, at *10 (Bankr. S.D. Tex. Mar. 18, 2014) (citing *In re UTEX Commc'ns Corp.*, 457 B.R. 549, 569 (Bankr, W.D. Tex. 2001)). "In most situations, the courts prefer to postpone payment of the administrative claim until after confirmation of a plan or the distribution in a liquidation. However, once a claimant has requested payment, the court may exercise its discretion whether circumstances warrant immediate response." 3 NORTON BANKR. L. & PRAC. 3d § 49:16 at 49-106 (3d ed. 2010).

In a review of the equities surrounding the parties' transaction, JBI necessarily

employed a number of small, independent truckers to accommodate the Debtors' transportation request. The Court is sympathetic to their plight. Nevertheless, $303,000 has already been tendered to JBI for itself and its subcontractors and the series of casualty events which have plagued this estate has cast a greater degree of doubt upon the Debtors' realistic prospects for achieving a successful conclusion to this case. This has created a greater concern among administrative claimants regarding the ultimate payment of their claims. Taking into consideration the financial effect upon the claimant and its subcontractors, the financial status of the estates, the possibility that certain insurance proceeds have been received, or are anticipated, by the Debtors with regard to these casualty events, and the legitimate concerns of other administrative claimants regarding payment, the Court finds that the Debtors should immediately tender an additional payment of $125,000 to JBI, with the remaining $237,287.38 of the allowed administrative claim of JBI to be paid pursuant to the terms of any confirmed plan or such other distribution mechanism as may be authorized in this case.

Accordingly, for the foregoing reasons, the Court finds that the Request for Allowance and Payment of Administrative Claim filed by J Riley Enterprises, LLC d/b/a JB Industries in the above-referenced case must be granted in part and denied in part. This memorandum of decision constitutes the Court's findings of fact and conclusions of law[9] pursuant to FED. R. CIV. P. 52, as incorporated into contested matters in bankruptcy

---

[9] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be

cases by FED. R. BANKR. P. 7052 and 9014.  A separate order shall be entered consistent with this opinion.

Signed on 12/19/2017

*[Signature]*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

requested by any party.