**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**(LUFKIN DIVISION)**

**EOD**

04/30/2019

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| TEXAS PELLETS, INC.[1] | ) | under Case No. 16-90126 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

**ORDER APPROVING AMENDED BIDDING PROCEDURES AND AMENDED**
**AUCTION AND SALE NOTICE AND GRANTING RELATED RELIEF[2]**

On April 8, 2019, Texas Pellets, Inc. ("TPI") and German Pellets Texas, LLC ("GPTX"),

the debtors and debtors-in-possession in the above-captioned, Chapter 11 cases (together, the

"Debtors") filed their *Motion for Entry of Orders: (I) Approving Amended Bidding Procedures*

*and Awarding Certain Protections and (II) Authorizing (A) the Sale of Substantially All of the*

*Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases* [Docket # 1109] (the "Motion") pursuant to Sections 105(a), 363, and 365 of

Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in the above-styled

Chapter 11 cases (the "Bankruptcy Cases").[3]   The Court finds that the Motion was properly

served pursuant to the Federal and Local Rules of Bankruptcy Procedure and that it contained the

appropriate twenty-one (21)-day negative notice language, pursuant to LBR 9007, which

directed any party opposed to the granting of the relief sought by the Motion to file a written

objection within twenty-one (21) days or the Motion would be deemed by the Court to be

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are  Texas Pellets, Inc. (3478) and German Pellets Texas, LLC (9084).  The corporate headquarters and service address for the jointly-administered debtors is:  164 CR 1040, Woodville, TX 75979.

[2] As set forth below, this Order and its attachments supersede and replace the Court's previous Order dated February 21, 2019 [dkt #1048].

[3] Capitalized terms not otherwise defined have the meanings given to them in the Motion.

1

unopposed.  The Court finds that no objection to the Motion has been timely filed by any party.[4]

Due to the failure of any party to file a timely objection, the allegations contained in the

Motion stand unopposed, including the assertions that: (1) the best interests of the estates and

its creditors will be served by the granting of the totality of relief requested in the Motion; (2)

that the approval of: (i) the Amended Bidding Procedures attached hereto as Exhibit A, and (ii)

the Amended Auction and Sale Notice attached hereto as Exhibit B will serve the best

interests of creditors; (3) that the Amended Bidding Procedures are fair, reasonable and

appropriate and are designed to maximize the recovery with respect to the Sale for the benefit of

creditors of the estates; (4) that the proposed Amended Auction and Sale Notice is appropriate,

adequate and sufficient, and is reasonably calculated to provide all interested parties with timely

and proper notice of the Auction, the Sale, the Amended Bidding Procedures, and applicable

objection deadlines and requirements; (5) that the proposed Amended Auction and Sale Notice

will provide reasonable and proper notice to all potential purchasers and the Debtors' creditors

of the proposed Sale and opportunity to submit offers for the Purchased Assets, or to object

to the proposed Sale; and (6) that the best interests of the estates and its creditors will be

served by the scheduled Sale Hearing (as defined below) to consider granting the other portions

of relief requested in the Motion, including approval of the Sale and the transfer of the

Purchased Assets to a Winning Bidder, free and clear of all encumbrances pursuant to

Bankruptcy Code § 363(f). Thus, upon due consideration and review of the proposed procedures

and notices proposed in the Motion, the Court finds that just cause exists for entry of the following

order.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

---

[4]  The Court notes that a comment was filed by the Official Committee of Unsecured Creditors.

America:0105342/00004: 71133303v.1

1.       This Order, the attached Amended Bidding Procedures, and attached Amended Auction and Sale Notice, replace and supersede in their entirety the Court's previous Order dated February 7, 2017 [Docket #330] and the Court's previous Order dated February 21, 2019 [Docket #1048], and the bidding procedures and auction and sale notice attached thereto.

2.       The Amended Bidding Procedures attached hereto as **Exhibit A** are approved in all respects and shall govern all bids and bid proceedings relating to the Sale. The Debtors are authorized and directed to take any and all actions necessary or appropriate to implement the Amended Bidding Procedures. The failure to specifically include or reference any particular provision of the Amended Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Amended Bidding Procedures be approved in their entirety and incorporated herein by reference. All objections to the approval of the Amended Bidding Procedures and the Amended Auction and Sale Notice that have not been withdrawn, waived, or settled prior to the entry date of this Order are hereby overruled in their entirety.

3.       The Debtors may modify the Amended Bidding Procedures (including the dates set forth therein, excluding, however, any scheduled hearings before the Court) in any manner following consultation with the Bond Trustee and the UCC. Notice of any such amendments shall be filed with this Court and shall state the amendments to the Amended Bidding Procedures (including any amendments that vary a date or dates in the Amended Bidding Procedures or this Order), following consultation with the Bond Trustee and the UCC (the "Sale Extension Notice"). The Sale Extension Notice, if any, shall be served on the Investment Banker for distribution to all Potential Bidders.

America:0105342/00004: 71133303v.1

4.      The Amended Auction and Sale Notice attached hereto as **Exhibit B** is approved in all respects. On or within three (3) business days following entry of this Order, the Debtors shall serve the Amended Auction and Sale Notice and the Amended Bidding Procedures on the following: (a) all entities known to have expressed an interest in the assets being sold (who may be contacted electronically including through electronic mail); (b) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the assets to be sold; (c) the counterparties to any of the Debtors' executory contracts and unexpired leases; (d) the Office of the United States Trustee; (e) all creditors listed in the Debtors' Schedules; (f) those parties who requested notice pursuant to Bankruptcy Rule 2002; (g) the master mailing matrix in these Bankruptcy Cases; and (h) such other additional creditors or parties in interest as identified by the Debtors.  The Sale Notice, as set forth herein, constitutes sufficient notice of the Auction and of the Sale Hearing.

5.      The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(l), to give supplemental publication notice of the Amended Auction and Sale Notice and Amended Bidding Procedures, substantially in the form attached as Exhibit "2" to the Motion, by no more than five (5) business days after entry of this Order, in the Port Arthur News, in the Tyler County Booster and Beaumont Enterprise, which notice shall constitute good and sufficient notice of the matters set forth in the Amended Auction and Sale Notice and Amended Bidding Procedures to persons who do not receive notice by mail.

6.      **The Bid Deadline is May 6, 2019 at 5:00 p.m. (Prevailing Central Time)**. As set forth in the Amended Bidding Procedures, all Potential Bidders are required to submit their bids so that such Bids are *actually received* by the Bid Deadline by all of the following parties: (i) Debtors' Counsel (Locke Lord LLP, 601 Poydras Street, Suite 2660, New Orleans, Louisiana

America:0105342/00004: 71133303v.1

70130, Attn: C. Davin Boldissar, Email: dboldissar@lockelord.com); (ii) Counsel for Bond

Trustee, Attn: Daniel S. Bleck, Mintz Levin Cohn Ferris Glovsky and Popeo PC, One Financial

Center, Boston, MA 02111, E-mail: dsbleck@mintz.com; (iii) the Debtors' Investment Banker,

Attn: Jay C. Jacquin, Managing Director, Configure Partners, Tower Place Buckhead, 3340

Peachtree Rd NE, Suite 1010, Atlanta, GA 30326; and (iv) Counsel to the UCC, Attn: Patrick

Kelley, Patrick Kelley, PLLC, 112 E. Line Street, Suite 203, Tyler, Texas 75702, E-mail:

pat@patkelleylaw.com (the "Bid Deadline Recipients").

      7.    The Debtors have designated Woodville Biomass LLC as the stalking horse bidder

(the "Stalking Horse Bidder") under a Qualified APA with such Stalking Horse Bidder (the

"Stalking Horse APA").  The Debtors are authorized to pay to the Stalking Horse Bidder a break-

up fee of 3% of the proposed Purchase Price (the "Break-Up Fee"), plus an amount equal to the

Stalking Horse Bidder's actual out of pocket expenses incurred and appropriately documented, as

requested by the Debtors in their reasonable discretion (including attorneys' fees) up to

$350,000.00 (the "Expense Reimbursement"), all as set forth under the Stalking Horse Bidder's

Qualified APA.  Such Break-Up Fee and Expense Reimbursement: (i) are actual and necessary

costs and expenses of preserving the Debtors' estate, within the meaning of Bankruptcy Code

section 503(b); (ii) are commensurate to the real and substantial benefits conferred upon the

Debtors' estates by the Stalking Horse Bidder; and (iii) are reasonable and appropriate in light of

the size and nature of the proposed Sale and comparable transactions.  In addition, as set forth in

the Stalking Horse APA, the Bond Trustee agrees and the Court finds: (i) that any proceeds, funds,

or amounts assigned to the Stalking Horse Bidder under Sections 7.13 and/or 7.14 of the Stalking

Horse APA shall not be subject to any liens of the Bond Trustee (or any such liens are waived);

and (ii) the Bond Trustee is bound by the provisions of Section 10.2(c) of the Stalking Horse APA.

8.     The Auction, if necessary, shall take place on May 9, 2019 at the offices of Locke Lord LLP, 2800 JP Morgan Chase Tower, 600 Travis, Houston, TX 77002-3095, commencing at 10:00 am (Prevailing Central Time) (the "Auction").

9.     Any objection to the Sale must be in writing and **filed with the Court on or before May 10, 2019** (the "General Objection Deadline"), and shall be served upon: (a) Debtors' Counsel (Locke Lord LLP, 601 Poydras Street, Suite 2660, New Orleans, Louisiana 70130, Attn: C. Davin Boldissar, Email: dboldissar@lockelord.com); (b) Counsel for Bond Trustee, Attn: Daniel S. Bleck, Mintz Levin Cohn Ferris Glovsky and Popeo PC, One Financial Center, Boston, MA 02111, E-mail: dsbleck@mintz.com; (c) the Debtors' Investment Banker, Attn: Jay C. Jacquin, Managing Director, Configure Partners, Tower Place Buckhead, 3340 Peachtree Rd NE, Suite 1010, Atlanta, GA 30326, E-mail: jjacquin@configurepartners.com; (d) Counsel to the UCC, Attn: Patrick Kelley, Patrick Kelley, PLLC, 112 E. Line Street, Suite 203, Tyler, Texas 75702, E-mail: pat@patkelleylaw.com, (e) the Office of the United States Trustee for the Eastern District of Texas, Attn: John Vardeman, Trial Attorney, 110 N. College, Suite 300, Tyler, Texas 75702, E-mail: John.M.Vardeman@usdoj.gov; and (f) all those persons and entities that have formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule 2002 and the Local Bankruptcy Rules.  The failure of any objecting person or entity to timely file its objection to the Sale as set forth in this Order and the Amended Auction and Sale Notice shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, to the consummation and performance of the Sale, if any (including the transfer free and clear of all encumbrances of the Debtors' assets pursuant to the Sale), and to any and all actions taken in connection with such Sale.

America:0105342/00004: 71133303v.1

10.     Notwithstanding the General Objection Deadline and the other provisions set forth in Paragraph 7 of this Order, the procedures governing the proposed assumption and assignment of the Executory Contracts in connection with the Sale (including the procedure for filing objections to such proposed assumption and assignment on any ground and all applicable deadlines) are set forth in the Court's previous Order Granting Motion to Approve Assumption and Assignment Procedures for Certain Executory Contracts and Unexpired Leases entered on February 7, 2017 [Docket #328], which remains in full force and effect and the provisions thereof apply to the Motion and Sale, with the terms "Winning Bidder" and "APA" having the same meaning as set forth in the Motion.

11.     The Sale Hearing, at which the Debtor shall seek approval of the Winning Bidder, shall be held on **Wednesday, May 15, 2019 at 9:30 a.m.** (Prevailing Central Time), in the Courtroom of the United States Bankruptcy Court for the Eastern District of Texas, 110 N College Ave, 9th Floor, Tyler, TX 75702 (the "Sale Hearing"). The Debtors may adjourn or reschedule the Sale Hearing without further notice other than an announcement of the adjourned date at the Sale Hearing.

12.     The Debtors are authorized and empowered to take such steps, expend such sums of money (subject to the prior order relating to Debtor-in-Possession financing), and do such other things as may be necessary to implement and effect the terms and requirements established and relief granted in this Order, without further order of the Court.

13.     To the extent, if any, anything contained in this Order conflicts with the Motion, this Order, and the provisions of the Amended Bidding Procedures attached hereto, shall govern and control.

America:0105342/00004: 71133303v.1

14.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall take effect immediately upon its entry, and any stay of the effectiveness of this Order under Bankruptcy Rule 6004(h) is hereby expressly waived.

15.    The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

16.    The Debtors shall submit a final version of the proposed Sale Order (or such other sale order as requested by the Winning Bidder and approved by the Debtors in their discretion after consultation with the Bond Trustee, the UCC, and the Winning Bidder) prior to the Sale Hearing.

17.    This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

18.    Notwithstanding any other provision of this Order, after consultation with the Bond Trustee and the UCC, the Debtors may withdraw the Amended Bidding Procedures and auction and other marketing and sale procedures set forth in the Amended Bidding Procedures at any time, to allow the Debtors to pursue an alternative course to further the best interests of the estates and the creditors.

Signed on 04/30/2019

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

8

# EXHIBIT A

## AMENDED BIDDING PROCEDURES

Texas Pellets, Inc. and German Pellets Texas, LLC ("Debtors") through counsel for the Debtors (the "Debtors' Counsel") propose to conduct an auction for the Sale (as defined under Paragraph 1 below) of the Purchased Assets (as defined under Paragraph 2 below) and will proceed in accordance with the following bid procedures ("Bidding Procedures") which have been approved pursuant to an Order entered by the United States Bankruptcy Court for the Eastern District of Texas ("Bankruptcy Court") on April 30, 2019 ("Bidding Procedures Order") in the jointly administered, Chapter 11 cases styled *In re Texas Pellets, Inc.*, Case No. 16-90126 (jointly administered) (the "Bankruptcy Cases").

The Qualified Bid of the Stalking Horse Bidder (the "Stalking Horse APA") is posted in the Debtors' on-line data room (the "Stalking Horse APA"). As provided for below, the Debtors are soliciting bids for the proposed acquisition of the Purchased Assets (as defined under Paragraph 2 below), or any portions thereof, in accordance with the procedures below, which shall require, among other requirements, that proposed bidders submit an executed asset purchase agreement, in the form of the Stalking Horse APA, along with a marked version evidencing any changes to the Stalking Horse APA. The Debtors will consider all offers which comply with the terms of these Bidding Procedures, and which may include cash or non-cash consideration, including without limitation cash, assumption of debt, or any combination thereof (subject to the requirements set forth herein).

1.    **Sale Proposal.** These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in the Auction (as defined under Paragraph 12 below), thereby competing to make the highest or otherwise best offer for the Purchased Assets. The sale of the Purchased Assets shall be free and clear of any and all claims, liens, and other encumbrances (a "Sale"), with all such liens, claims and encumbrances attaching to the proceeds to the same extent and with the same priority as such liens, claims and encumbrances attached to the Purchased Assets prior to the Sale.

2.    **Purchased Assets.** For purposes of a Sale, the "Purchased Assets" consist of any or all tangible and intangible real and personal property assets of the Debtors as defined and set forth in the Stalking Horse APA.

3.    **"As Is, Where Is" Sale.** Except as explicitly set forth in the Stalking Horse APA, any Sale of the Purchased Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, whether written, verbal, express, implied, or by operation of law.

4.    **Bond Trustee**. As used in these Bidding Procedures, "Bond Trustee" shall mean, UMB Bank, National Association as (i) successor trustee with respect to the Sanger Texas Industrial Development Corporation Industrial Development Revenue Bonds (Texas Pellets Project), Series 2012B and 2012C; and (ii) the trustee in connection with the funds advanced under the debtor-in-possession facility.

1

**5.**      **Potential Bidders / Execution of NDA/ Financial Information**. To participate in the Auction, any party (a "Potential Bidder") wishing to submit a proposal, offer, or bid (a "Bid") to purchase the Purchased Assets must execute a nondisclosure agreement ("NDA") in the form provided by Debtors' counsel and in form and substance satisfactory to the Debtors before such Potential Bidder may receive due diligence information from the Debtors, including access to the Debtors' on-line data room or other non-public information relating to the Purchased Assets. Any NDA previously executed by the Debtors and a Potential Bidder which is otherwise in effect for a minimum of one (1) year as of the date of the entry of the Bidding Procedures Order shall be deemed a satisfactory NDA for purposes of these Bidding Procedures. In addition, any such party must submit such financial information to the Debtors to evidence such party's ability to consummate the Sale, to the satisfaction of the Debtors after consultation with the Bond Trustee and the Official Committee of Unsecured Creditors (the "Committee").

**6.**      **Due Diligence**. After receipt of an executed NDA, the Debtors shall, upon request by the Potential Bidder, provide each Potential Bidder reasonable due diligence information as soon as reasonably practicable after such request, including access to the Debtors' on-line data room. The Debtors shall not furnish, and shall have no obligation to furnish, any confidential and/or non-public information relating to the Purchased Assets, the Debtors, or the Auction (collectively, "Confidential Information"), or grant access to the Debtors' on-line data room, to (i) any person that does not qualify as a Potential Bidder, or (ii) to Potential Bidders who, at such time and in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

**7.**      The Debtors make no representation or warranty as to the Confidential Information provided through the due diligence process or otherwise, except to the extent set forth in the Stalking Horse APA (or as set forth in any Qualified APA (as defined under Paragraph 9 below) entered into between the Debtors and the Winning Bidder, as defined under Paragraph 12 below). No party may conduct any additional due diligence after the Bid Deadline (as defined under Paragraph 8 below).

**8.**      **Bid Deadline.** Potential Bidders must submit their Bids by **no later than 5:00 p.m. (Prevailing Central Time) on May 6, 2019** (the "Bid Deadline") so that such Bids are actually received by the Bid Deadline by all of the following parties: (i) Debtors' Counsel (Locke Lord LLP, 601 Poydras Street, Suite 2660, New Orleans, Louisiana 70130, Attn: C. Davin Boldissar, Email: dboldissar@lockelord.com); (ii) Counsel for the Bond Trustee, Attn: Daniel S. Bleck, Mintz Levin Cohn Ferris Glovsky and Popeo PC, One Financial Center, Boston, MA 02111, E-mail: dsbleck@mintz.com; (iii) the Debtors' Investment Banker, Attn: Jay C. Jacquin, Managing Director, Configure Partners, LLC, 3340 Peachtree Road NE, Suite 1010, Atlanta, GA, 30326, E-mail: jjacquin@configurepartners.com; and (iv) Counsel to the Committee, Attn: Patrick Kelley, Patrick Kelley, PLLC, 112 E. Line St., Suite 203, Tyler, Texas 75702, E-mail: pat@patkelleylaw.com (the "Bid Deadline Recipients"). Potential Bidders may either e-mail their Bids to the e-mail addresses listed above or else mail or deliver their Bids to the physical addresses listed above so that they are actually received by the Bid Deadline. The Debtors shall have no obligation to consider any other delivery format, such as fax,

2

as acceptable. The Debtors may, at their sole discretion, extend the Bid Deadline until the commencement of the Auction for one or more Potential Bidders without prior notice to any party, but shall have no obligation to do so under any circumstances.

**9.**    **Qualified Bid**. In order to constitute a "Qualified Bid," a Bid must satisfy the following requirements (the "Bid Requirements"):

(a)    be submitted (i) in writing and (ii) be received by the Bid Deadline Recipients by the Bid Deadline as set forth in Paragraph 8 of these Bidding Procedures, subject to Paragraph 11 of these Bidding Procedures;

(b)    constitute a good faith, bona fide offer to purchase the Purchased Assets in accordance with the terms of the Qualified APA (as defined later in this Paragraph 9) for a proposed purchase price ("Purchase Price") identified in such Qualified APA and defined as the "Purchase Price" therein;

(c)    identify the legal name of the Potential Bidder (including any direct or indirect equity holders, if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale);

(d)    be accompanied by a clean and a duly executed copy of an asset purchase agreement (the "Qualified APA"), the form of which shall be consistent with the Stalking Horse APA and which shall not be inconsistent with these Bidding Procedures;[1]

(e)    be accompanied by a copy of the Qualified APA which is marked to reflect the amendments and modifications compared to the Stalking Horse APA;

(f)    be accompanied by a copy of the draft Sale Order (as defined under Paragraph 14 below) marked to reflect the amendments and modifications compared to the form of draft Sale Order posted in the Debtors' on-line data room;

(g)    be accompanied by a deposit by wire transfer in an amount in cash of equal to ten percent (10%) of the aggregate cash and non-cash Purchase Price in certified funds or such other amount acceptable to the Debtors, in consultation with the Committee and the Bond Trustee ("Deposit"), to be held in escrow and treated in accordance with the provisions of Paragraph 15 of these Bidding Procedures;

(h)    provide sufficient and adequate information to demonstrate to the satisfaction of the Debtors, in consultation with the Bond Trustee and the

---

[1] To the extent a portion of the consideration relating to the Purchase Price includes the assumption of any debt or other forms of consideration, such Qualified APA shall also include the terms and conditions of the assumption of such debt or other forms of consideration.

3

Committee, that such Potential Bidder has the financial wherewithal and ability to consummate the Sale;

(i)   include a written statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures and the Bidding Procedures Order and consents to the jurisdiction of the Bankruptcy Court (including waiving any right to a jury trial) in connection with any disputes related to these Bidding Procedures as well as (*each as defined below*) the Auction, the Sale Hearing, the Approval Order and/or the Closing;

(j)   include a written statement outlining the absence or presence, and details thereof, of any relationship, affiliation, or connection of any kind between the Potential Bidder, on the one hand, and German Pellets GmbH, German Pellets Texas, LLC, Texas Pellets, Inc., German Pellets Louisiana, LLC, Louisiana Pellets, Inc., IPBG Pellets Beteiligungs GmbH, German Pellets Holding USA, Inc., and/or any of these entities' affiliates, current or former officers, directors, and/or investors;

(k)   except as set forth under Paragraph 9(o) below, not be conditioned on any due diligence, financing, or other contingencies of the bidder other than authorizing the Sale, other customary conditions to closing for this type of transaction and contingencies set forth in the Stalking Horse APA;

(l)   remain irrevocable until forty-eight (48) hours after the conclusion of the Sale Hearing or such longer period of time as set forth below if the Potential Bidder is selected as the Winning Bidder or Back-Up Bidder (as defined below);

(m)   states that the Potential Bidder is willing to serve as a Back-Up Bidder and that the Qualified Bid (or any Qualified Bid as modified at the Auction) shall constitute the Back-Up Bid if the Debtors determine that it qualifies as the Back-Up Bid in accordance with the provisions of Paragraph 13;

(n)   provide a commitment to close the transaction by June 15, 2019 (such being the "Closing"); and

(o)   Notwithstanding the foregoing requirements, a Bid may propose cash or non-cash consideration including without limitation cash, assumption of debt, or any combination thereof.

**10.   Determination of Qualified Bids**. A Bid that satisfies each of the Bid Requirements, as determined by the Debtors in their reasonable discretion, in consultation with the Bond Trustee and the Committee, constitutes a "Qualified Bid", and such Potential Bidder constitutes a "Qualified Bidder", and, in particular, the Debtors may determine that a Bid is not a Qualified Bid if the Qualified APA differs in any material respect from the Stalking Horse APA. One business day prior to the Auction, the Debtors shall determine,

4

after consultation with the Bond Trustee and the Committee, whether any submitted bids constitute Qualified Bids. The Debtors shall file and serve on all Potential Bidders that submitted a Bid (regardless of whether such Bid was determined to be a Qualified Bid) a notice (the "Auction Notice") indicating which Bids, if any, have been designated as Qualified Bids. If any Bids are designated as Qualified Bids, the Auction Notice shall set an Auction to be conducted on May 9, 2019 as further described below. The Stalking Horse Bidder shall be deemed a Qualified Bidder and the Stalking Horse Bid shall be deemed a Qualified Bid.

11.    **Credit Bid**. The Bond Trustee may submit a credit bid at any time, including during the Auction. Such bid shall be considered a Qualified Bid.

12.    **Auction**. **The Debtors shall conduct an auction on May 9, 2019 at the offices of Locke Lord LLP, 2800 JP Morgan Chase Tower, 600 Travis, Houston, TX 77002-3095, commencing at 10:00 am Central Time (the "Auction").** The Auction will be conducted to determine the best and highest bid (the "Winning Bid," with such bidder being the "Winning Bidder"). The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(a)    only Qualified Bidders, in person or through duly-authorized representatives at the Auction may bid at the Auction, and every Qualified Bidder must have at least one (1) such duly-authorized representative with authority to bind the Qualified Bidder at the Auction;

(b)    only such authorized representatives of each of the Qualified Bidders, the Debtors, the Bond Trustee, the Committee, the holders of the Bonds and their respective advisors shall be permitted to attend the Auction;

(c)    prior to the commencement of the Auction, representatives of the Debtors, and/or the Bond Trustee may have discussions with each Qualified Bidder with respect to the terms and conditions of such Qualified Bids and the Debtors will have selected a Qualified Bid in consultation with the Bond Trustee and the Committee, to become the opening bid at the Auction (the bid submitted by such Qualified Bidder shall be referred to as the "Opening Bid" and the bidder shall be referred to as the "Opening Bidder");

(d)    The Debtors have designated Woodville Biomass LLC as the stalking horse bidder (the "Stalking Horse Bidder") under the Stalking Horse APA. The Debtors are authorized to pay a break-up fee of 3% of the proposed Purchase Price (the "Break-Up Fee"), plus an amount equal to Stalking Horse Bidder's actual out of pocket expenses incurred and appropriately documented, as requested by the Debtors in their reasonable discretion (including attorneys' fees) up to $350,000.00 (the "Expense Reimbursement"), all as set forth under the Stalking Horse APA. Any Break-Up Fee and Expense Reimbursement, to the extent payable, shall only be paid from proceeds received by the Debtors at the Closing of a Sale or such other alternative transaction, except in the in event that the Winning

America:0105342/00004: 71133303v.1

Bid APA is in the form of a credit bid submitted by the Bond Trustee, in which case, the Bond Trustee shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in cash.

(e)     other Qualified Bidders may then submit successive bids in the first increment of $500,000 (plus, with respect to the first successive bid, the amount of the Break-Up Fee and Expense Reimbursement provided, if the Opening Bid is the Stalking Horse Bidder), and successive increments of at least $250,000 higher than the previous bid. To the extent a Stalking Horse Bidder submits higher bids, the Stalking Horse Bidder shall have the right (but not the obligation) to increase its Opening Bid by using, as a credit, the amount of the Break-Up Fee and Expense Reimbursement when determining whether the Stalking Horse Bidder has topped the previous bid by the required amount;

(f)     Qualified Bidders shall have the right to submit additional bids and make additional modifications to their Qualified APA at the Auction, consistent herewith, provided that any such modifications to the Qualified APA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than any prior bid by such party (as determined by the Debtors, following consultation with the Bond Trustee and the Committee). The Debtors, in consultation with the Bond Trustee and/or the Committee, reserve the right to separately negotiate the terms of any bid at the Auction, provided the terms are fully disclosed at the time such bid is formally submitted;

(g)     the bidding will be transcribed by a certified court reporter employed by the Debtors to ensure an accurate recording of the bidding at the Auction;

(h)     each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale and is not in violation of Section 363(n) of the Bankruptcy Code;

(i)     absent irregularities in the conduct of the Auction, the Debtors will not consider any Potential Bids made after the Auction is closed; and

(j)     the Auction shall be governed by such other auction procedures as may be announced by the Debtors, from time to time on the record at the Auction, in consultation with the Bond Trustee and the Committee; provided that such other procedures shall be consistent with these Bidding Procedures.

13.     **Acceptance of the Winning Bid and Designation of the Back-Up Bid**.

(a)     Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment

6

and after consultation with the Bond Trustee and the Committee, shall identify (i) the Winning Bid, which is the highest or otherwise best Qualified Bid submitted at the Auction; and (ii) the next highest or otherwise best Qualified Bid (the "<u>Back-Up Bid</u>" and the party submitting the Back-Up Bid, the "<u>Back-Up Bidder</u>"). Each of the Winning Bidder and the Back-Up Bidder shall be required to immediately execute a definitive Qualified Bid conformed to the provisions of the Winning Bid and the Back-Up Bid, as applicable. For the purposes of these Bidding Procedures the definitive agreement executed by the (i) Winning Bidder shall be defined as the "<u>Winning Bid APA</u>" and (ii) Back-Up Bidder shall be defined as the "<u>Back-Up Bid APA</u>". The Back-Up Bidder must keep the Back-Up Bid open and irrevocable until the earlier of (i) the closing of an Alternative Transaction (as defined in the Stalking Horse APA) with the bidder who prevails at the Auction; and (ii) June 30, 2019 (the "<u>Outside Back-up Date</u>").

(b)    Within two business days of the completion of the Auction, the Winning Bidder and Back-Up Bidder shall each pay to the Debtors an additional amount in cash that, when combined with the Deposit equals ten percent (10%) of the purchase price reflected in the final bid of the Winning Bidder and Back-Up Bidder (such additional amounts shall be included in the definition of the "<u>Deposit</u>").

(c)    If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid as the winner of the Auction (conditioned upon approval by the Court) only when (i) such bid is declared the Winning Bid; (ii) definitive documentation has been executed in respect thereof; and (iii) any additional Deposit required as a result of a bid submitted at the Auction (as required by the Bidding Procedures) has been provided to the Debtors. Such acceptance is also conditioned upon approval by the Court of the Winning Bid and (if applicable) the Back-Up Bid.

14.    <u>Sale Hearing</u>.

(a)    The sale hearing is presently scheduled to take place **on Wednesday, May** **[15, 2019 at 9:30 a.m. (CDT)**, or as soon thereafter as counsel may be heard, before the Honorable Bill Parker, United States Bankruptcy Judge in the Courtroom of the U.S. Bankruptcy Court, 110 N College Ave, 9th Floor, Tyler, TX 75702 (the "<u>Sale Hearing</u>").

(b)    Within two business days after the conclusion of the Auction (and in advance of the Sale Hearing), the Debtors will file a notice of the Winning Bid and Back-Up Bid, along with copies of the Winning Bid APA, Back-Up Bid APA and Sale Order (the "<u>Notice of Winning Bid and Back-Up Bid</u>"), redacted as necessary to protect commercially sensitive and/or confidential information.

America:0105342/00004: 71133303v.1

(c)     Any objection to the approval of the Winning Bid and Back-Up Bid shall be filed no later than **May 10, 2019 at 5:00 o'clock p.m. (CDT).**

(d)     As applicable, the Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Winning Bidder and the Back-Up Bidder were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) each of the Winning Bid and the Back-Up Bid was a Qualified Bid, (iv) Closing of the Sale with the Winning Bid (or if applicable, the Back-Up Bid) will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors and (v) each of the Winning Bidder and the Back-Up Bidder are deemed to be purchasers of the Purchased Assets in good faith as set forth in Section 363(m) of the Bankruptcy Code.

(e)     At the Sale Hearing, the Debtors shall request the Bankruptcy Court to enter an order approving the Winning Bid and, if applicable, the Back-Up Bid (the "Sale Order"). Except to the extent revised by the Debtors in their discretion, after consultation with the Bond Trustee, the Committee, and the Winning Bidder, the Sale Order presented to the Bankruptcy Court at the Sale Hearing shall be in the form submitted as part of the Winning Bid.

(f)     At the Sale Hearing, the Debtors shall also request, as part of the Sale Order, authorization from the Bankruptcy Court to accept the Back-Up Bid as the Winning Bid, and consummate such bid, if the Winning Bid is not consummated when and as required by its terms without further order of the Bankruptcy Court. The Debtors and the Back-Up Bidder shall be bound to consummate the Back-Up Bid if the Winning Bid terminates at which time the Back-Up Bidder shall be deemed the Winning Bidder. The Debtors shall promptly give notice to the Back-Up Bidder if the Winning Bid is terminated and shall provide the Back-Up Bidder a reasonable period within which to close as set forth in the Back-Up Bid APA.

**15.    Treatment Of Deposit**.

(a)     The Deposit of each Potential Bidder shall be held pursuant to an escrow agreement acceptable to the Debtors, subject to the prior consent of the Debtors as to the escrow agent and form of escrow agreement, where such consent is not to be unreasonably withheld.

(b)     The Deposit of the Winning Bidder, upon Closing shall be credited to the Purchase Price. As shall be set forth in the Winning Bid APA, if the Winning Bidder fails to close, then the Deposit which is the subject of the Winning Bid shall be retained by the Debtors or returned to the Winning Bidder as shall be set forth in the Winning Bid APA.

8

(c)     The Deposits of any Qualified Bidders other than the Winning Bidder and the Back-Up Bidder will be returned within two (2) business days after the conclusion of the Sale Hearing.

(d)     The Deposit of any Potential Bidder who is determined not to be a Qualified Bidder shall be returned to such Potential Bidder within two (2) business days of such determination, pursuant to the terms of the applicable escrow agreement.

16.    **Payment of the Break-Up Fee:** If the Stalking Horse Bidder is not the Winning Bidder, the Debtors shall pay the Break-Up Fee to the Stalking Horse Bidder as set forth in the agreement between the Debtors and the Stalking Horse Bidder providing for such Break-Up Fee, but in no event shall payment be any earlier than the time of the consummation of the sale of the Purchased Assets or transfer thereof in the context of an Alternative Transaction and shall only be paid from the proceeds of such sale or upon the transfer of such Purchased Assets.

17.    **Reservation of Rights**. **THE DEBTORS RESERVE THEIR RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER IN CONSULTATION WITH THE BOND TRUSTEE AND THE COMMITTEE THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS AND TO IMPOSE, AT OR PRIOR TO THE AUCTION, ADDITIONAL CUSTOMARY TERMS AND CONDITIONS ON THE SALE OF THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, MODIFYING THE REQUIREMENTS FOR A QUALIFIED BID, EXTENDING THE DEADLINES SET FORTH IN THESE BIDDING PROCEDURES, ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTORS' REASONABLE, GOOD-FAITH BUSINESS JUDGMENT, FOLLOWING CONSULTATION WITH THE BOND TRUSTEE AND THE COMMITTEE, THE DEBTORS DETERMINE THAT SUCH QUALIFIED BID IS (I) INADEQUATE OR INSUFFICIENT, (II) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (III) CONTRARY TO THE BEST INTERESTS OF THE DEBTORS. THE DEBTORS RESERVE THE RIGHT, AT ANY TIME, FOR ANY REASON AND IN THEIR REASONABLE, GOOD-FAITH BUSINESS JUDGMENT, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE**.

18.    The provisions agreed to in the Addendum to Engagement Letter with RPA Advisors, dated January 10, 2018 [Docket #700] remain in full force and effect, including without limitation the provisions under Paragraph (2) thereto.

America:0105342/00004: 71133303v.1

# EXHIBIT B

## AMENDED AUCTION AND SALE NOTICE

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
(LUFKIN DIVISION)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| TEXAS PELLETS, INC.[1] | ) | under Case No. 16-90126 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

## AUCTION AND SALE NOTICE

**PLEASE TAKE NOTICE** that on April 8, 2019, Texas Pellets, Inc. ("TPI") and German

Pellets Texas, LLC ("GPTX"), the debtors and debtors-in-possession in the above-captioned cases

(together, the "Debtors"), filed their *Motion for Entry of Orders: (I) Approving Amended Bidding*

*Procedures and Awarding Certain Protections and (II) Authorizing (A) the Sale of Substantially*

*All of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases* [Docket #1109] (the "Sale Motion") with the United States

Bankruptcy Court for the Eastern District of Texas (Lufkin Division) (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court entered an order on

the Sale Motion on April 30, 2019 (the "Bidding Procedures Order") [Docket #1129] approving

the amended bidding procedures ("Bidding Procedures") attached to that order.

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax
identification number, are  Texas Pellets, Inc. (3478) and German Pellets Texas, LLC (9084).  The corporate
headquarters and service address for the jointly-administered debtors is:  164 CR 1040, Woodville, TX 75979.

America:0105342/00004: 71133303v.1

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order and Bidding Procedures replace and supersede in their entirety the Court's previous Orders dated February 7, 2017 [Docket #330] and February 21, 2019 [Docket #1048], and the bidding procedures attached thereto.

**PLEASE TAKE FURTHER NOTICE** that all parties that may be interested in submitting a bid for the Purchased Assets (as defined in the Bidding Procedures) or taking part in the Auction must read carefully both the Bidding Procedures and the Bidding Procedures Order. Only those parties that submit Qualified Bids (as defined in the Bidding Procedures) may participate in the Auction. If you are interested in submitting a Qualified Bid, you must comply with the Bidding Procedures. Any party in interest wishing to receive a complete set of the Sale Motion, Bidding Procedures, Bidding Procedures Order, Stalking Horse APA (as defined in the Bidding Procedures), and available marketing materials may do so by contacting the Debtors' investment banker (the "Investment Banker"), Attn: Jay C. Jacquin, Managing Director, Configure Partners, Tower Place Buckhead, 3340 Peachtree Rd NE, Suite 1010, Atlanta, GA 30326, E-mail: jjacquin@configurepartners.com. In addition, copies of the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, and the Stalking Horse APA may be accessed in the Debtors' on-line data room maintained by the Investment Banker.

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the bidding process and submit a Bid (as defined in the Bidding Procedures) for the Purchased Assets must submit its competing bid by no later than 5:00 p.m. (Prevailing Central Time) on May 6, 2019 (the "Bid Deadline") so that such Bids are actually received by the Bid Deadline by all of the following parties: (i) Debtors' Counsel (Locke Lord LLP, 601 Poydras Street, Suite 2660, New Orleans, Louisiana 70130, Attn: C. Davin Boldissar, Email: dboldissar@lockelord.com);

(ii) Counsel for Bond Trustee, Attn: Daniel S. Bleck, Mintz Levin Cohn Ferris Glovsky and Popeo PC, One Financial Center, Boston, MA 02111, E-mail: dsbleck@mintz.com; (iii) the Debtors' Investment Banker, Attn: Jay C. Jacquin, Managing Director, Configure Partners, Tower Place Buckhead, 3340 Peachtree Rd NE, Suite 1010, Atlanta, GA 30326, E-mail: jjacquin@configurepartners.com; and (iv) Counsel to the Official Committee of Unsecured Creditors ("UCC"), Attn: Patrick Kelley, Patrick Kelley, PLLC, 112 E. Line Street, Suite 203, Tyler, Texas 75702, E-mail: pat@patkelleylaw.com (the "Bid Deadline Recipients").  Potential Bidders may either e-mail their Bids to the e-mail addresses listed above or else mail or deliver their Bids to the physical addresses listed above so that they are actually received by the Bid Deadline.  The Debtors shall have no obligation to consider any other delivery format, such as fax, as acceptable.  The Debtors may, following consultation with the Bond Trustee and the UCC, extend the Bid Deadline until the commencement of the Auction for one or more Potential Bidders without prior notice to any party, but shall have no obligation to do so under any circumstances.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may, in their reasonable discretion and in consultation with the Bond Trustee and the UCC, determine whether a bidder is a "Qualified Bidder" and a Bid is a "Qualified Bid" (both as defined under the Bidding Procedures). In advance of May 9, 2019, the Debtors shall file and serve on all Potential Bidders a notice (the "Auction Notice") indicating which Bids, if any, have been designated as Qualified Bids, and the Auction (as defined below) shall be conducted on May 9, 2019 as further described below.

**PLEASE TAKE FURTHER NOTICE** that the sale of the Purchased Assets also contemplates the assumption and assignment of certain contracts and leases of the Debtors

3

(collectively, the "Executory Contracts").  The procedures governing the proposed assumption and assignment of the Executory Contracts in connection with the Sale (including the procedure for filing objections to such proposed assumption and assignment on any ground and all applicable deadlines) are set forth in the Court's previous Order Granting Motion to Approve Assumption and Assignment Procedures for Certain Executory Contracts and Unexpired Leases entered on February 7, 2017 [Docket #328], which remains in full force and effect and the provisions thereof apply to the Sale Motion and Sale, with the terms "Winning Bidder" and "APA" having the same meaning as set forth in the Sale Motion; and a separate notice of all such procedures and deadlines was previously  provided separately to all contract counterparties and other parties in interest in the above-captioned cases.

PLEASE TAKE FURTHER NOTICE that, if necessary, the Debtors shall conduct an auction on May 9, 2019 at the offices of Locke Lord LLP, 2800 JP Morgan Chase Tower, 600 Travis, Houston, TX 77002-3095, commencing at 10:00am (Prevailing Central Time) (the "Auction").

PLEASE TAKE FURTHER NOTICE that the Bidding Procedures allow for the Debtors to modify the Bidding Procedures (including the dates set forth therein, which include dates and times set forth in this Auction and Sale Notice) following consultation with the Bond Trustee and the UCC.  Notice of any such extensions shall be filed with the Court and shall specify each amended date that varies a date (or dates) in the Bidding Procedures (the "Sale Extension Notice"). The Sale Extension Notice, if any, shall also be served on the Investment Banker for distribution to all Potential Bidders.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve and have the right to withdraw the Bidding Procedures and cancel the Auction at any time, pursuant to the Bidding

4

Procedures Order, after consultation with the Bond Trustee and the UCC.

**PLEASE TAKE FURTHER NOTICE** that only Qualified Bidders who have submitted a Qualified Bid may attend and/or participate at the Auction. As set forth more fully in the Bidding Procedures, the Bond Trustee may credit bid at any time during the Auction, and such bid shall be considered a Qualified Bid. Only Qualified Bidders, in person or through duly-authorized representatives may bid at the Auction. Each Qualified Bidder must have at least one duly-authorized representative with authority to bind the Qualified Bidder at the Auction. In addition to Qualified Bidders and their representatives, only the Debtors, the Bond Trustee, members of the UCC, the holders of the Bonds, and their respective advisors shall be permitted to attend the Auction.

**PLEASE TAKE FURTHER NOTICE** that, at the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall be conducted as set forth in the Bidding Procedures, which may be amended, modified, or supplemented as set forth in the Bidding Procedures. At the conclusion of the Auction, the Debtors, in the exercise of their reasonable, good-faith business judgment and after consultation with the Bond Trustee and the UCC, will determine (i) the Winning Bid and the Winning Bidder and (ii) the Back-Up Bid and the Back-Up Bidder (as such terms are defined in the Bidding Procedures).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, a hearing will be held **on Wednesday, May 15, 2019 at 9:30 a.m. (Prevailing Central Time)**, in the Courtroom of the United States Bankruptcy Court for the Eastern District of Texas, 110 N College Ave, 9th Floor, Tyler, TX 75702 (the "Sale Hearing"). At the Sale Hearing, the Debtors will present the Winning Bid and the Back-Up Bid to the Bankruptcy Court and seek the entry of an order approving the sale of the Purchased Assets to the Winning Bidder (the "Sale Order"). In addition, the Debtors will also seek to approve the assumption and assignment to the

Winning Bidder of those Executory Contracts that the Winning Bidder ultimately decides to have assumed and assigned to it.

**PLEASE TAKE FURTHER NOTICE** that, subject to the reservations set forth in the Bidding Procedures, the Debtors will sell the Purchased Assets, subject to the terms of the Winning Bid, and pursuant to the Sale Order.  If the Winning Bidder fails to consummate an approved Sale because of a breach or a failure to perform on the part of such Winning Bidder, the Debtors may sell the Purchased Assets to the Back-Up Bidder without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any party in interest with standing, including holders of the Bonds, any contract counterparty, or any creditor, may exercise its right to file an objection to the Sale Motion and may appear and be heard at the Sale Hearing. Such objections to the Sale Motion must be filed in writing with the Court **on or before May 10, 2019**, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be served upon the following parties: (a) Debtors' Counsel (Locke Lord LLP, 601 Poydras Street, Suite 2660, New Orleans, Louisiana 70130, Attn: C. Davin Boldissar, Email: dboldissar@lockelord.com); (b) Counsel for Bond Trustee, Attn: Daniel S. Bleck, Mintz Levin Cohn Ferris Glovsky and Popeo PC, One Financial Center, Boston, MA 02111, E-mail: dsbleck@mintz.com; (c) the Debtors' Investment Banker, Attn: Jay C. Jacquin, Managing Director, Configure Partners, Tower Place Buckhead, 3340 Peachtree Rd NE, Suite 1010, Atlanta, GA 30326, E-mail: pat@patkelleylaw.com; (d) Counsel to the UCC, Attn: Patrick Kelley, Patrick Kelley, PLLC, 112 E. Line Street, Suite 203, Tyler, Texas 75702, E-mail: jjacquin@configurepartners.com, (e) the Office of the United States Trustee for the Eastern District of Texas, Attn: John Vardeman, Trial Attorney, 110 N. College, Suite 300, Tyler, Texas 75702, E-mail: John.M.Vardeman@usdoj.gov; and (f) all those persons and entities that have

6

formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule

2002 and the Local Bankruptcy Rules.

**PLEASE TAKE FURTHER NOTICE** THAT ONLY THOSE OBJECTIONS AND

RESPONSES THAT ARE TIMELY FILED AND SERVED ~~AND RECEIVED~~ WILL BE

CONSIDERED AT THE SALE HEARING.    FAILURE TO FILE A TIMELY

OBJECTION (1) MAY RESULT IN ENTRY OF ORDERS GRANTING THE SALE

MOTION AS REQUESTED BY THE DEBTORS AND (2) SHALL BE DEEMED A

WAIVER BY ANY SUCH PARTIES NOTED ABOVE TO CONTEST THE SALE, THE

SALE PROCESS, THE RESULTS OF THE SALE, AND THE ACTIONS TAKEN IN

CONNECTION WITH SUCH SALE.

Dated: _____, 2019.                Respectfully submitted,

                                        */s/ C. Davin Boldissar*
                                   C. Davin Boldissar (La. #29094)
                                   *(admitted pro hac vice)*
                                   Locke Lord LLP
                                   601 Poydras Street, Suite 2660
                                   New Orleans, Louisiana 70130-6036
                                   Telephone: (504) 558-5100
                                   Fax: (504) 681-5211
                                   dboldissar@lockelord.com

                                   -and-

                                   W. Steven Bryant
                                   Texas Bar. No. 24027413
                                   Federal I.D. No.  32913
                                   Locke Lord LLP
                                   600 Congress Avenue, Ste. 2200
                                   Austin, Texas 78701
                                   Telephone: (512) 305-4726
                                   Fax: (512) 305-4800
                                   sbryant@lockelord.com

                                   **COUNSEL FOR TEXAS PELLETS, INC. AND
                                   GERMAN PELLETS TEXAS, LLC**

7