

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
(LUFKIN DIVISION)**

09/06/2019

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| TEXAS PELLETS, INC.[1] | ) | under Case No. 16-90126 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

**ORDER CONFIRMING JOINT CHAPTER 11 PLAN
OF TEXAS PELLETS, INC., AND GERMAN PELLETS TEXAS, LLC,
GRANTING FINAL APPROVAL OF DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT, AND ENTRY OF FINDINGS OF FACT
AND CONCLUSIONS OF LAW PERTAINING THERETO**

## INTRODUCTION

**WHEREAS**, the above-captioned debtors Texas Pellets, Inc. and German Pellets Texas, LLC (respectively, "TPI" and "GPTX," and collectively, the "Debtors") proposed the First Amended Joint Chapter 11 Plan of Texas Pellets, Inc. and German Pellets Texas, LLC, as immaterially modified [Docket #1247] and including the Plan Supplement [Docket #1135] and Amended Plan Supplement [Docket #1222 and #1248] (the "Plan");[2]

**WHEREAS**, the Debtors filed their First Amended Disclosure Statement in Support of First Amended Joint Chapter 11 Plan [Docket #1051] (the "Disclosure Statement");

**WHEREAS**, the Court entered its Order on August 6, 2019 [Docket #1228]; and the Court further entered its Order on April 9, 2019 entitled *Order Granting Agreed Motion to Reschedule*

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are Texas Pellets, Inc. (3478) and German Pellets Texas, LLC (9084). The corporate headquarters and service address for the jointly-administered is: 164 CR 1040, Woodville, TX 75979.

[2] Capitalized terms and phrases used herein have the meanings given to them in the Plan. A copy of the Plan is attached hereto as Exhibit A and incorporated herein by reference.

*Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket #1110], amending and superseding that certain order entered on February 13, 2019 entitled *Order Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket #1040]; which among other things, established procedures for the solicitation and tabulation of votes on the Plan and scheduling the continued and reset hearing (the "Confirmation Hearing") to consider confirmation of the Plan for September 4, 2019 at 1:30 pm (Central Time) (collectively, the "Plan Scheduling Order");

**WHEREAS**, certain certificates of service and publication with respect to the mailing and publication of notice of the Confirmation Hearing and solicitation materials in respect of the Plan in accordance with the Plan Scheduling Order were filed with the Court on March 1, 2019 [Docket #1060], March 21, 2019 [Docket #1089], March 22, 2019, [Docket #1095], April 12, 2019 [Docket #1114], April 19, 2019 [Docket #1122], May 13, 2019 [Docket #1156], May 16, 2019 [Docket #1162], May 16, 2019 [Docket #1165], August 2, 2019 [Docket #1224], August 6, 2019 [Docket #1227] , August 6, 2019 [Docket #1229], August 8, 2019 [Docket #1230], and August 29, 2019 [Docket #1246] (together, the "Certificate of Service")

**WHEREAS**, the Debtors filed the Voting Tabulation regarding the solicitation of votes and tabulation of Ballots cast on the Plan on August 29, 2019  [Docket # 1244] (the "Voting Tabulation") attesting to the results of the tabulation of the properly executed and timely received Ballots for the Plan as follows:

      i.    **Class 1 (Bond Trustee Secured Claim)**. The Debtors received fourteen (14) acceptances out of fourteen (14) votes from holders of Claims under Class 1 (Bond Trustee Secured Claim), with the Class 1 claimants who voted in favor of the Plan holding Claims in the amount of $156,305,000.00 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 1 Claims;

    ii.    **Class 2(a) (Secured Ad Valorem Tax Claims Against TPI)**. The Debtors received zero (0) acceptances out of zero (0) votes from holders of Claims under Class 2(a) (Secured Ad Valorem Claims Against **TPI**);

    iii.    **Class 2(b) (Secured Ad Valorem Tax Claims Against GPTX)**. The Debtors received zero (0) acceptances out of zero (0) votes from Claims under Class 2(b) (Secured Ad Valorem Claims Against **GPTX**);

    iv.    **Class 2(c) (Secured Claims Against TPI)**
The Debtors received zero (0) acceptances out of zero (0) votes from holders of Claims under Class 2(c) (Secured Claims Against **TPI**);

    v.    **Class 2(d) (Secured Claims Against GPTX)**
The Debtors received zero (0) acceptances out of zero (0) votes from holders of Claims under Class 2(d) (Secured Claims Against **GPTX**);

    vi.    **Class 3(a) (Unsecured Claims Against TPI)**. The Debtors received fourteen (14) acceptances out of fourteen (14) votes from holders of Claims (all holders of Deficiency Claims) under Class 3(a) (Unsecured Claims Against **TPI**), with the Class 3(a) claimants who voted in favor of the Plan holding Claims in the amount of $156,305,000.00 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 3(a) Claims;

    vii.    **Class 3(b) (Unsecured Claims Against GPTX)**. The Debtors received fourteen (14) acceptances out of fourteen (14) votes from holders of Claims (all holders of Deficiency Claims) under Class 3(a) (Unsecured Claims Against **GPTX**), with the Class 3(b) claimants who voted in favor of the Plan holding Claims in the amount of $156,305,000.00 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 3(b) Claims;

    viii.    **Class 4 (Interests)**. The Debtors received zero (0) acceptances out of zero (0) votes from holders of Claims under Class 4 (Interests).  Class 4 is deemed to reject the Plan.

**WHEREAS**, the Debtors placed into evidence the Voting Tabulation at the Confirmation Hearing;

**WHEREAS,** an objection to confirmation of the Plan (the "Port Objection") [Docket #1139] was filed by the Port, an objection to confirmation of the Plan (the "NAPCO Objection") [Docket #1142, 1149, and 1238] was filed by NAPCO, and an objection to the Disclosure

Statement and confirmation of the Plan (the "UCC Objection") [Docket #1144, 1145 and 1147] was filed by the UCC;

WHEREAS, the Port Objection, the NAPCO Objection, and the UCC Objection (together, the "Objections") have all been resolved by language contained in this Order and in the Modifications referenced below and the Port Objection was withdrawn based upon that resolution [Docket #1249];

WHEREAS, the Debtors filed certain immaterial modifications to the Plan on August 2, 2019 [Docket #1221], updated as of August 30, 2019 [Docket #1247] (the "Modifications");

WHEREAS, the Court has reviewed the Plan, the Modifications, the Voting Tabulation, the Certificate of Service, the Objections, and the other papers before the Court in connection with the confirmation of the Plan;

WHEREAS, the Confirmation Hearing was held on September 4, 2019 at 1:30 pm (Central Time) before the Court;

WHEREAS, the Court heard the statements of counsel in support of Plan confirmation and considered all evidence presented as reflected in the record at the Confirmation Hearing;

WHEREAS, the Court, after due deliberation and for sufficient cause, finds that the evidence admitted in support of the Plan at the Confirmation Hearing is persuasive and credible;

WHEREAS, the Court made certain limited findings of fact and conclusions of law on the record at the Confirmation Hearing, and reserved the right to make additional detailed findings and conclusions in the confirmation order, as now set forth herein; and

WHEREAS, the Court finds that just cause exists for entry of the following order.

4

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

A.  <u>Findings of Fact / Conclusions of Law</u>. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  <u>Venue and Jurisdiction</u>. Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during this Reorganization Case. This Court has jurisdiction over this matter and the Debtors' cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the Bankruptcy Code and should be confirmed and to enter a final order with respect thereto.

C.  <u>Eligibility for Relief</u>. The Debtors qualify as "debtors" under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan.

D.  <u>Commencement and Administration of the Reorganization Case</u>. The Debtors commenced the Reorganization Case on April 30, 2016 and have authority to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Reorganization Case pursuant to section 1104 of the Bankruptcy Code. In accordance with certain orders of this Court, this Reorganization Case is being administered pursuant to Bankruptcy Rule 1015(b).

E.  <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of this Reorganization Case maintained by the Clerk of this Court or its duly appointed agent, including, but not limited to, all pleadings and other documents filed, all orders entered, and all evidence and

arguments made, proffered, adduced, and/or presented at the various hearings held before this Court during the pendency of this Reorganization Case.

F.    <u>Disclosure Statement</u>.  The Disclosure Statement contains information adequate to enable a hypothetical investor typical of the holders of claims or interest in this case to make an informed judgment about the Plan, thereby satisfying the requirements of Section 1125(a) of the Bankruptcy Code.

G.    <u>Solicitation and Notice</u>. As evidenced by the Certificate of Service, the solicitation materials were transmitted and served in accordance with the terms of the Plan Scheduling Order. Such service was sufficient notice to satisfy the requirements under the Bankruptcy Code and the Bankruptcy Rules.  Such service of the solicitation materials as set forth in the Affidavit of Service and as stated on the record in the Confirmation Hearing was (i) conducted in good faith, (ii) provided adequate and sufficient notice of the Confirmation Hearing and the other requirements, deadlines and matters related to Confirmation of the Plan, (iii) timely and properly served or published in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Plan Scheduling Order and (iv) provided due process and an opportunity to appear and to be heard to all parties in interest.  Because the foregoing transmittals, notices and service were adequate and sufficient, no other or further notice is necessary or shall be required.

H.    <u>Voting</u>. As evidenced by the Voting Tabulation, votes on the Plan were solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, and the Bankruptcy Rules.

I.    <u>Burden of Proof</u>. The Debtors have the burden of proving all elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence and the Debtors have met that evidentiary burden.

J.      <u>Plan Modifications</u>. To the extent that the modifications to the Plan since the commencement of solicitation (including without limitation the Modifications) constitute material modifications, the modifications are for the benefit of all constituents and do not adversely affect or change the treatment of any Claims or Interests.  Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the modifications (including without limitation the Modifications) do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims against the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The disclosure of the modifications on the record at the Confirmation Hearing and the filing of the Modifications [Docket #1221 and 1223] constitute due and sufficient notice thereof under the circumstances of this Reorganization Case. Accordingly, the Plan, as modified by the modifications and this Order, is properly before this Court, and all votes cast with respect to the Plan prior to the modifications shall be binding and shall apply with respect to the Plan.

K.      <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the Debtors as plan proponents, thereby satisfying the requirements of Bankruptcy Rule 3016(a). The Disclosure Statement was filed with the Plan on the docket in this Reorganization Case, thereby satisfying the requirements of Bankruptcy Rule 3016(b) [Docket #1051].   The injunction, release and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities subject to the injunction, thereby satisfying the requirements of Bankruptcy Rule 3016(c).

L.      <u>Good Faith Solicitation and Section 1125(e) of the Bankruptcy Code</u>. The Debtors solicited votes with respect to the Plan in good faith and in a manner consistent with the

7

Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Based on the record before this Court in this Reorganization Case, including, but not limited to, the evidence and testimony proffered, adduced or presented at the Confirmation Hearing, the Debtors and their representatives (as applicable) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules in connection with all of their respective activities relating to the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan to the extent authorized by this Order.

## COMPLIANCE WITH THE REQUIREMENTS
## OF SECTION 1129 OF THE BANKRUPTCY CODE

M.      The evidentiary record of the Confirmation Hearing support the findings of fact and conclusions of law set forth in the following paragraphs.

N.      <u>Section 1129(a)(1) of the Bankruptcy Code</u>. The Plan complies with each applicable provision of the Bankruptcy Code. In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

     i.     <u>Section 1122 of the Bankruptcy Code</u>. In accordance with section 1122(a) of the Bankruptcy Code, Article III of the Plan classifies each Claim against and Interest in each of the Debtors into a Class containing only substantially similar Claims against or Interests in each such Debtor;

    ii.     <u>Section 1123(a)(1) of the Bankruptcy Code</u>. In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III of the Plan properly classifies all Claims and Interests that require classification. In particular, Article III of the Plan segregates into separate classes, Class 1 (Bond Trustee Secured Claim), Classes 2(a) and 2(b) (Secured Ad Valorem Tax Claims), Classes 2(c) and 2(d) (Secured Claims), Classes 3(a) and 3(b) (Unsecured Claims) and Class 4 (Interests). The number of classes reflects the diverse characteristics of those Claims and Interests, and the legal rights under the Bankruptcy Code of each of the holders of Claims or Interests

8

within a particular Class are substantially similar to other holders of Claims or Interests within that Class;

iii. <u>Section 1123(a)(2) of the Bankruptcy Code</u>. In accordance with section 1123(a)(2) of the Bankruptcy Code, Article V of the Plan discloses that Classes 2(a), 2(b), 2(c), and 2(d) are unimpaired because the legal, equitable and contractual rights of the holders of such claims or interests are unaltered by the Plan;

iv. <u>Section 1123(a)(3) of the Bankruptcy Code</u>. In accordance with section 1123(a)(3) of the Bankruptcy Code, Article V of the Plan identifies and describes any Class of Claims or Interests that is impaired under the Plan. In particular, Article V of the Plan indicates that Classes 1, 3(a), 3(b), and 4 are impaired;

v. <u>Section 1123(a)(4) of the Bankruptcy Code</u>. In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

vi. <u>Section 1123(a)(5) of the Bankruptcy Code</u>. In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation: (i) Sale of the Purchased Assets under the Sale Order; (ii) satisfaction of the DIP Loans from Sale Proceeds under the Sale Order, plus the DIP Loan Balance Repayment; (iii) satisfaction of Allowed Administrative Claims and Allowed Professional Fee Claims from the Distribution Reserve; (iv) satisfaction of Allowed Priority Tax Claims from the Distribution Reserve; (v) treatment of Allowed Secured Ad Valorem Tax Claims and other Secured Claims through distribution of Sale Proceeds; (vi) treatment of the Bond Trustee Secured Claim through distribution of Sale Proceeds, distribution of any remaining Distribution Reserve Balance, and issuance of Reorganized TPI Equity and Reorganized GPTX Equity; (vii) creation of the Liquidating Trust under Section 9.10 with the powers set forth under Section 9.11, and vesting in such Liquidating Trust the Liquidating Trust Assets, subject to existing Liens; (viii) payment of the 10% Distribution to certain Allowed Unsecured Claims for which a Class 3 Election is timely and properly made; and (ix) all other matters set forth under Articles VIII and IX of the Plan;

vii. <u>Section 1123(a)(6) of the Bankruptcy Code</u>. The Debtors have complied with the requirements of section 1123(a)(6); as set forth under Sections 9.6 and 9.7 of the Plan and as set forth on the record at the Confirmation Hearing;

viii. <u>Section 1123(a)(7) of the Bankruptcy Code</u>. To the extent that section 1123(a)(7) of the Bankruptcy Code applies to the selection of the

Liquidating Trustee and the Reorganized Officers and Directors, the selection of the Liquidating Trustee and Reorganized Officers and Directors is consistent with the interests of holders of Claims and Interests and public policy;

ix.    Section 1123(b)(1) of the Bankruptcy Code. In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan provides for the impairment of certain classes of Claims and Interests.

x.    Section 1123(b)(2) of the Bankruptcy Code. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan, together with the Plan Supplement and Amended Plan Supplement, provides for the rejection of certain Executory Contracts and Unexpired Leases to which the Debtors are parties;

xi.    Section 1123(b)(3) of the Bankruptcy Code. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Plan provides for the settlement and adjustment of various claims and interests belonging to the Debtors or their estates;

xii.    Section 1123(b)(5) of the Bankruptcy Code. Article V and other provisions of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each class of Claims and Interests including holders of secured claims;

xiii.    Section 1123(b)(6) of the Bankruptcy Code. In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

xiv.    Section 1123(d) of the Bankruptcy Code. In accordance with section 1123(d) of the Bankruptcy Code, all defaults cured under the Plan shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law;

O.    Section 1129(a)(2) of the Bankruptcy Code. The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, and Bankruptcy Rules 3017 and 3018. Votes with respect

10

to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, and the Bankruptcy Rules.  The Debtors and each of their respective directors, officers, employees, agents, members and professionals, acting in such capacity, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

P.    <u>Section 1129(a)(3) of the Bankruptcy Code</u>. The Debtors proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation, amendment, and presentation of the Plan. Based on the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed by the Debtors in good faith and in the belief that it will maximize the value of the ultimate recoveries to all creditor groups on a fair and equitable basis. The Plan is designed to effectuate the objectives and purposes of the Bankruptcy Code by maximizing the recoveries to parties in interest. Moreover, the Plan itself and the acceptance of the Plan by all Classes entitled to vote, provide independent evidence of the Debtors' good faith in proposing the Plan. Further, as described in greater detail below, the Plan's indemnification, exculpation, release and injunction provisions have been negotiated in good faith, are consensual and voluntary and are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code and applicable law in this Circuit. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

Q.    <u>Section 1129(a)(4) of the Bankruptcy Code</u>.  In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Reorganization Case, or in connection with the Plan and incident to the Reorganization Case, including Professional Fee Claims, has been or will be made by a Debtor other than payments that have been authorized by order of the Court.  Article VI of the Plan provides for the payment of

11

Administrative Claims, including Professional Fee Claims, which are subject to the Court's approval and the standards of the Bankruptcy Code. In connection with the foregoing, Section 9.18 of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for the periods ending on or before the Effective Date.

R.      Section 1129(a)(5) of the Bankruptcy Code. To the extent that section 1129(a)(5) is applicable to the selection of the Liquidating Trustee and Reorganized Officers and Directors, the identity and the terms of retention of the Liquidating Trustee and Reorganized Officers and Directors were properly disclosed in the Liquidating Trust Agreement, Plan Supplement, Amended Plan Supplement, and the Plan.  In light of the structure of the Plan, the provisions of Section 1129(a)(5) are satisfied through disclosure of the Liquidating Trustee, disclosure of the Reorganized Officers and Directors and other accompanying disclosures made herein and in the Plan, Plan Supplement, Amended Plan Supplement, and Disclosure Statement (including without limitation the disclosure of the members of the Liquidating Trust Committee).

S.      Section 1129(a)(6) of the Bankruptcy Code. Section 1129(a)(6) of the Bankruptcy Code is not applicable. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

T.      Section 1129(a)(7) of the Bankruptcy Code. Each holder of an impaired Claim that has not accepted the Plan will on account of such Claim, as demonstrated by the liquidation analyses included as Exhibit "1" to the Disclosure Statement, receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holders would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

U.     <u>Section 1129(a)(8) of the Bankruptcy Code</u>.   Section 1129(a)(8) of the Bankruptcy

Code has not been satisfied.   The evidence does establish that all Classes, other than Class 4, have

either accepted the Plan or are unimpaired. Specifically, the holders of Claims in Class 1 voted to

accept the Plan, Classes 2(a), 2(b), 2(c), and 2(d) are unimpaired, and the holders of Deficiency

Claims in Class 3(a) and 3(b) voted to accept the Plan.   However, Class 4 is deemed to have

rejected the Plan.   Nonetheless, as set forth below, the Plan satisfies the "cramdown" requirements

of section 1129(b) of the Bankruptcy Code necessary to obtain Confirmation of the Plan,

notwithstanding the deemed rejection of the Plan by Class 4; and to the extent necessary and/or

applicable, the provisions of Section 1129(b) of the Bankruptcy Code are also satisfied as to

Classes 3(a) and 3(b).

V.     <u>Section 1129(a)(9) of the Bankruptcy Code</u>. The Plan also meets the requirements

regarding the payment of Administrative Claims and Priority Tax Claims, as set forth in section

1129(a)(9) of the Bankruptcy Code:

> i.      Under Section 6.1.1 of the Plan, and as consented to by the DIP Lender (as confirmed at the Confirmation Hearing), the DIP Loans are satisfied under the Plan through Sale Proceeds and any other proceeds of the Estates and the DIP Loan Balance Repayment.

> ii.     Subject to certain bar date provisions in the Plan, and except to the extent that the holder of an Allowed Administrative Claim agrees to different treatment, each holder of an Allowed Administrative Claim against the Debtors shall be paid the full Allowed amount of such Claim, to be paid solely from the Distribution Reserve, on the latest of: (a) the Effective Date, (b) five (5) Business Days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or (c) on such date or dates as provided in the documents governing the Debtors' obligation to the holder of such Allowed Administrative Claim.

> iii.    Subject to certain bar date provisions in the Plan, all holders of Professional Fee Claims shall be paid solely from the Distribution Reserve the full unpaid amount as is Allowed by the Court within five (5) Business Days after the date that such Claim is Allowed by Final Order of the Court, except

13

to the extent that the holder of an Allowed Professional Fee Claim agrees to a different treatment.

iv. Subject to other provisions of the Plan, all holders of Allowed Priority Tax Claims shall be paid solely from the Distribution Reserve the full unpaid amount as is Allowed by the Court after the date that such Claim is Allowed by Final Order of the Court, except to the extent that the holder of an Allowed Professional Priority Tax Claim agrees to a different treatment.

W. <u>Section 1129(a)(10) of the Bankruptcy Code</u>. As indicated in the Voting Tabulation and as reflected in the record of the Confirmation Hearing, at least one Class of Claims that is impaired under the Plan (Class 1) has voted to accept the Plan, as determined without including the acceptance by any insider, with respect to all Debtors under the Plan.

X. <u>Section 1129(a)(11) of the Bankruptcy Code</u>. As demonstrated by the evidence in the record, upon the Effective Date, the Liquidating Trust and Reorganized Debtors will have sufficient cash and other assets to meet their obligations under the Plan.

Y. <u>Section 1129(a)(12) of the Bankruptcy Code</u>.  Article 6.1.5 of the Plan provides that on the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Court, shall be paid by the Debtors in Cash equal to the amount of such Administrative Claims.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Liquidating Trustee in accordance therewith until the closing of the applicable Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.  The Reorganized Debtors retain and reserve the exclusive right to seek relief and/or determination of liability for any fees under 28 U.S.C. § 1930 for any periods accruing before the Effective Date, including without limitation the right to seek disgorgement or return of previously paid fees, and any such recovery shall vest in the Reorganized Debtors as part of the Reorganized Debtor Assets.  The Liquidating Trust retains and reserves the right to seek relief and/or determination of liability for any fees under 28 U.S.C. § 1930 for any periods accruing after the Effective Date.

14

Z.      <u>Section 1129(a)(13) of the Bankruptcy Code</u>. No satisfaction of the requirements of section 1129(a)(13) of the Bankruptcy Code is required by the Plan, as the Debtors are not required to provide any retirement benefits.

AA.      <u>Section 1129(a)(14), (15) and (16) of the Bankruptcy Code</u>.  Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to this Reorganization Case as the Debtors owe no domestic support obligations, are not individuals and are not nonprofit corporations.

BB.      <u>Section 1129(b) of the Bankruptcy Code</u>. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed, notwithstanding the fact that Class 4 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code:

    i.      <u>Class 3(a).</u> To the extent applicable (in light of the acceptance of the Plan by Class 3(a) holders of Deficiency Claims), the Plan does not unfairly discriminate against the holders of Claims in Class 3(a).  Claims in Class 3(a) are legally distinct from other Claims and Interests, and the Claims and Interests are properly placed in separate classes, and there is no discrimination with respect to such classes.  The Plan's treatment of Class 3(a) is fair and equitable, since under Section 1129(b)(2)(B) of the Bankruptcy Code, no junior class is receiving any consideration.

    ii.      <u>Class 3(b).</u> To the extent applicable (in light of the acceptance of the Plan by Class 3(b) holders of Deficiency Claims), the Plan does not unfairly discriminate against the holders of Claims in Class 3(b).  Claims in Class 3(b) are legally distinct from other Claims and Interests, and the Claims and Interests are properly placed in separate classes, and there is no discrimination with respect to such classes.  The Plan's treatment of Class 3(b) is fair and equitable, since under Section 1129(b)(2)(B) of the Bankruptcy Code, no junior class is receiving any consideration.

    iii.      <u>Class 4.</u> The Plan does not unfairly discriminate against the holders of Interests in Class 4.  Interests in Class 4 are legally distinct from other Claims, and the Claims and Interests are properly placed in separate classes, and there is no discrimination with respect to such classes.  The Plan's treatment of Class 4 is fair and equitable, since under Section 1129(b)(2)(B) of the Bankruptcy Code, no junior class is receiving any consideration.

CC.      <u>Section 1129(c) of the Bankruptcy Code</u>. The Plan is the only plan that has been filed in this Reorganization Case that has been found to satisfy the requirements of subsections (a)

and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are not applicable in this Reorganization Case.

DD.    <u>Section 1129(d) of the Bankruptcy Code</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.    <u>Section 1129(e) of the Bankruptcy Code</u>. This Reorganization Case is not a small business case within the meaning of the Bankruptcy Code. Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to this Reorganization Case.

FF.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors satisfy all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## <u>FINDINGS REGARDING IMPLEMENTATION OF THE PLAN</u>

GG.    <u>Implementing Documents</u>. All documents and agreements necessary to implement the Plan, including, but not limited to, those contained in the Plan Supplement and Amended Plan Supplement, and all other relevant and necessary documents (including, without limitation, the Liquidating Trust Agreement and Reorganized Organizational Documents) are essential elements of the Plan and have been negotiated in good faith and at arm's-length with the UCC, the Bond Trustee and their respective officers, directors, employees, advisors, members and professionals, and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and not be in conflict with any federal, state or local law. The Debtors have exercised

16

reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

HH.    The Liquidating Trust Agreement and Reorganized Organizational Documents are approved.  The Debtors, through the CRO, and the Liquidating Trustee, are authorized, without any further notice to, or action, order or approval of, this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating to the Plan and Liquidating Trust Agreement and Reorganized Organizational Documents (including without limitation, the Liquidating Trust Agreement and Reorganized Organizational Documents themselves) and to perform their obligations under such agreements, documents, instruments and certificates.

II.    <u>Treatment of Executory Contracts and Unexpired Leases</u>.  Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article VIII of the Plan provides for the rejection of certain Executory Contracts and Unexpired Leases.  The Debtors' determinations regarding the rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims and other parties in interest in this Reorganization Case.  The Insurance Policies are not Executory Contracts subject to assumption or rejection; however, to the extent that such Insurance Policies may be deemed Executory Contracts or subject to assumption or rejection under Section 365 of the Bankruptcy Code, the assumption of such Insurance Policies is approved.  Further, without limitation, the Insurance Policies relating to and applicable to the Ship Loader Insurance Claims and Silo Burn Insurance Claims are retained by, and vest in, the Reorganized Debtors, as provided for under Section 9.4.1 of the Plan.  No payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such Insurance Policy or

17

agreement. Further, such assumption is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment; and the Debtors have met all of the requirements of Bankruptcy Code § 365(b) for assumption, and no amounts are required to cure any monetary and nonmonetary defaults under Insurance Policies. To the extent required, adequate assurance of future performance has been established with respect to Insurance Policies pursuant to Bankruptcy Code § 365(b)(1)(C).

JJ.     This Order shall constitute an order of the Court approving the rejections described in Article VIII of the Plan, pursuant to section 365 of the Bankruptcy Code. The procedures for rejection of an executory contract in Article VIII are approved in all respects, subject to the other terms of this Order.

KK.     Jurisdiction With Respect to Release, Exculpation and Injunction Provisions. This Court has jurisdiction under sections 157 and 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations and injunctions set forth in Article IX of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article IX of the Plan.

LL.     Releases, Exculpation and Injunction. Based on the record before this Court, including, but not limited to, the evidence proffered, adduced, and/or presented at the Confirmation Hearing, which is reasonable, persuasive, and credible, the release, exculpation, and injunction provisions set forth in Sections 9.22, 9.23, 9.24, and 9.25 of the Plan (1) confer substantial benefit to the Estates, (2) are fair, equitable, and reasonable, (3) are in the best interests of the Debtors, their Estates, and parties in interest, (4) are an integral element of the settlements and transactions incorporated into the Plan; (5) are supported by valuable consideration, (6) are important to the overall objectives of the Plan to finally resolve all Claims and Equity Interests among or against

18

the parties in interest in this Reorganization Case with respect to the Debtors' liquidation, and (7) do not relieve any party of liability arising out of an act or omission constituting willful misconduct (including, but not limited to, fraud) or gross negligence. Accordingly, this Court finds that (i) the releases of potential Claims belonging to the Debtors or their Estates pursuant to the Plan are part of a fair and a valid exercise of the Debtors' business judgment, (ii) the releases contemplated by Sections 9.22, 9.23, 9.24, and 9.25 of the Plan are fair, reasonable and appropriate under the circumstances of this Reorganization Case and (iii) the release, exculpation and injunction provisions set forth in the Plan were proposed in good faith, are fair and appropriate under the circumstances, are appropriately tailored, are intended to promote finality and prevent parties from attempting to circumvent the Plan's terms and are consistent with the Bankruptcy Code and applicable law in light of the extraordinary circumstances of these cases and the substantial contribution of all Released Parties and, therefore, valid and binding.

MM.   _Retention of Jurisdiction_. This Court may properly retain jurisdiction over any matter arising under the Bankruptcy Code, or arising in, or related to, this Reorganization Case or the Plan, after Confirmation thereof and after the Effective Date, and any other matter that is within this Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.

NN.   _Objections_. All parties have had a full and fair opportunity to litigate all issues raised in the Objections, or which might have been raised.  All Objections timely filed with the Court have been withdrawn on the Court's docket or withdrawn in open court at the Confirmation Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

19

I.   **GENERAL PROVISIONS REGARDING APPROVAL OF DISCLOSURE STATEMENT, CONFIRMATION OF THE PLAN, AND APPROVAL OF PLAN-RELATED DOCUMENTS.**

    A.   **APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN.**

    1.   Final approval of the Disclosure Statement is hereby **GRANTED**.

    2.   The Plan, as modified by this Order, and each of its provisions (whether or not specifically approved herein) and all exhibits and schedules thereto are **CONFIRMED** in each and every respect, pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any direct conflict between the terms of the Plan or any exhibit and/or schedule thereto and the terms of this Order, the terms of this Order shall control.  All objections to the Plan (including without limitation the Objections), other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing are either resolved on the terms set forth herein or overruled.

    B.   **CONDITIONS TO EFFECTIVE DATE.**

    3.   Nothing in this Order shall in any way affect the provisions of Section 9.1 of the Plan, which includes provisions regarding (i) the conditions precedent to the Effective Date of the Plan, (ii) the waiver of any such conditions, and (iii) the effect that the nonoccurrence of such conditions may have with regard to the Plan and this Order.

    C.   **EFFECTS OF CONFIRMATION.**

    4.   Notwithstanding any otherwise applicable law (including without limitation Bankruptcy Rules 3020(e), 6004(h), and/or 7062) immediately upon the entry of this Order, the terms of the Plan and this Order shall be binding upon all Entities, including the Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed

to have accepted or rejected the Plan), any and all nondebtor parties to Executory Contracts, Unexpired Leases, and Insurance Policies with any of the Debtors and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers and injunctions described herein and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

### D.   APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS.

5.      The Plan, as modified by this Order, and all exhibits and schedules thereto, substantially in the form as they exist at the time of the entry of this Order, including the Liquidating Trust Agreement and Reorganized Organizational Documents, are approved in all respects.

6.      The Debtors are hereby authorized to amend or modify the Plan and the exhibits to the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and the Plan.

## II.    CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.    BAR DATE FOR ADMINISTRATIVE CLAIMS.

7.      Pursuant to Section 6.1.4 of the Plan, Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that have not filed such requests by the Administrative Claims Bar Date as set forth in the Plan (including without limitation claimants who were subject to the bar date of March 25, 2019 for certain Administrative Claims set by the Court's order dated February 20, 2019 [Docket #1047]

21

and who failed to file such requests by such bar date), are, or shall be, forever barred from asserting such claims against the Debtors, Reorganized Debtors, the Liquidating Trust, or any other person or entity, or any of their respective property.

**B.      BAR DATE FOR PROFESSIONAL FEE CLAIMS.**

8.      Pursuant to Section 6.1.6 of the Plan, all professionals seeking payment of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Reorganization Case by the Professional Fee Claim Bar Date (thirty (30) calendar days after the Effective Date).

**C.      DAMAGES CLAIMS.**

9.      Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed by the Rejection Damages Bar Date (thirty (30) calendar days after the Effective Date).  As directed during the Confirmation Hearing, the Reorganized Debtors shall supply a supplemental notice of the Rejection Damages Bar Date to all counterparties affected by a rejection of an Executory Contract or Unexpired Lease under the Plan.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, the Liquidating Trust, or their respective property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Court.

22

## III.   MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A.   ACTIONS IN FURTHERANCE OF THE PLAN.

10.     Pursuant to section 1142 of the Bankruptcy Code and applicable state law, no action of the equity holders or directors of the Debtors or any other party shall be required for the Debtors or the Liquidating Trustee to: (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, the Liquidating Trust Agreement, and/or the Reorganized Organizational Documents.

11.     To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders or directors of any of the Debtors, this Order shall, pursuant to section 1142 of the Bankruptcy Code and applicable state law, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and equity holders of the appropriate Debtor.

12.     The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of any Debtor, Reorganized Debtor or the Liquidating Trust to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby.

### B.   VESTING AND RETENTION OF ASSETS BY REORGANIZED DEBTORS.

13.     On the Effective Date, and pursuant to Section 9.4.1 of the Plan, the Reorganized Debtor Assets shall vest in, and be retained by the Reorganized Debtors, subject to existing Liens, Claims, charges, or other encumbrances (except as discharged and/or released under the Plan or this Order), and subject to required disbursements of funds under the terms of

this Plan.  Pursuant to Section 9.4.1 of the Plan, the Reorganized Debtor Assets consist of all assets of the Debtors (except as expressly set forth in Section 9.4.1(ii) of the Plan), including but not limited to: the Reorganized Debtor Causes of Action including without limitation the Ship Loader Insurance Claims, the Silo Burn Insurance Claims, the Port Reimbursement Action, the Other Indemnity/Reimbursement Actions, and the Sale Proceeds Action; the Insurance Policies relating to and applicable to the Ship Loader Insurance Claims and Silo Burn Insurance Claims; and the Reorganized Debtor Reserve. The Bond Trustee Secured Claim, the Deficiency Claim of the Bond Trustee, and the DIP Loan Balance Repayment shall remain enforceable claims against the Reorganized Debtors. The Liens securing the foregoing Claims of the Bond Trustee and the DIP Lender shall remain valid and enforceable against the Reorganized Debtors and upon all of the Reorganized Debtor Assets, and shall be automatically perfected without further action of any kind. The Distribution Reserve shall be administered by the Reorganized Debtors for the purposes set forth in Section 6.1.7 of the Plan.

14.    Notwithstanding the foregoing or any other provision of this Order or the Plan, the Sale Proceeds Action shall be retained in, and shall remain vested in, the Reorganized Debtors, with all Sale Proceeds to be distributed and paid as required under the Sale Order, the Plan and this Order.

15.    All rights of the Reorganized Debtors to object to and oppose Claims and Disputed Claims, as set forth under Section 9.8.1 of the Plan (including without limitation the rights to assert defenses and claims with respect to such Claims and Disputed Claims), are expressly reserved and vested as set forth in Section 9.8.1 of the Plan, and shall be pursued and exercised as set forth under Section 9.8.1 of the Plan.

24

## C.     CREATION OF LIQUIDATING TRUST.

16.     On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement for the purposes as set forth in the Plan. The Liquidating Trust shall have a separate existence from the Debtors and Reorganized Debtors.

## D.     ASSETS TRANSFERRED TO THE LIQUIDATING TRUST.

17.     On the Effective Date, and pursuant to Section 9.4.1 of the Plan, the following Liquidating Trust Assets shall vest in the Liquidating Trust, subject to existing Liens, Claims, charges, or other encumbrances, and subject to required disbursements of funds under the terms of this Plan: (a) the Liquidating Trust Causes of Action including without limitation the D&O Action, the Port Dredging Action, and any and all Avoidance Actions and other Causes of Action of the Debtors and/or Reorganized Debtors that are not Reorganized Debtor Causes of Action, Purchased Assets, or expressly released or discharged in this Plan; and (b) the Liquidating Trust Funding Payment.

18.     All rights of the Liquidating Trustee to object to and oppose Claims and Disputed Claims, as set forth under Section 9.8.1 of the Plan (including without limitation the rights to assert defenses and claims with respect to such Claims and Disputed Claims), are expressly reserved and vested as set forth in Section 9.8.1 of the Plan, and shall be pursued and exercised as set forth under Section 9.8.1 of the Plan.

## E.     LIQUIDATING TRUSTEE AND LIQUIDATING TRUST COMMITTEE.

19.     Allison Byman of Byman & Associates, PLLC is appointed as the Liquidating Trustee.

25

20.     As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust) is hereby irrevocably appointed as the Debtors' attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest) as to and in connection with the property and assets vesting in the Liquidating Trust, with full authority in the place and stead of each Debtor and in the name of each Debtor to take any action and to execute any instrument that the Liquidating Trustee, in the Liquidating Trustee's sole discretion (which discretion is not subject to challenge by any party), may deem necessary or advisable, provided, however, that (i) the Liquidating Trustee is under no duty or obligation to exercise the duties in this paragraph; and (ii) the Liquidating Trustee shall have no authority or power over any Reorganized Debtor Assets (which are retained by, and vest in, the Reorganized Debtors).

21.     In accordance with Article IX of the Plan, the Liquidating Trustee will be the exclusive trustee of the Liquidating Trust and assets of the Liquidating Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code as to matters solely relating to assets transferred to, and vesting in, the Liquidating Trust.  The powers, rights and responsibilities of the Liquidating Trustee are specified in the Liquidating Trust Agreement and the Plan.  After the Effective Date, and subject to the provisions of the Plan including without limitation Section 9.8.1 thereto, the Liquidating Trustee shall be responsible for all administrative responsibilities and requirements for the Estates within the Bankruptcy Case, including without limitation, reporting obligations, and payment of any fees required, if any, pursuant to 28 U.S.C. § 1930.

22.     The initial members of the Liquidating Trust Committee are: (i) the Bond Trustee; and (ii) other members to be disclosed in the notice of Effective Date to be filed under Section 9.2

26

of the Plan.  The appointment of the Liquidating Trust Committee is approved in all respects, and

the members of the Liquidating Trust Committee are authorized to carry out their rights and duties

under the Plan and Liquidating Trust Agreement.

### F.   RETENTION OF CLAIMS AND CAUSES OF ACTION; COMPROMISES AND SETTLEMENTS.

23.   Except for the Released Claims and as otherwise provided in this Plan, the Debtors

and Reorganized Debtors (and where applicable, the Purchaser) expressly reserve all Liquidating

Trust Causes of Action, Reorganized Debtor Causes of Action, or other Causes of Action that

constitute property of the Debtors for later adjudication, and, therefore, no preclusion doctrine,

including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion,

waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action

upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement,

the Plan or the Confirmation Order.

24.   Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in

consideration for the classification, distribution and other benefits provided under the Plan, the

provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests

and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising

prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or

unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions

with, the Debtors.  The entry of this Order constitutes the Court's approval of each of the foregoing

compromises or settlements, and all other compromises and settlements provided for in the Plan,

and the Court's findings constitutes the Court's determination that such compromises and

settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

25.    On and after the Effective Date, except as otherwise provided in the Plan, and subject to the Reorganized Organizational Documents, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Interests, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all Reorganized Debtor Causes of Action, including but not limited to Ship Loader Insurance Claims, Silo Burn Insurance Claims, Port Reimbursement Action, Other Indemnity/Reimbursement Actions, and/or Sale Proceeds Action.  Subject to the Reorganized Organizational Documents, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Reorganized Debtor Causes of Action, including but not limited to Ship Loader Insurance Claims, Silo Burn Insurance Claims, Port Reimbursement Action, Other Indemnity/Reimbursement Actions, and/or Sale Proceeds Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.  The Distribution Reserve shall be administered by the Reorganized Debtors for the purposes set forth in Section 6.1.7 of this Plan and under the requirements of the Plan.

### G.    RELEASES AND EXCULPATION PROVISIONS.

The release and exculpation provisions as set forth in Sections 9.22, 9.23, and 9.25 of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be

immediately effective on the Effective Date of the Plan without further action by the Court, any of the parties to such releases or any other party.

### H. EXEMPTION FROM CERTAIN TRANSFER TAXES.

26. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer (including the filing and/or recording of any and all documents, Liens, security interests or other documents in connection with or related to the Bonds, or the assumption or modification thereof pursuant to this Plan) or of cancellation and/or releases of any Liens or security interests will not be subject to any stamp tax or similar tax to the fullest extent authorized by section 1146(a) of the Bankruptcy Code, or otherwise.

### IV. APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.

27. The Executory Contract and Unexpired Lease provisions under Article VIII of the Plan are specifically approved, and this Order shall constitute an order of the Court approving the rejections described in Section 8.2 of the Plan, pursuant to section 365 of the Bankruptcy Code, subject to the other terms of this Order. The Insurance Policies are not Executory Contracts subject to assumption or rejection; however, to the extent that such Insurance Policies may be deemed Executory Contracts or subject to assumption or rejection under Section 365 of the Bankruptcy Code, the assumption of such Insurance Policies is approved. Further, without limitation, the Insurance Policies relating to and applicable to the Ship Loader Insurance Claims and Silo Burn Insurance Claims are retained by, and vest in, the Reorganized Debtors, as provided for under Section 9.4.1 of the Plan. No payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such Insurance Policy or agreement. Further, such

29

assumption is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment; and the Debtors have met all of the requirements of Bankruptcy Code § 365(b) for assumption, and no amounts are required to cure any monetary and nonmonetary defaults under Insurance Policies. To the extent required, adequate assurance of future performance has been established with respect to Insurance Policies pursuant to Bankruptcy Code § 365(b)(1)(C).

## V.      OBJECTIONS TO CONFIRMATION.

### A.      RESOLUTION OF OBJECTIONS TO CONFIRMATION.

28.      Certain of the Objections, whether informal or filed, are hereby resolved on the terms and subject to the conditions set forth below. The compromises and settlements contemplated by each resolution to an Objection are fair, equitable and reasonable, are in the best interests of the Debtors and their respective Estates and creditors and are expressly approved pursuant to Bankruptcy Rule 9019.

29.      All Objections not otherwise addressed herein or previously withdrawn are hereby overruled for the reasons set forth on the record at the Confirmation Hearing and in this Order.

30.      Notwithstanding any other provision of the Plan or this Order, the following Claims asserted by the Port are Disputed Administrative Claims that are not extinguished or resolved under the Plan, and instead are reserved for later adjudication (together with any Claims asserted by the Debtors and/or Reorganized Debtors against the Port) under the contested matter and/or adversary proceeding commenced by such Claims: *Notice of Additional Cure [Claim] for Business Interruption Filed by Port of Port Arthur Navigation District of Jefferson County, Texas Pursuant to Order Granting Debtors' Motion to Assume Ground Lease and Easement Agreement Between*

30

*the Debtors and the Port of Port Arthur Navigation District of Jefferson County, Texas Under Bankruptcy Code § 365 and Fed. R. Bankr. P. 6006* [Docket #989]; *Notice of Additional Cure [Claim] for Property Damage Filed by Port of Port Arthur Navigation District of Jefferson County, Texas Pursuant to Order Granting Debtors' Motion to Assume Ground Lease and Easement Agreement Between the Debtors and the Port of Port Arthur Navigation District of Jefferson County, Texas Under Bankruptcy Code § 365 and Fed. R. Bankr. P. 6006* [Docket #990]; and Invoices 43679 and 43721 sent by the Port to the Debtors totaling $53,605.48.  The foregoing Disputed Claims (if allowed in whole or part), are payable solely from the Distribution Reserve, and are subject to the provisions of the *Order Granting Debtors' Motion to Assume Ground Lease and Easement Agreement Between the Debtors and the Port of Port Arthur Navigation District of Jefferson County, Texas Under Bankruptcy Code § 365 and Fed. R. Bankr. P. 6006* [Docket #907]. The Debtors, Reorganized Debtors, and the Port reserve all rights as to liability and resolution of such Claims.

31.     Notwithstanding any other provision of the Plan or this Order, the following Claims asserted by NAPCO are Disputed Claims and/or Disputed Administrative Claims that are not extinguished or resolved under the Plan (and all rights of the parties to any setoff as may be applicable in such matters are preserved), and instead are reserved for later adjudication (together with any NAPCO Defenses which the Court determines remain viable and may be asserted) under the contested matter and/or adversary proceeding commenced by such Claims: all Claims under the Motion to Allow and Compel Payment of Administrative Priority Expense Claim [Docket #75 and #246].  The foregoing Disputed Claims (if allowed in whole or part), are payable solely from the Distribution Reserve, and the Debtors, Reorganized Debtors, and NAPCO reserve all rights as to liability and resolution of such Claims.  Any and all other or further Claims (if any) asserted or

31

as may be asserted by NAPCO against the Debtors, the Debtors' estates, and/or the Reorganized Debtors are resolved under the terms of the Plan and this Order. Nothing in this Order nor the Plan shall have any effect on the claims and defenses asserted in Adversary Case No. 16-9002.

## VI.    DISCHARGE AND INJUNCTIONS.

32.    The treatment of Claims and Interests set forth in the Plan is in full satisfaction of the legal, contractual, and equitable rights that each entity holding a Claim or Interest may have in or against the Debtors and Reorganized Debtors, the Debtors' respective Estates, or their respective properties. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors and Reorganized Debtors, their respective Estates, or their respective properties.

33.    Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in this Order, and based upon the continued administration of the Reorganized Debtor Assets by the Reorganized Debtors, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of any and all Claims, Interests, and Causes of Action accruing or existing before the Effective Date, against the Debtors and Reorganized Debtors, or any of their assets or properties, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) any such Claim is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such Claim or Interest has accepted the Plan. This Order constitutes a judicial determination of the discharge of all Claims and Interests, subject only to the occurrence of the Effective Date. Upon the Effective Date, all Persons and Entities are forever precluded and enjoined, pursuant to section 524 of the Bankruptcy

Code, from prosecuting or asserting any discharged Claim against, or terminated Equity Interests in, the Debtors, or the Reorganized Debtors.

34.     Unless otherwise provided, all injunctions or stays arising before the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, or such later date as provided under applicable law.

35.     Except as otherwise provided in the Plan or this Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all Persons or Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 9.22, 9.23 or 9.24 of the Plan, have been discharged pursuant to Section 9.21 of the Plan, or that are subject to exculpation pursuant to Section 9.25 of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Reorganized Debtors, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, their successors, heirs, executors, administrators, or assigns or their respective properties; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties if such party's Claim or Interest is treated as required pursuant to this Plan; (3) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties; (4) asserting any setoff, right of subrogation, surcharge, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs,

33

executors, administrators, or assigns or their respective properties; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or this Order. Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

36.     Without limiting the provisions of Paragraphs 32 through 35 above, the injunction set forth under Paragraphs 32 through 35 above includes and enjoins the continuation of the following specific lawsuits and actions against the Debtors and Reorganized Debtors, Texas Pellets, Inc. and German Pellets Texas, LLC, with the sole exception that claimants in such actions may continue to pursue actions or Claims solely against German Pellets Texas, LLC, with any such Claims and lawsuits to be solely satisfied from Liability Policies of German Pellets Texas, LLC:

- *Kelley, et al. v. German Pellets Texas LLC, et al*., Case No. B-0200859 (District Court of Jefferson County, Texas, 60th Judicial District Court);
- *Haneefa Abdullah et al. v. German Pellets Texas, LLC et al.,* Case No. E-0203640 (District Court of Jefferson County, Texas);
- *Travelers Property Casualty Company of America v. Texas Pellets, Inc., et al.*, Case No. B-0203222 (District Court of Jefferson County, Texas); and
- *Ultrabulk A/S v. German Pellets Texas, LLC*, Case No. E-203360 (District Court of Jefferson County, Texas, 172nd Judicial District Court);
- *Shelton v. Laskardis Shipping Co. Ltd*., Case No. B-197991 (58th Judicial District Court of Jefferson County, Texas);
- *Thaddious Foster. v. Perry Young and German Pellets Texas, LLC*, Case No. A-200611 (60th Judicial District Court of Jefferson County, Texas);
- *Yhana Abdullah v. German Pellets Texas, LLC et al.*, Case No. D-201493 (136th Judicial District Court of Jefferson County, Texas); and
- *Linda Cooksey Walker v. German Pellets Texas*, LLC et al., Case No. A-202951 (58th Judicial District Court of Jefferson County, Texas).

37.     Without limiting the provisions of Paragraphs 32 through 36 above, the satisfaction, discharge, and release of Claims and Interests under Section 9.21 of the Plan and Paragraphs 32

through 36 above includes, without limitation, a complete and total discharge and release of the

Claims asserted against the Debtors and Reorganized Debtors, Texas Pellets, Inc. and German

Pellets Texas, LLC, in the following lawsuits and actions, with the sole exception that claimants

in such actions may continue to pursue actions or Claims solely against German Pellets Texas,

LLC, with any such Claims and lawsuits to be solely satisfied from Liability Policies of German

Pellets Texas, LLC:

- *Kelley, et al. v. German Pellets Texas LLC, et al.*, Case No. B-0200859 (District Court of Jefferson County, Texas, 60th Judicial District Court);
- *Haneefa Abdullah et al. v. German Pellets Texas, LLC et al.,* Case No. E-0203640 (District Court of Jefferson County, Texas);
- *Travelers Property Casualty Company of America v. Texas Pellets, Inc., et al.*, Case No. B-0203222 (District Court of Jefferson County, Texas); and
- *Ultrabulk A/S v. German Pellets Texas, LLC*, Case No. E-203360 (District Court of Jefferson County, Texas, 172nd Judicial District Court);
- *Shelton v. Laskardis Shipping Co. Ltd*., Case No. B-197991 (58th Judicial District Court of Jefferson County, Texas);
- *Thaddious Foster. v. Perry Young and German Pellets Texas, LLC*, Case No. A-200611 (60th Judicial District Court of Jefferson County, Texas);
- *Yhana Abdullah v. German Pellets Texas, LLC et al.*, Case No. D-201493 (136th Judicial District Court of Jefferson County, Texas); and
- *Linda Cooksey Walker v. German Pellets Texas*, LLC et al., Case No. A-202951 (58th Judicial District Court of Jefferson County, Texas).

38.     Nothing in the Plan or this Order shall modify, amend, abrogate, limit, release,

discharge, or otherwise alter any of the rights, claims, defenses, or causes of action of RPA

Advisors, LLC or Chip Cummins, in his capacity as CRO, against the Debtors, their estates, the

Reorganized Debtors, or any other parties.


## VII.     RETENTION OF JURISDICTION BY THE COURT.

39.     Notwithstanding the entry of this Order and the occurrence of the Effective Date,

pursuant to Section 9.18 of the Plan, this Court shall retain such exclusive jurisdiction over the

Reorganization Case after the Effective Date as is legally permissible, including exclusive jurisdiction over the matters described in Sections 9.18.1 through 9.18.17 of the Plan; provided, however, that Section 9.18 of the Plan is not intended to (a) expand the Court's jurisdiction beyond that allowed by applicable law, (b) impair the rights of an Entity to invoke the jurisdiction of a court, commission, or tribunal, or (c) impair the rights of an Entity to seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d).

## VIII.   NO STAY OF CONFIRMATION ORDER.

40.     The requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise.


Signed on 09/06/2019


THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE