**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**(LUFKIN DIVISION)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **JOINTLY ADMINISTERED** |
| TEXAS PELLETS, INC.[1] | ) | under Case No. 16-90126 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

**FIRST AMENDED JOINT CHAPTER 11 PLAN FOR TEXAS PELLETS, INC. AND GERMAN PELLETS TEXAS, LLC (SOLICITATION VERSION, WITH IMMATERIAL MODIFICATIONS AS OF AUGUST 30, 2019)[2]**

Texas Pellets, Inc., and German Pellets Texas, LLC (collectively, "Debtors") propose this *First Amended Joint Chapter 11 Plan* ("Plan") pursuant to section 1121(a) of the Bankruptcy Code for the resolution of outstanding Claims asserted against, and Equity Interests in, each of the Debtors. Reference is made to the Disclosure Statement distributed with this Plan for a discussion of the Debtors' history, businesses, assets, operations, risk factors, a summary and analysis of this Plan, and certain related matters. Subject to the restrictions and requirements set out in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its consummation.

The Plan is proposed as a joint chapter 11 plan for both of the Debtors. Claims against, and Equity Interests in, the Debtors are classified in Article III and treated in Article V.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

**ARTICLE I**
**DEFINITIONS**

The following terms (which appear in this Plan as capitalized terms) have the following meanings as used in this Plan (and in the accompanying Disclosure Statement):

**1.1** **"10% Distribution"** has the meaning as set forth in Section 5.3.1 of the Plan.

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each Debtor's federal tax identification number, are Texas Pellets, Inc. (3478) and German Pellets Texas, LLC (9084). The location of the Debtors' corporate headquarters and service address for the jointly-administered Debtors is: 164 CR 1040, Woodville, TX 75979.

[2] This is the solicitation version sent to creditors and parties in interest on February 22, 2019, as immaterially modified as of August 30, 2019.

**1.2** "**Administrative Claim**" means a Claim for costs and expenses of administration of the Reorganization Case under section 503(b) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code; provided, however, the term "Administrative Claim" shall not include "Professional Fee Claims."

**1.3** "**Administrative Claims Bar Date**" means the earlier of: (i) any bar date or deadline set by the Bankruptcy Court for some or all Administrative Claims in the Reorganization Case, including without limitation the bar date of March 25, 2019 for certain Administrative Claims set by the Bankruptcy Court's order dated February 20, 2019 [Docket #1047]; or (ii) for all other Administrative Claims, the date that is thirty (30) calendar days after the Effective Date, all as set forth in Section 6.1.4 of the Plan.

**1.4** "**Allowed**" means, with respect to Claims and Interests, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or Interest, proof of which was timely and properly Filed or, if no Proof of Claim or proof of interest was Filed, which has been or hereafter is listed by the Debtors on their Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

      (a)     no objection to the allowance thereof has been interposed on or before the later of: (i) the one hundred and twentieth (120th) day after the Effective Date, or (ii) such other applicable period for objection as may be fixed or extended by the Bankruptcy Court, or

      (b)     any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Bankruptcy Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

**1.5** "**Amended Plan Supplement**" means the Amended Plan Supplement filed and dated August 30, 2019 comprised of, among other documents, the following: (a) the form of the Liquidating Trust Agreement; (b) the identification of the Liquidating Trustee and the members of the Liquidating Trust Committee; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the Schedule of Rejected Executory Contracts and Unexpired Leases; (e) the identification of the Reorganized Officers and Directors; and (f) the form of the Class 3 Election Form.

**1.6** "**Asset Purchase Agreement**" means the "Winning Bid APA" as defined under the Sale Order and as executed between the Debtors and Purchaser.

**1.7** "**Assumed Executory Contracts**" has the meaning as set forth in Section 8.2 of the Plan.

**1.8** "**Assumed Unexpired Leases**" has the meaning as set forth in Section 8.2 of the Plan.

**1.9** "**Auction**" shall have the meaning as set forth under the Bidding Procedures

Order.

**1.10** "**Available Cash**" means the Liquidating Trust's Cash on hand on any particular date less (i) amounts reserved on account of Disputed Claims; (ii) amounts reasonably required by the Liquidating Trustee to retain professionals post-confirmation; and (iii) amounts reasonably required by the Liquidating Trustee to administer the Liquidating Trust and to complete the transactions and other actions required under the Plan and Liquidating Trust Agreement, including the prosecution of claims and causes of action.

**1.11** "**Avoidance Action Proceeds**" means any funds and proceeds held by the Debtors as of the Effective Date, realized from settlements, judgments, and other payments and proceeds of the Avoidance Actions, held within the Distribution Reserve.

**1.12** "**Avoidance Actions**" means all of the Debtors' and the Estates' rights and claims under sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or case or common law, whether or not an action is initiated on or before the Effective Date, and including without limitation the Causes of Action set forth on Schedule 1.12; for the avoidance of doubt, the term Avoidance Actions shall exclude (i) any Avoidance Action Proceeds held by the Debtors as of the Effective Date; and (ii) the Ship Loader Insurance Claims, the Silo Burn Insurance Claims, the Port Reimbursement Action, the Other Indemnity/Reimbursement Actions, and the Sale Proceeds Action.

**1.13** "**Ballot**" means the form to be distributed with the Disclosure Statement to each holder of an Impaired Claim or Interest on which the holder is to indicate acceptance or rejection of the Plan.

**1.14** "**Balloting Deadline**" means the date and time, as set by an Order of the Bankruptcy Court and set forth in the Disclosure Statement or on the Ballot, by which all Ballots must be received at the address set forth used for voting on the Plan, as such date may be extended by an order.

**1.15** "**Bankruptcy Code**" means Title 11 of the United States Code, or the Bankruptcy Reform Act of 1978, as amended.

**1.16** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Texas, or, in the event such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Eastern District of Texas.

**1.17** "**Bankruptcy Rules**" means collectively, the (a) Federal Rules of Bankruptcy Procedure, (b) Federal Rules of Civil Procedure and, (c) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case or proceedings therein, as the case may be.

**1.18** "**Bidding Procedures Order**" means that certain order entered by the Bankruptcy Court in the Reorganization Case, entered on April 30, 2019 [Docket #1129], pursuant to the Debtor's *Motion for Entry of Orders: (I) Approving Amended and Superseding*

*Bidding Procedures and Awarding Certain Protections and (II) Authorizing (A) the Sale of Substantially All of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket #1109]; which amended and superseded the order entered on February 21, 2019 [Docket #1048], pursuant to the Debtors' *Motion for Entry of Orders: (I) Approving Amended and Superseding Bidding Procedures and Potentially Awarding Certain Protections and (II) Authorizing (A) the Sale of Substantially All of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket #1028]; all as may be further supplemented and/or amended.

1.19    **"Bond Documents"** means the Indenture; the TPI Security Agreement dated July 25, 2012; the GPTX Security Agreement dated July 25, 2012, the Loan Agreement dated August 1, 2012, the Consent, Subordination, and Attornment Agreement, dated July 25, 2012, the Novation, Assignment, Assumption, Consent and Subordination Agreement Drax Power Limited, dated July 25, 2015, the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing as of July 25, 2012, the Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated July 25, 2012, and any other document or agreement delivered as security for, or in respect to, the Bonds or Debtors' obligations under any such documents.

1.20    **"Bond Trustee"** means UMB Bank, National Association, as the successor trustee with respect to the Sanger Texas Industrial Development Corporation Industrial Development Revenue Bonds (Texas Pellets Project), Series 2012B and 2012C, issued under the Indenture.

1.21    **"Bond Trustee Collateral"** means all property securing the Bond Trustee Secured Claim.

1.22    **"Bond Trustee Secured Claim"** means the Claim filed by the Bond Trustee as claim number 13 in the Reorganization Case in the amount of $189,510,697.22 and as treated in Section 5.1 hereof. For the avoidance of doubt, the Deficiency Claim held by the Bond Trustee shall not be part of the Bond Trustee Secured Claim, and instead is treated as an Unsecured Claim pursuant to the provisions herein.

1.23    **"Bonds"** means the Sanger Texas Industrial Development Corporation Industrial Development Revenue Bonds (Texas Pellets Project), Series 2012B and 2012C, issued under the Indenture.

1.24    **"Business Day"** means any day other than a Saturday, Sunday, holiday in Tyler, Texas or pursuant to Bankruptcy Rule 9006.

1.25    **"Cash"** means legal tender of the United States of America and equivalents thereof.

1.26    **"Causes of Action"** means, without limitation, any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights

to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract, negligence, or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable. For avoidance of doubt, Causes of Action include, but are in no way limited to (a) damages, (b) the recovery of monies, (c) Lien avoidance, subordination, surcharge, recharacterization, rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) injunctive, equitable, or other relief, (e) claims pursuant to Section 362 of the Bankruptcy Code, (f) such claims and defenses as fraud, mistake, duress, and usury; and (i) all Causes of Action that may be directly or derivatively asserted on behalf of the Debtors, their Estates, or the Reorganized Debtors.

**1.27** "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.28** "**Class**" means a category of holders of Claims or Interests classified together pursuant to section 1123(a)(11) of the Bankruptcy Code.

**1.29** "**Class 3 Election**" has the meaning as set forth in Section 5.3.1 of the Plan.

**1.30** "**Class 3 Election Form**" has the meaning as set forth in Section 5.3.1 of the Plan.

**1.31** "**Closing**" means the closing of the Sale.

**1.32** "**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.33** "**Confirmation Hearing**" means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

**1.34** "**Confirmation Order**" means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

**1.35** "**CRO**" means Chip Cummins of RPA Advisors, LLC, serving as Chief Restructuring Officer pursuant to the Order entered in the Reorganization Case on January 10, 2018 [Docket #700]; and until November 27, 2017, pursuant to the Order entered in the Reorganization Case on November 27, 2017 [Docket #655], Bryan M. Gaston of Opportune LLP.

**1.36** "**Cure Payments**" means any payments as may be required to be made to counterparties to Assumed Executory Contracts and/or Assumed Unexpired Leases under Section 8.4 of the Plan.

**1.37** "**D&O Action**" means (i) all of the Debtors' and the Estates' rights and claims as asserted in the action filed and asserted by the Debtors as encaptioned *Texas Pellets, Inc., et al. v. German Pellets GmbH, et al.*, Case No. 2:18-cv-00178-JRG-RSP (United States District Court, Eastern District of Texas); and (ii) all of the Debtors' and the Estates' rights and claims as may

be asserted against any Insurance Policy (including any runoff or tail policy, but not including any property or casualty Insurance Policy) that has been issued at any time to and provides coverage to any of the Debtors for current or former directors', officers', managers', and/or members' liability for actions or inactions taken by such individuals in such capacities.

1.38    "**Debtors**" mean Texas Pellets, Inc., and German Pellets Texas, LLC.

1.39    "**Deficiency Claim**" means that portion of a Claim secured by a Lien on property in which the Debtors' estates have an interest that is determined, pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in such property.

1.40    "**DIP and Cash Collateral Order**" means the Final Order (1) Authorizing Debtors in Possession to Obtain Postpetition Financing; (2) Authorizing Debtors in Possession to Use Cash Collateral; (3) Providing Adequate Protection; and (4) Granting Liens, Security Interests and Superpriority Claims [Docket No. 121] dated June 14, 2016 entered in the Reorganization Case, as amended through the orders entered in the Reorganization Case on January 26, 2017 [Docket #313]; March 31, 2017 [Docket #398] ; April 19, 2017 [Docket #418]; May 5, 2017 [Docket #437]; May 18, 2017 [Docket #448]; June 15, 2017 [Docket #477]; July 7, 2017 [Docket #489]; September 15, 2017 [Docket #560]; October 13, 2017 [Docket #599]; November 15, 2017 [Docket #649]; December 29, 2017 [Docket #692]; September 22, 2018 [Docket #908] as modified by the order entered on October 22, 2018 [Docket #945]; November 28, 2018 [Docket #982]; March 26, 2019 [Docket #1099]; April 19, 2019 [Docket #1120]; June 18, 2019 [Docket #1201]; and any further order entered by the Court amending the same.

1.41    "**DIP Lender**" means UMB Bank, National Association, as Trustee, in its capacity as lender under the DIP Loans.

1.42    "**DIP Lender Collateral**" means all real, personal, tangible and intangible assets of any kind or character of the Debtors and the Estates as more fully set forth in the DIP and Cash Collateral Order.

1.43    "**DIP Loan Balance Repayment**" has the meaning as set forth in Section 9.4.3 of the Plan.

1.44    "**DIP Loan Balance Repayment Documentation**" has the meaning as set forth in Section 9.4.3 of the Plan.

1.45    "**DIP Loans**" means, as amended, the debtor-in-possession loans extended by the DIP Lender to the Debtors, and as further defined under the DIP and Cash Collateral Order.

1.46    "**Disallowed**" means, as to a Claim or Interest, (a) a Claim or Interest, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and, as to which, no Proof of Claim has been properly filed by the Proof of Claim Bar Date, or (c) a Claim or Interest or any portion thereof that is not Scheduled and, as to which, no proof of claim has been properly filed by the Proof of Claim Bar Date.

**1.47** **"Disclosure Statement"** means the Debtors' First Amended Disclosure Statement in Support of the First Amended Joint Chapter 11 Plan, filed with the Bankruptcy Court on February 22, 2019, and as may be further modified, amended, and/or supplemented.

**1.48** **"Disclosure Statement Objection Deadline"** means the deadline set by the Bankruptcy Court, or under applicable rules, for parties in interest to file objections to the Disclosure Statement.

**1.49** **"Disputed,"** as to a Claim or Interest, means any Claim or Interest that is not an Allowed Claim, a Disallowed Claim, an Allowed Interest or a Disallowed Interest, as the case may be. In the event that any part of a Claim or Interest is disputed, such Claim or Interest in its entirety shall be deemed to constitute a Disputed Claim or Disputed Interest for purposes of distribution under this Plan unless a Final Order has been entered providing otherwise. Without limiting any of the foregoing, a Claim or Interest that is the subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Action, litigation claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim or Disputed Interest, as the case may be.

**1.50** **"Distribution Record Date"** means the record date for determining the entitlement of holders of Claims to receive distributions under this Plan on account of Allowed Claims. The Distribution Record Date shall be five (5) Business Days before the Confirmation Hearing.

**1.51** **"Distribution Reserve"** means the reserve account as defined under the Sale Order, consisting of any funds reserved from the Sale Proceeds, as required under the Sale Order, and utilized and disbursed under the terms of this Plan and the Sale Order, and which Distribution Reserve is held by the Reorganized Debtors after the Effective Date.

**1.52** **"Distribution Reserve Balance"** means the balance of the Distribution Reserve after all required payments from the Distribution Reserve are made under this Plan and the Sale Order, and all Disputed Claims subject to payment from the Distribution Reserve are resolved by Final Order.

**1.53** **"Docket"** means the official docket maintained by the Bankruptcy Court in the Reorganization Case.

**1.54** **"Docket #_"** means and refers to the specific filing as numbered in the Docket of the Reorganization Case under Case No. 16-90126, unless the text and context states that such Docket is from Case No. 16-90127 of the Reorganization Case.

**1.55** **"Effective Date"** has the meaning ascribed to it in Section 9.1 of the Plan.

**1.56** **"Entity"** means a Person, estate, trust, governmental unit, and U.S. Trustee, within the meaning of Bankruptcy Code section 101(15).

**1.57** **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

**1.58** **"Excluded Assets"** means all assets of the Debtors that are not sold and transferred to the Purchaser pursuant to the Sale Order, including without limitation the Liquidating Trust Assets and Reorganized Debtor Assets.

**1.59** **"Executory Contract"** means a contract to which one or more of the Debtors is a party, that is subject to assumption or rejection under sections 365 and/or 1123 of the Bankruptcy Code.

**1.60** **"File" or "Filed"** means filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Bankruptcy Court for the Reorganization Case.

**1.61** **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, retry, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or new trial or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which new trial, reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for new trial, reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for new trial, reargument or rehearing pending; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule of the Bankruptcy Rules, may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

**1.62** **"GP Holding"** means German Pellets Holding USA, Inc.

**1.63** **"GPTX"** means Debtor German Pellets Texas, LLC.

**1.64** **"Impaired"** means a Claim or Interest or a Class of Claims or a Class of Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.65** **"Indenture"** means the Indenture of Trust, dated as of August 1, 2012 (as amended and supplemented from time to time), between the Sanger Texas Industrial Development Corporation and Wells Fargo Bank, N.A, as original trustee, as predecessor to the Bond Trustee.

**1.66** **"Insurance Policies"** means any insurance policies, insurance settlement agreements, coverage-in-place agreements, or other agreements relating to the provision of insurance entered into by or issued to or for the benefit of any of the Debtors or their predecessors.

**1.67** **"Insured Claim"** means an Allowed Claim or portion of an Allowed Claim that is insured under the Liability Policies, but only to the extent of such coverage.

**1.68** **"Interest"** means the holder of any current or former holder of an "equity

security" (as defined in Section 101(16) of the Bankruptcy Code).

**1.69    "Interim Distribution Date"** has the meaning as set forth in the Liquidating Trust Agreement, and shall be the date or dates that interim distributions are made on account of Class 3 Claims under the Liquidating Trust Agreement.

**1.70    "Investment Banker"** means Configure Partners, LLC.

**1.71    "Liability Policies"** shall mean one or more of the specific Insurance Policies identified on Schedule 1.71, but shall <u>not</u> include any other Insurance Policies.

**1.72    "Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.73    "Liquidating Trust"** means the entity created pursuant to Section 9.10 of this Plan to which all holders of Unsecured Claims shall look for satisfaction of their Claims unless otherwise specifically set forth to the contrary in this Plan.

**1.74    "Liquidating Trust Agreement"** means the trust agreement entered into in accordance with the Plan pursuant to which the Liquidating Trust will be established and administered, in the form included within the Plan Supplement.

**1.75    "Liquidating Trust Assets"** has the meaning as set forth in Section 9.4.1 of the Plan.

**1.76    "Liquidating Trust Causes of Action"** has the meaning as set forth in Section 9.4.1 of the Plan.

**1.77    "Liquidating Trust Committee"** shall mean those individuals set forth in the Plan Supplement.

**1.78    "Liquidating Trust Funding Payment"** means the sum of $75,000.00 paid from the Distribution Reserve, for purposes of funding the Liquidating Trust, under the terms of this Plan.

**1.79    "Liquidating Trustee"** means the person designated to serve as the Liquidating Trustee under the Liquidating Trust Agreement and pursuant to the terms of this Plan, or any successor Liquidating Trustee appointed pursuant to the terms of this Plan or such other person as appointed by the Bankruptcy Court.

**1.80    "Manufacturing Facility"** means the Debtors' wood pellet manufacturing facility located in Woodville, Texas.

**1.81    "NAPCO"** means North American Procurement Company.

**1.82    "NAPCO 503(b)(9) Claim"** means all Causes of Action brought and asserted by NAPCO against the Debtors under Section 503(b)(9) of the Bankruptcy Code, which are pending before the Bankruptcy Court.

**1.83** **"NAPCO Defenses"** means any and all defenses, claims, Causes of Action, rights of action, lawsuits, and actions accruing or existing against North American Procurement Company as of the Effective Date, including, but not limited to, claims and Causes of Action asserted in Adversary No. 16-09003, pending before the United States Bankruptcy Court for the Eastern District of Texas and any and all defenses as may be asserted to the NAPCO 503(b)(9) Claim.

**1.84** **"Other Indemnity/Reimbursement Actions"** means all of the Debtors' and Estates' Causes of Action accruing or existing against any Person on or before the Effective Date, for indemnity, reimbursement, or other damages relating to shipments of wood pellets from the Storage Facility during the period through June 18, 2019 (other than the Port Reimbursement Action), including without limitation any and all Causes of Action against SSA Gulf, Inc. and/or SSA Marine.

**1.85** **"Person"** means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, any ad hoc committee, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, the term "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of the Debtor or an Affiliate of the Debtor; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

**1.86** **"Petition Date"** means April 30, 2016.

**1.87** **"Plan"** means the Debtors' First Amended Joint Chapter 11 Plan, filed with the Bankruptcy Court on February 22, 2019, and as may be further modified, amended, and/or supplemented, including without limitation through the immaterial modifications filed with the Bankruptcy Court on August 2 and 30, 2019.

**1.88** **"Plan Rate"** means the rate of interest, if any, that will be paid on Claims but only to the extent that this Plan specifies that interest will be paid on such Claims. For all non-tax claims, the Plan Rate shall be 5% simple interest. The Plan Rate for tax claims shall be the applicable non-bankruptcy statutory rate determined as of the calendar month in which the Confirmation Order is entered. Interest shall be calculated from the Petition Date to each Payment Date. Notwithstanding the foregoing, the interest rate for amounts advanced to the Debtors by the DIP Lender shall be the interest rate set forth in the documents relating to the DIP Loans.

**1.89** **"Plan Scheduling Order"** means that certain order entered by the Bankruptcy Court in the Reorganization Case, setting the Confirmation Hearing for a final date, entered pursuant to the *Agreed Motion to Reset Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* filed on August 2, 2019, and the order entered by the Bankruptcy Court in the Reorganization Case, entered on April 9, 2019 entitled *Order Granting Agreed Motion to Reschedule Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket #1110], amending and superseding that certain order entered on February 13, 2019 entitled *Order Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket #1040]; pursuant to the Debtors' *Motion for Order Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket #1027], and pursuant to the Debtors' *Agreed Motion to Reschedule Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket #1108]; as may be supplemented and/or amended through further Order of the Bankruptcy Court.

**1.90** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than seven (7) days before the objection deadline for filing objections to the Plan, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules (including without limitation, the Amended Plan Supplement). Any reference to the Plan Supplement in the Plan shall include each of the documents identified as (a) through (f) of the Amended Plan Supplement, as applicable. The documents that comprise the Plan Supplement shall be: (x) subject to any consent or consultation rights provided hereunder and thereunder, including as provided in the definitions of the relevant documents; and (y) in form and substance reasonably acceptable to the Debtors, the Bond Trustee and UCC.

**1.91** **"Port"** means Port of Port Arthur Navigation District of Jefferson County, Texas.

**1.92** **"Port Dredging Action"** means all of the Debtors' and Estates' Causes of Action accruing or existing against the Port on or before June 18, 2019, relating to events and/or actions taking place during the period January 1, 2015 through April 30, 2016, and including without limitation any Cause of Action for damages, reimbursement, or indemnity in connection with the failure to maintain the vessel berth and channel located at or near the Storage Facility during the period January 1, 2015 through April 30, 2016.

**1.93** **"Port Reimbursement Action"** means all of the Debtors' and Estates' Causes of Action accruing or existing against the Port on or before June 18, 2019, relating to events and/or actions taking place during the period January 1, 2019 through June 18, 2019, and including without limitation any Cause of Action for damages, reimbursement, or indemnity for tug charges and other costs incurred or charged to the Debtors due to the conditions of the vessel berths and docking facilities located at or near the Storage Facility.

**1.94** **"Priority Tax Claim"** means any Claim due as of the Petition Date computed on an accrual basis entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

**1.95** **"Professional Fee Claim Bar Date"** means the date that is thirty (30) days after the Effective Date, as further defined in Section 6.1.5.

**1.96** **"Professional Fee Claims"** means, without limitation, a Claim seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

**1.97** **"Proof of Claim"** means a proof of Claim Filed against either of the Debtors in the Reorganization Case.

**1.98** **"Proof of Claim Bar Date"** means September 22, 2016, except for (i) Governmental Units (as defined in the Bankruptcy Code) for which the Proof of Claim Bar Date means October 27, 2016; and (ii) Administrative Claims Bar Date; and (iii) Professional Fee Claim Bar Date.

**1.99** **"Pro Rata"** means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bears to the aggregate amount of Allowed Claims in a particular Class and the other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

**1.100** **"Purchased Assets"** has the same meaning as set forth in the Asset Purchase Agreement and Sale Order.

**1.101** **"Purchaser"** means Woodville Pellets, LLC.

**1.102** **"Rejected Executory Contracts"** has the meaning set forth in Section 8.2 of the Plan.

**1.103** **"Rejected Unexpired Leases"** has the meaning set forth in Section 8.2 of the Plan.

**1.104** **"Rejection Damages Bar Date"** means the date that is thirty (30) days after the Effective Date, as set forth in Section 8.2 hereof.

**1.105** **"Released Claims"** means those Claims released and discharged under Sections 9.21 through 9.25, inclusive, below.

**1.106** **"Released Parties"** means: (i) the Debtors' and Reorganized Debtors' respective financial advisors, attorneys, investment bankers, experts, consultants, and accountants whose retention has been approved by the Bankruptcy Court; (ii) the Bond Trustee, its successors and assigns, and each of their respective divisions, affiliates, and their former, present and future officers, directors, servants, shareholders, members, affiliates, managers, partners, employees, agents, representatives, professionals, consultants, financial advisors, attorneys and accountants; (iii) the DIP Lender, its successors and assigns, and each of their respective divisions, affiliates, and their former, present and future officers, directors, servants, shareholders, members, affiliates, managers, partners, employees, agents, representatives, professionals, consultants,

financial advisors, attorneys and accountants; (iv) the UCC, its members, and its respective financial advisors, attorneys and accountants whose retention has been approved by the Bankruptcy Court; and (v) the CRO, RPA Advisors, Bryan M. Gaston and Opportune LLP, and their respective financial advisors, attorneys and accountants whose retention has been approved by the Bankruptcy Court. Notwithstanding the foregoing or anything contained in this Plan, no provision of this Plan shall release the Debtors, the Debtors' parents, members, shareholders, affiliates, officers, directors, or any of the Debtors' accountants, bankers, financial advisors, or professionals (other than Locke Lord LLP) retained by the Debtors or their affiliates before the Petition Date.

1.107 **"Reorganization Case"** means these jointly administered bankruptcy cases under chapter 11 of the Bankruptcy Code.

1.108 **"Reorganized Debtor Assets"** has the meaning as set forth in Section 9.4.1 of the Plan.

1.109 **"Reorganized Debtor Causes of Action"** has the meaning as set forth in Section 9.4.1 of the Plan.

1.110 **"Reorganized Debtors"** means Texas Pellets, Inc., and German Pellets Texas, LLC., following the Effective Date.

1.111 **"Reorganized Debtor Reserve"** means funds reserved from the funds of the Debtors on the Effective Date, in an amount to be determined at the discretion of the Reorganized Debtors (as agreed to by the Bond Trustee), for administrative and business purposes of the Reorganized Debtors after the Effective Date.

1.112 **"Reorganized GPTX Equity"** means common equity in German Pellets Texas, LLC as a Reorganized Debtor, issued pursuant to the Plan on the Effective Date.

1.113 **"Reorganized Officers and Directors"** means the officers and directors of the Reorganized Debtors appointed as of the Effective Date under one or more resolutions or other actions, entered in the sole discretion and at the direction of the holder of the Bond Trustee Secured Claim. The identities of the Reorganized Officers and Directors shall be set forth in the Amended Plan Supplement.

1.114 **"Reorganized Organizational Documents"** means the documents providing for corporate governance of the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be consistent with this Plan, and section 1123(a)(6) of the Bankruptcy Code (as applicable), and shall be in form and substance acceptable to the Bond Trustee and DIP Lender.

1.115 **"Reorganized TPI Equity"** means common equity in Texas Pellets, Inc. as a Reorganized Debtor, issued pursuant to the Plan on the Effective Date.

1.116 **"Reserved Distributions"** has the meaning set forth in Section 9.8.3 of the Plan.

**1.117** **"Sale"** means the sale of the Purchased Assets to the Purchaser under the Sale Order.

**1.118** **"Sale Order"** means that certain order, entitled *Order Granting the Debtors' Motion for Entry of an Order Authorizing (A) the Sale of Substantially All of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket #1163] entered by the Bankruptcy Court in the Reorganization Case, pursuant to the *Motion for Entry of Orders: (I) Approving Amended and Superseding Bidding Procedures and Potentially Awarding Certain Protections and (II) Authorizing (A) the Sale of Substantially All of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket #1028], as amended and superseded by the *Motion for Entry of Orders: (I) Approving Amended and Superseding Bidding Procedures and Awarding Certain Protections and (II) Authorizing (A) the Sale of Substantially All of the Debtors' Assets, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket #1109], approving and authorizing the Debtors to enter into the Sale.

**1.119** **"Sale Proceeds"** means the funds tendered by Purchaser as the "Closing Cash Payment" as defined under the Asset Purchase Agreement and Sale Order.

**1.120** **"Sale Proceeds Action"** means any and all Causes of Action against Woodville Pellets, LLC for additional or remaining Sale Proceeds, as well as any other claims and/or Causes of Action under or related to the Asset Purchase Agreement, including without limitation any Causes of Action under or related to the June 18, 2019 Escrow Agreement between the Debtors and Woodville Pellets, LLC.

**1.121** **"Schedule of Assumed Executory Contracts and Unexpired Leases"** means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan (with proposed cure amounts), as the same may be amended, modified, or supplemented from time to time.

**1.122** **"Schedule of Rejected Executory Contracts and Unexpired Leases"** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

**1.123** **"Scheduled"** means the claims set forth, stated or listed on the Schedules.

**1.124** **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtors under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

**1.125** **"Secured Ad Valorem Tax Claim"** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code, including any related Secured Claim for penalties, and is further secured by a valid statutory Lien against any property in which the Debtors' estates have an interest.

**1.126** **"Secured Claim"** means a claim by a creditor possessing a valid and perfected Lien, including Secured Ad Valorem Tax Claims the Bond Trustee Secured Claim and the claim held by the DIP Lender; provided that any Deficiency Claim held by a holder of a Secured Claim

shall not be a Secured Claim, and instead is treated as an Unsecured Claim pursuant to the provisions herein.

**1.127 "Ship Loader Fire"** means the fire and casualty event experienced by the Debtors commencing on or about February 27, 2017, which destroyed the Debtors' ship loader equipment, and caused other damage at the Storage Facility.

**1.128 "Ship Loader Insurance Claims"** means all claims, Causes of Action, and rights of recovery of the Debtors or Reorganized Debtors relating to or arising from the Ship Loader Fire, under and in connection with Insurance Policies, but not including any claims, Causes of Action, and rights of recovery under the Liability Policies. Without limitation, the Ship Loader Insurance Claims include the claims, Causes of Action, and rights of recovery identified on Schedule 1.128.

**1.129 "Ship Loader Creditor Claims"** means any and all Claims asserted by a third party or claimant (not including the Debtors or any assignee or successor of the Debtors) relating to damages or losses arising from the Ship Loader Fire.

**1.130 "Silo Burn"** means the smoldering burn detected in Silo #2 at the Debtors' Storage Facility on the night of April 15 through 16, 2017, and related burning, fire, casualty, and damage, without limitation resulting in the Silo Collapse.

**1.131 "Silo Burn Insurance Claims"** means all claims, Causes of Action, and rights of recovery of the Debtors or Reorganized Debtors relating to or arising from the Silo Burn and/or Silo Collapse, under and in connection with Insurance Policies, but not including any claims, Causes of Action, and rights of recovery under Liability Policies. Without limitation, the Silo Burn Insurance Claims include the claims, Causes of Action, and rights of recovery identified on Schedule 1.131.

**1.132 "Silo Burn Creditor Claims"** means any and all Claims asserted by a third party or claimant (not including the Debtors or any assignee or successor of the Debtors) relating to damages or losses arising from the Silo Burn.

**1.133 "Silo Collapse"** means the structural failure of Silo #2 at the Storage Facility, occurring on or about June 4, 2017, and related damage.

**1.134 "Storage Facility"** means the Debtors' port and storage facility located at the Port of Port Arthur in Port Arthur, Texas, at 100 W Lakeshore Drive, Port Arthur, TX 77640.

**1.135 "TPI"** means Debtor Texas Pellets, Inc.

**1.136 "UCC"** means the Official Committee of Unsecured Creditors appointed in the Reorganization Case.

**1.137 "Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.138 "Unsecured Claim"** means any claim that is not an Administrative Claim,

Priority Claim, Secured Claim, or a Claim otherwise specifically classified in another class in this Plan.

## ARTICLE II
## RULES OF INTERPRETATION AND RULES OF CONSTRUCTION

### 2.1    Rules of Interpretation

Any term used in this Plan that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 2.2    Rules of Construction

For purposes of this Plan:

(i)    Whenever from the context it is appropriate, each term whether stated in the singular or the plural shall include both the singular and the plural;

(ii)    The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only a particular portion of the Plan;

(iii)    Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(iv)    The rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and

(v)    As to the timing of any required action under this Plan, the phrase "on the Effective Date" means "on the Effective Date, or as soon as reasonably practicable thereafter."

### 2.3    Time Periods

In computing any time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The following is a designation of the classes under this Plan. Administrative Claims, Priority Tax Claims, Professional Fee Claims and the claims of the DIP Lender have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the claim qualifies within the description of such different Class.

<u>Class 1</u> – Class 1 consists of the Bond Trustee Secured Claim.

<u>Class 2(a), Class 2(b), Class 2(c) and Class 2(d)</u> –

- <u>Class 2(a)</u> consists of any Secured Ad Valorem Tax Claims against the Estate of TPI.

- <u>Class 2(b)</u> consists of any Secured Ad Valorem Tax Claims against the Estate of GPTX.

- <u>Class 2(c)</u> consists of any Secured Claims (other than the Claims of the DIP Lender, the Bond Trustee Secured Claim, and any Secured Ad Valorem Tax Claims) against the Estate of TPI.

- <u>Class 2(d)</u> consists of any Secured Claims (other than the claims of the DIP Lender, the Bond Trustee Secured Claim and any Secured Ad Valorem Tax Claims) against the Estate of GPTX.

<u>Class 3(a) and Class 3(b)</u> –

- <u>Class 3(a)</u> consists of Unsecured Claims and Deficiency Claims against the Estate of TPI.

- <u>Class 3(b)</u> consists of Unsecured Claims and Deficiency Claims against the Estate of GPTX.

<u>Class 4</u> – Class 4 consists of Interests in TPI and GPTX.

## ARTICLE IV
## GENERAL PROVISIONS OF THE PLAN

**4.1**     The Plan provides for the following:

(a)     Sale of the Purchased Assets through the auction and sale process approved by the Bankruptcy Court, under the Bidding Procedures Order, and following a final hearing before the Bankruptcy Court approving the Sale and issuance of the Sale Order;

(b)     Payment on the DIP Loans from Sale Proceeds under the Sale Order, plus the DIP Loan Balance Repayment to be made by the Reorganized Debtors;

(c)     Treatment of Allowed Secured Ad Valorem Tax Claims and other Secured Claims through distribution of Sale Proceeds under the Sale Order and/or such other treatment as permitted under the Bankruptcy Code;

(d)     Treatment of the Bond Trustee Secured Claim through (i) distribution of any remaining Sale Proceeds under the Sale Order (after payment of any outstanding amounts under the DIP Loans, if any), (ii) distribution of any remaining Distribution Reserve Balance after payment of the DIP Loans, and as otherwise set forth in Section 5.1 below and (iii) issuance of Reorganized TPI Equity and Reorganized GPTX Equity;

(e)     Satisfaction and payment of Allowed Administrative Claims from the Distribution Reserve;

(f)     Satisfaction and payment of Allowed Priority Tax Claims from the Distribution Reserve;

(g)     Satisfaction and payment of Allowed Professional Fee Claims from the Distribution Reserve;

(h)     Payment of the 10% Distribution as to certain Allowed Unsecured Claims for which a Class 3 Election is timely and properly made;

(i)     Formation of the Liquidating Trust, which shall receive the Liquidating Trust Assets, and which shall pursue the Liquidating Trust Causes of Action on behalf of Unsecured Claims and Deficiency Claims; and

(j)     The cancellation of Interests.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

**5.1**     <u>**Class 1 – Bond Trustee Secured Claim**</u>

The Bond Trustee Secured Claim is Allowed and is treated in Class 1 of the Plan. The Bond Trustee Secured Claim in Class 1 equals $189,510,697.22 as of the Petition Date. Class 1 is impaired under the Plan, and Class 1 is therefore entitled to vote on the Plan. The Bond Trustee Secured Claim is not subject to any objection, setoff, surcharge, or reduction of any kind and shall be paid and satisfied as provided for herein.

The holder of the Bond Trustee Secured Claim shall receive, in each case following repayment of the DIP Loans, the following:

(i)  on or before the Effective Date, or within two (2) Business Days after receipt by the Debtors and/or Reorganized Debtors, payment in Cash of all remaining Sale Proceeds (less the Distribution Reserve) if any, to the extent not already paid under the provisions of the Sale Order;

(ii)  payment of (x) funds in the Distribution Reserve to the extent such funds are no longer needed as a reserve to protect the interest of those claims set forth in Section 6.1.7(i) hereof, or claimants of Disputed Claims with respect to 10% Distribution payments, regardless of whether such Claims have been resolved by order of the Bankruptcy Court or by consent of the parties, in each case within five (5) business days following the date on which such Claims are consensually resolved or the date of any order of the Bankruptcy Court resolving such claims becomes a Final Order; and (y) all remaining funds in the Distribution Reserve after all required payments to claimants other than the Bond Trustee have been made from the Distribution Reserve under this Plan, and all Disputed Claims subject to payment from the Distribution Reserve are resolved by consent of the parties or by order of the Bankruptcy Court (i.e., the Distribution Reserve Balance), with such payment being made to the Bond Trustee within five (5) business days after the day that all such claims have been resolved by consent of the parties and all orders of the Bankruptcy Court have become Final Orders. With respect to any payments to be made to the Bond Trustee pursuant to this section, such amounts shall be paid first to the DIP Lender on account of the DIP Loans, and second to the holder of the Bond Trustee Secured Claim; and;

(iii)  payment of the Avoidance Action Proceeds from the Distribution Reserve, on or before the Effective Date,

(iv)  payment and transfer of all other funds, cash, and proceeds of the Debtors' (other than the Liquidating Trust Funding Payment and Reorganized Debtor Reserve), which are subject to the Liens of the Bond Trustee after payment in full of the Claims of the DIP Lender;

(v)  100% of the Reorganized TPI Equity, issued as of the Effective Date, subject to the DIP Loan Balance Repayment; and

(vi)  100% of the Reorganized GPTX Equity, issued as of the Effective Date, subject to the DIP Loan Balance Repayment.

The holder of the Bond Trustee Secured Claim shall have an Allowed Deficiency Claim in the amount of $189,510,697.22 less all payments received by the Bond Trustee from the foregoing. The DIP Loan Balance Repayment, and allocation of proceeds between the holder of the Bond Trustee Secured Claim and the Claims of the DIP Lender, shall be consistent with the terms of the DIP and Cash Collateral Order.

### 5.2 Classes 2(a), 2(b), 2(c) and 2(d) – Other Secured Claims

#### 5.2.1 Treatment of Class 2(a) and Class 2(b) Secured Ad Valorem Tax Claims

Class 2(a) consists of any Secured Ad Valorem Tax Claim against TPI. Class 2(b) consists of any Secured Ad Valorem Tax Claim against GPTX. Each of Class 2(a) and Class 2(b) is unimpaired under the Plan, because, as described below, the legal, equitable and contractual rights of the holders of such claims or interests are unaltered by the Plan.

The holders of Allowed Secured Ad Valorem Tax Claims shall receive the following, up to the amount of such Allowed Secured Ad Valorem Tax Claims: (i) the proceeds of any collateral (including, if applicable, Sale Proceeds) securing such Allowed Secured Ad Valorem Tax Claim, up to the amount of such Allowed Secured Ad Valorem Tax Claim, with such payment to be paid from the Distribution Reserve, or (ii) the collateral securing such Allowed Secured Ad Valorem Tax Claim. Class 2(a) and Class 2(b) Claims are subject to Reserved Distributions under Section 9.8 below.

#### 5.2.2 Treatment of Class 2(c) and Class 2(d) Secured Claims

Class 2(c) consists of any Secured Claims against TPI other than the Bond Trustee Secured Claim and/or any Secured Ad Valorem Tax Claim. Class 2(d) consists of any Secured Claims against GPTX other than the Claims of the DIP Lender, the Bond Trustee Secured Claim and/or any Secured Ad Valorem Tax Claim. Each of Class 2(c) and Class 2(d) is unimpaired under the Plan because, as described below, the legal, equitable and contractual rights of the holders of such claims or interests are unaltered by the Plan.

The holders of an Allowed Secured Claim in Class 2(c) or Class 2(d) shall receive either (i) the collateral securing such Allowed Secured Claim; or (ii) the proceeds of any collateral (including, if applicable, Sale Proceeds) securing such Allowed Secured Claim, up to the amount of such Allowed Secured Claim, after satisfaction of all superior Liens including without limitation the Claims of the DIP Lender, the Bond Trustee Secured Claim and any Allowed Secured Ad Valorem Tax Claims. Any remaining claim of the holder of an Allowed Secured Claim in Class 2(c) or Class 2(d) after receipt of collateral or the proceeds from the sale of collateral shall be a Deficiency Claim.

### 5.3 Classes 3(a) and 3(b) – Unsecured Claims and Deficiency Claims

Class 3(a) consists of Unsecured Claims (including without limitation Deficiency Claims) against TPI. Class 3(b) consists of Unsecured Claims (including without limitation Deficiency

Claims) against GPTX. Each of Class 3(a) and 3(b) is impaired under the Plan, and the holders of Class 3(a) Claims and Class 3(b) Claims are therefore entitled to vote on the Plan.

Under the Plan, Class 3(a) and 3(b) Claims shall receive the treatment as set forth in Sections 5.3.1, 5.3.2, 5.3.3 and 5.3.4 below.

**5.3.1**   Election to Receive 10% Distribution

Each holder of an Allowed Class 3(a) and/or Class 3(b) Claim may elect to receive the treatment outlined below in this Section 5.3.1 ("10% Distribution") in full and complete satisfaction, discharge and release of such Allowed Class 3(a) and/or Class 3(b) Claim, as follows:

(i)     Subject to the other provisions of this Section 5.3.1, each holder of an Allowed Class 3(a) and/or Class 3(b) Claim who has properly and timely made the Class 3 Election (as defined below) will receive the 10% Distribution, consisting of a cash distribution equal to ten percent (10%) of its Allowed Class 3(a) and/or Class 3(b) Claim, to be paid in complete and full satisfaction of such Allowed Claim or Claims from the Distribution Reserve within sixty (60) days after the Effective Date; provided, however, holders of Class 3(a) and Class 3(b) Claims that elect the 10% Distribution whose claims are Disputed, shall be paid following resolution of such claims from the Distribution Reserve after consensual resolution by the parties or after any order resolving such Disputed Claim becomes a Final Order.

(ii)    In order to receive the 10% Distribution and treatment under Section 5.3.1(i), the following requirements must be fulfilled as to each such Allowed Class 3(a) and/or Class 3(b) Claim:

(a)     the Allowed Class 3(a) and/or Class 3(b) Claim must be equal to or less than $50,000 or, to the extent such Allowed Class 3(a) and/or Class 3(b) Claim is for an amount greater than $50,000, the holder must irrevocably agree, through the Class 3 Election (as defined below), to reduce the amount of such Allowed Class 3(a) and/or Class 3(b) Claim for purposes of distributions under the Plan to $50,000; and

(b)     the "Class 3 Election" shall be properly and timely made to accept the 10% Distribution in full and complete satisfaction, discharge and release of such Allowed Class 3(a) and/or Class 3(b) Claim, by returning the executed Class 3 Election Form (as defined below) to the Reorganized Debtors at the address indicated on the Class 3 Election Form, to be received by no later than thirty (30) calendar days following the Effective Date.

(iii)   Within five (5) Business Days following the Effective Date, the Reorganized Debtors shall provide notice, by U.S. Mail, of the right to make the Class 3 Election utilizing the form included within the Plan Supplement (the "Class 3

Election Form") to all parties asserting Class 3(a) and/or Class 3(b) Claims, as indicated in the Schedules and/or in Proofs of Claim.

(iv)     Each 10% Distribution on account of an Allowed Class 3(a) and/or Class 3(b) Claim shall be in full and complete satisfaction, discharge and release of such Allowed Class 3(a) and/or Class 3(b) Claim.

### 5.3.2    Distribution of Any Remaining Sale Proceeds and Other Amounts

The following sums shall be paid to the Liquidating Trust for the benefit of holders of Allowed Class 3(a) and Allowed Class 3(b) Claims who have not elected to receive the 10% Distribution: (w) any remaining balance from Sale Proceeds after all amounts required to be paid under the Sale Order and this Plan have been made, including but not limited to payments to the DIP Lender and the Bond Trustee; (x) any amounts remaining in the Distribution Reserve Balance, after all required payments have been made including those to pay in full the amounts owed to the DIP Lender and the Bond Trustee; (y) any proceeds from the sale of Excluded Assets, to the extent such Excluded Assets are not subject to the Liens of the Bond Trustee or another holder of an Allowed Secured Claim, and are not Reorganized Debtor Assets; and (z) the Liquidating Trust Funding Payment (provided, however, the Liquidating Trust Funding Payment first shall be available to the Liquidating Trustee for the costs and expenses of administrating the Liquidating Trust prior to any distribution to holders of Allowed Class 3(a) and Allowed Class 3(b) Claims). For the avoidance of doubt, none of the Reorganized Debtor Assets (including without limitation the Reorganized Debtor Causes of Action, Port Reimbursement Action, Other Indemnity/Reimbursement Actions, Ship Loader Insurance Claims, Silo Burn Insurance Claims, and/or the Insurance Policies relating to and applicable to the Ship Loader Insurance Claims and Silo Burn Insurance Claims), vest in the Liquidating Trust.

Any such payment to the Liquidating Trust under this Section 5.3.2, if made, shall be applied and held by the Liquidating Trustee in an allocation between the respective Estates of TPI and GPTX as determined by the Liquidating Trustee, subject to approval of the Bankruptcy Court. Allowed Class 3(a) Claims shall receive a Pro Rata distribution from the amount allocated for the Estate of TPI and Allowed Class 3(b) Claims shall receive a Pro Rata distribution from the amount allocated for the Estate of GPTX.

Pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may reserve all or part of any payment received from Sale Proceeds (if any) or otherwise, to fund the Liquidating Trust.

### 5.3.3    Liquidating Trust

The Liquidating Trustee shall distribute Available Cash, if any, Pro Rata to holders of Allowed Claims in Class 3(a) and Class 3(b) (who have not elected to receive the 10% Distribution) under the terms of the Liquidating Trust Agreement on one or more Interim Distribution Date(s). Such distributions shall be made to, respectively, (i) such Class 3(a) Claims from recoveries solely attributable to the Estate of TPI and (ii) to such Class 3(b) Claims from recoveries solely attributable to the Estate of GPTX. To the extent recoveries are not solely attributable to either the Estate of TPI or the Estate of GPTX, they shall be distributed Pro Rata

to all holders of both Class 3(a) and Class 3(b) Claims (who have not elected to receive the 10% Distribution). In the event that such Class 3(a) Claims or such Class 3(b) Claims are paid in full and there exists remaining Available Cash as to the respective Debtor, holders of Allowed Claims in such class shall receive interest at the Plan Rate.

### 5.3.4 Reserved Distributions and Disputed Claims

Class 3(a) and Class 3(b) Claims (who have not elected to receive the 10% Distribution) are subject to Reserved Distributions under Section 9.8 below. The Class 3(a) and Class 3(b) Claims set forth on **Schedule 5.3.4** hereto are Disputed; however, the Liquidating Trustee has the right to file objections to all Claims (other than those Claims that are not paid as of the Effective Date or otherwise Allowed) pursuant to Section 9.8 hereof).

### 5.4 **Class 4 – Equity Interests**

Class 4 consists of Interests in TPI and GPTX. Class 4 Interests shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect. Holders of Interests shall receive nothing under the Plan. Class 4 is impaired under the Plan and deemed to reject the Plan.

## ARTICLE VI
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

### 6.1 **Administrative Claims**

#### 6.1.1 DIP Loans

The DIP Lender shall receive the following on account of the DIP Loans, up to the full amount outstanding under the DIP Loans:

(i)     under and in conjunction with the Sale Order, payment of Sale Proceeds as set forth in the Sale Order;

(ii)     payment, on or before the Effective Date, of any remaining Sale Proceeds after funding of the Distribution Reserve;

(iii)     payments from the Distribution Reserve as set forth in Section 5.1(ii) of this Plan;

(iv)     payment, on or before the Effective Date, of any cash or other proceeds of the Estates, to the extent not distributed under this Plan;

(v)     the DIP Loan Balance Repayment; and

(vi)     any other payments provided for the DIP Lender under this Plan.

The allocation of proceeds between the holder of the Bond Trustee Secured Claim and the Claims of the DIP Lender shall be consistent with the terms of the DIP and Cash Collateral Order.

Upon such payment of the DIP Loans being made in full, the DIP Loans shall be considered discharged and satisfied and all Liens, superpriority claims, and other protections under the DIP Loans shall be released. Notwithstanding the foregoing, the Liens, superpriority claims, and other protections granted to the Bond Trustee and the DIP Lender (i) in the Bond Documents and (ii) pursuant to the DIP and Cash Collateral Order (to the extent such Liens, superpriority claims, and other protections relate to use of the Bond Trustee's Cash Collateral as defined in such DIP and Cash Collateral Order), are not released.

### 6.1.2  Other Administrative Claims

Except to the extent that the holder of an Allowed Administrative Claim agrees to different treatment, each holder of an Allowed Administrative Claim (except for Insured Claims, addressed in Section 6.1.3 below) against the Debtors shall be paid the full Allowed amount of such Claim, to be paid on the latest of: (a) the Effective Date, (b) five (5) Business Days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or (c) on such date or dates as provided in the documents (if any) governing the Debtors' obligation to the holder of such Allowed Administrative Claim. Notwithstanding the foregoing, any and all Allowed Administrative Claims as may be outstanding and are Allowed on or after the Effective Date, shall be paid from the Distribution Reserve.

### 6.1.3  Insured Claims

To the extent that any Administrative Claim is an Insured Claim, any recovery or distribution on such Claim shall be limited to recovery or distribution under the applicable Liability Policy.  Holders of Insured Claims shall receive no distributions under the Plan.

Nothing in this section shall constitute a waiver of any Causes of Action against any Person, including the Debtors' insurance carriers; and nothing in this section is intended to, shall, or shall be deemed to, preclude any holder of an Allowed Administrative Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors (under a Liability Policy); provided, however, that the Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors, the existence, primacy and/or scope of available coverage under any alleged applicable policy.  The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any Proof of Claim or the Debtors' rights and defenses to such Proofs of Claim.

The provisions of this Section 6.1.3 apply to (without limitation) Ship Loader Creditor Claims and Silo Burn Creditor Claims.

### 6.1.4 Bar Date For Administrative Claims

Requests for payment of Administrative Claims arising on or before the Effective Date must be Filed no later than the earlier of: (i) any bar date or deadline set by the Bankruptcy Court for some or all Administrative Claims in the Reorganization Case, including without limitation the bar date of March 25, 2019 for certain Administrative Claims set by the Bankruptcy Court's order dated February 20, 2019 [Docket #1047]; or (ii) for all other Administrative Claims, the date that is thirty (30) calendar days after the Effective Date, which date shall be termed the "Administrative Claims Bar Date." Holders of Administrative Claims (including, without limitation, (i) any governmental units asserting claims for federal, state, or local taxes; and (ii) any holders of Ship Loader Creditor Claims or Silo Burn Creditor Claims) that do not File such requests by the Administrative Claims Bar Date shall be forever barred from asserting such claims against the Debtors, Reorganized Debtors, the Liquidating Trust, or any other person or entity, or any of their respective property. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

### 6.1.5 Payment of Statutory Fees

On or before the Effective Date, all outstanding fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid from the Distribution Reserve.

### 6.1.6 Pre-Effective Date Professional Fee Claims

All professionals seeking payment of Professional Fee Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Reorganization Case by the date that is thirty (30) calendar days after the Effective Date (the "Professional Fee Claim Bar Date"), and (ii) be paid from the Distribution Reserve the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Final Order of the Bankruptcy Court, except to the extent that the holder of an Allowed Professional Fee Claim agrees to a different treatment. Notwithstanding the foregoing, in no event shall amounts paid to the holder of a Professional Fee Claim exceed the aggregate amounts provided for such professional in the budgets, as amended and modified, attached to the DIP and Cash Collateral Order, or as further agreed to in any wind down budget agreed to with the Bond Trustee. Notwithstanding any other provisions of this Plan, GP Holding reserves all rights to assert any and all of its claims against professionals (including without limitation Opportune LLP, RPA Advisors, LLC, and Locke Lord LLP), and such objections and claims of GP Holding are reserved and not waived (subject to other provisions of this Plan) under the provisions of Sections 9.21 through 9.25.

### 6.1.7 Payments From the Distribution Reserve

The Distribution Reserve shall be utilized as follows:

(i) On or before the Effective Date, funds from the Distribution Reserve shall be utilized to pay: (a) All Allowed Secured Ad Valorem Tax Claims; (b) all Allowed Administrative Claims as may be outstanding and are Allowed as of the Effective Date; (c) any unpaid outstanding fees payable under 28 U.S.C. § 1930; (d) any unpaid Allowed Priority Tax Claims; and (e) any unpaid Allowed Professional Fee Claims in the amounts Allowed as of the Effective Date. Notwithstanding the foregoing, funds in the Distribution Reserve from the Avoidance Action Proceeds, shall be paid first to the DIP Lender on account of the DIP Loans, and second, to the holder of the Bond Trustee Secured Claim under Section 5.1 of the Plan.

(ii) On the Effective Date, (after payment of the amounts set forth in (i) above), the balance of the Distribution Reserve shall be reserved in a segregated account, to be maintained by the Reorganized Debtors pending the payments set forth in Section 6.1.7 (iii) and (iv) below.

(iii) The following shall be paid from the Distribution Reserve: (a) Allowed Secured Ad Valorem Tax Claims as may be Allowed after the Effective Date, (b) Allowed Professional Fee Claims as provided in Section 6.1.6 as may be Allowed after the Effective Date; (c) Allowed Administrative Claims (including any Allowed Priority Tax Claims and the NAPCO 503(b)(9) Claim to the extent Allowed) as may be Allowed after the Effective Date; and (d) the 10% Distribution.

(iv) Following the payment of (i), (ii) and (iii) above, payment of (x) funds in the Distribution Reserve to the extent such funds are no longer needed as a reserve to protect the interest of those Claims set forth in (i) above, or claimants of Disputed Claims with respect to 10% Distribution payments, regardless of whether such Claims have been resolved by order of the Bankruptcy Court or by consent of the parties, in each case within five (5) business days following the date on which such claims are consensually resolved or the date of any order of the Bankruptcy Court resolving such claims becomes a Final Order; and (y) all remaining funds in the Distribution Reserve after all required payments to claimants other than the Bond Trustee have been made from the Distribution Reserve under this Plan, and all Disputed Claims subject to payment from the Distribution Reserve are resolved by consent of the parties or by order of the Bankruptcy Court (i.e., the Distribution Reserve Balance), with such payment being made to the Bond Trustee within five (5) business days after the day that all such claims have been resolved by consent of the parties and all orders of the Bankruptcy Court have become Final Orders. With respect to any payments to be made to the Bond Trustee pursuant to this section, such amounts shall be paid first to the DIP Lender on account of the DIP Loans, and second to the holder of the Bond Trustee Secured Claim under Section 5.1 of the Plan.

### 6.1.8    Post-Effective Date Professionals

The engagement and payment of attorneys and professionals by the Liquidating Trust shall be governed by the terms of the Liquidating Trust Agreement, and any compensation for such engagement and/or services shall be paid solely from the assets of the Liquidating Trust (which shall not include funds held in the Distribution Reserve). Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee, shall, without any further notice to or action, order, or approval of the Bankruptcy Court, retain and

compensate any attorneys or other professionals at his or her discretion; and upon the Effective Date, any requirement that such attorneys or professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any order entered in the Bankruptcy Case governing professional compensation or other matters shall terminate as of the Effective Date, and the Liquidating Trust may employ and pay any attorneys or professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

From and after the Effective Date, the Reorganized Debtors shall, without any further notice to or action, order, or approval of the Bankruptcy Court, retain and compensate any attorneys or other professionals at their discretion; and upon the Effective Date, any requirement that such attorneys or professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any order entered in the Bankruptcy Case governing professional compensation or other matters shall terminate as of the Effective Date, and the Reorganized Debtors may employ and pay any attorneys or professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 6.1.9   NAPCO 503(b)(9) Claim

The NAPCO 503(b)(9) Claim is a Disputed Administrative Claim, subject to Reserved Distributions under Section 6.1.6 above.

### 6.2   **Allowed Priority Tax Claims**.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, on or before the Effective Date, each holder of such Claim shall be paid in full and in Cash the full amount of such Claim from the Distribution Reserve. Holders of Priority Tax Claims shall not be entitled to receive any payment on account of penalties except as Unsecured Claims. Priority Tax Claims are subject to Reserved Distributions and 6.1.6 above. The Priority Tax Claims set forth on **Schedule 6.2** are Disputed Claims.

### ARTICLE VII
### ACCEPTANCE OR REJECTION OF THE PLAN

### 7.1   **Voting Classes**.

Each holder of a Claim in Classes 1, 3(a) and 3(b) shall be entitled to vote to accept or reject the Plan. The holders of Class 4 claims are deemed to have rejected the Plan.

### 7.2   **Voting Rights of Holders of Disputed Claims and Disputed Interests**

Pursuant to Bankruptcy Rule 3018(a), a Claim that is Disputed will not be counted for purposes of voting on the Plan to the extent it is disputed, unless the Bankruptcy Court enters an order temporarily allowing the Claim for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes is without prejudice to the claimant's or interest holder's right to seek to have its Claim allowed for purposes of distribution under the Plan.

### 7.3   **Acceptance by Impaired Classes**

An impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Claims actually voting in such class have voted to accept the Plan, and (b) more than one-half in number of the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of such Claims actually voting in such class have voted to accept the Plan.

**7.4** **Nonconsensual Confirmation**

In the event that any Class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtors request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

# ARTICLE VIII
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** [Reserved]

**8.2** **Assumption, Assignment and Rejection**

On the Effective Date or as otherwise provided by the Sale Order, except as otherwise provided herein (and subject to Section 8.5 below), **all Executory Contracts or Unexpired Leases of the Debtors, are deemed rejected** in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, **with the exception of:**

(a) those Executory Contracts or Unexpired Leases previously rejected pursuant to previous order of the Bankruptcy Court, as set forth in Schedule 8.2(a) hereto, which are rejected;

(b) the Lease, Easement Agreement, and July 18, 2018 Agreement as defined under that certain *Order Granting Motion to Assume Ground Lease and Easement Agreement Between the Debtors and the Port of Port Arthur Navigation District of Jefferson County, Texas Under Bankruptcy Code § 365 and Fed. R. Bankr. P. 6006* [Docket #907], entered by the Bankruptcy Court on September 26, 2018, which were assumed by the Debtors under that order, and were assumed and assigned to Purchaser through the Sale Order;

(c) the following, which were assumed and assigned to Purchaser through the Sale Order: those Executory Contracts and/or Unexpired Leases identified on the Schedule of Assumed Executory Contracts and Unexpired Leases within the Plan Supplement; and

(d) those Executory Contracts and/or Unexpired Leases, if any, that are the subject of a motion to assume or reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date, which shall be deemed assumed or rejected under further order of the Bankruptcy Court.

The Executory Contracts and Unexpired Leases rejected under this Section 8.2 are the "Rejected Executory Contracts" and "Rejected Unexpired Leases"; while the Executory Contracts and Unexpired Leases assumed under this Section 8.2 are the "Assumed Executory Contracts" and "Assumed Unexpired Leases."

Notwithstanding and without limiting any other provision herein, the Executory Contracts and Unexpired Leases set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases within the Plan Supplement, constitute Rejected Executory Contracts and Rejected Unexpired Leases which are deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute: (1) the rejection of all Rejected Executory Contracts and Rejected Unexpired Leases, effective as of the Effective Date; and (2) approval of the assumption of the Assumed Executory Contracts and Assumed Unexpired Leases, effective as of the Effective Date, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, and approval of assignment of the Assumed Executory Contracts and Assumed Unexpired Leases to Purchaser pursuant to section 365(f) of the Bankruptcy Code. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases within the Plan Supplement at any time through and including 45 days after the Effective Date.

Each Executory Contract and Unexpired Lease assumed and assigned to Purchaser pursuant to this Section 8.2, shall vest in and be fully enforceable by Purchaser as of the Effective Date in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

**8.3**       **Rejection Claims**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed within thirty (30) calendar days after the later of the Effective Date or the effective date of rejection (the "Rejection Damages Bar Date"). **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, the Liquidating Trust, or their respective property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court.** All Allowed Claims arising from the rejection of the Debtors' Rejected Executory Contracts or Rejected Unexpired Leases shall be classified as Unsecured Claims and in Class 3(a) or Class 3(b), as applicable, and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed under the Plan.

**8.4** **Cure of Defaults for Assumed Executory Contracts and Assumed Unexpired Leases**

Any monetary defaults under each Assumed Executory Contract or Assumed Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash by Purchaser on or before the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Assumed Executory Contracts or Assumed Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or the Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Assumed Executory Contract or Assumed Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made by the Purchaser following the entry of a Final Order resolving the dispute and approving the assumption.

No later than seven (7) days before the objection deadline for filing objections to the Plan, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, the Debtors will provide for the Plan Supplement (which shall contain notices of proposed assumption and proposed cure amounts) to be sent to applicable third parties and counterparties to each Assumed Executory Contract or Assumed Unexpired Lease.

Any objections to assumption and/or assignments of Assumed Executory Contracts and Assumed Unexpired Leases are governed by the Bankruptcy Court's February 7, 2017 *Order Granting Motion to Approve Assumption and Assignment Procedures for Certain Executory Contracts And Unexpired Leases* [Docket #328]

Any counterparty to a Assumed Executory Contract or Assumed Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount.

If any counterparty to a Assumed Executory Contract or Assumed Unexpired Lease timely objects to the proposed assumption or cure amount, then such objection shall be heard either at the Confirmation Hearing or at any other date determined by the Bankruptcy Court or agreed to between the Debtors and the objecting counterparty. Notwithstanding the foregoing, such an objection does not have to be finally resolved for the Bankruptcy Court to confirm the Plan, and any such objection will not otherwise impact the effectiveness of the Confirmation Order, except that any Assumed Executory Contract or Assumed Unexpired Lease subject to such objection cannot be assumed and assigned under Bankruptcy Code § 365 until and/or if that objection is finally resolved.

Assumption of any Assumed Executory Contract or Assumed Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Assumed Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Assumed Unexpired

Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding any other provisions of this Section 8.4, all outstanding Claims asserted by the Port that were timely filed under the procedure under Paragraphs 12-15 of the Sale Order are preserved and will be resolved under the procedure set forth therein.

**8.5     Insurance Policies**

The Debtors do not believe that the Insurance Policies issued to, or insurance agreements entered into by the Debtors prior to the Petition Date, constitute Executory Contracts. To the extent that such Insurance Policies or agreements are considered to be Executory Contracts, then, notwithstanding anything contained in this Plan to the contrary, this Plan will constitute a motion to assume such Insurance Policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption, pursuant to § 365(a) of the Bankruptcy Code. For avoidance of doubt, without limitation, the Insurance Policies relating to and applicable to the Ship Loader Insurance Claims and Silo Burn Insurance Claims are retained by, and vest in, the Reorganized Debtors, as provided for under Section 9.4.1 hereof.

Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such Insurance Policy or agreement.

**8.6     Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Assumed Executory Contract or Assumed Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Assumed Executory Contract or Assumed Unexpired Lease, and all Assumed Executory Contracts and Assumed Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**8.7     Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, or the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or

Unexpired Lease or that any of the Reorganized Debtors or the Liquidating Trust has any liability thereunder.

**8.8**     <u>Nonoccurrence of Effective Date</u>

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE IX
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**9.1**     <u>Date Of Effective Date / Effective Date Conditions</u>

The "<u>Effective Date</u>" of the Plan shall be the day mutually agreed upon between the Debtors and the Bond Trustee, which shall be no later than three (3) Business Days after all of the following conditions (Sections 9.1.1 through 9.1.4, inclusive) have been either satisfied or waived by the Debtors and the Bond Trustee:

    **9.1.1**     The Sale pursuant to the Sale Order shall have Closed;

    **9.1.2**     The Distribution Reserve shall have been funded from Sale Proceeds on or prior to the Effective Date; <u>and</u>,

    **9.1.3**     The Confirmation Order, in form and substance satisfactory to the Debtors and the Bond Trustee, shall have become a Final Order.

**9.2**     <u>Notice of Occurrence of Effective Date</u>

Debtors shall File with the Bankruptcy Court a notice of the occurrence of the Effective Date within two (2) Business Days of the occurrence of the Effective Date which notice shall state: (1) that the foregoing conditions to the occurrence of the Effective Date have occurred or been waived; (2) the date of the Effective Date, and (3) that the Effective Date has occurred on and as of said date.

From and after the Effective Date, any Person who desires notice of any pleading or document filed in the Reorganization Case, or of any hearing in the Bankruptcy Court, or of any matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on the Reorganized Debtors and upon the Liquidating Trustee; provided however, the United States Trustee and the Bond Trustee shall be deemed to have requested post-confirmation notice.

**9.3**     <u>Distribution Record Date.</u>

Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Debtors (before the Effective Date) or the Liquidating Trustee (after the

Effective Date), the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. Neither the Debtors, nor the Liquidating Trustee, shall have any obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Debtors and/or Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the entity that is listed on the Proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtors as applicable, as of the Distribution Record Date.

### 9.4 Vesting of Assets / Issuance of Reorganized TPI Equity and Reorganized GPTX Equity / DIP Loan Balance Repayment

#### 9.4.1 Vesting of Assets

The property of the Debtors' Estates not transferred pursuant to the Sale Order (including without limitation the Excluded Assets) shall vest as follows on the Effective Date, subject to existing Liens, Claims, charges, or other encumbrances (except as discharged and/or released under the Plan or the Confirmation Order), and subject to required disbursements of funds under the terms of this Plan:

(i) Except as expressly set forth in Section 9.4.1(ii) below, all assets of the Debtors shall vest in, and be retained by the Reorganized Debtors (the "Reorganized Debtor Assets"), including but not limited to:

    (a)    the following Causes of Action of each respective Reorganized Debtor (the "Reorganized Debtor Causes of Action"): the Ship Loader Insurance Claims, the Silo Burn Insurance Claims, the Port Reimbursement Action, the Other Indemnity/Reimbursement Actions, and the Sale Proceeds Action;

    (b)    the Insurance Policies relating to and applicable to the Ship Loader Insurance Claims and Silo Burn Insurance Claims; and

    (c)    the Reorganized Debtor Reserve.

The Distribution Reserve shall be administered by the Reorganized Debtors for the purposes set forth in Section 6.1.7 of this Plan.

(ii) The following property is vested in, and transferred and assigned to, the Liquidating Trust (the "Liquidating Trust Assets"):

    (a)    The following Causes of Action (the "Liquidating Trust Causes of Action"): the D&O Action, the Port Dredging Action, and any and all Avoidance Actions and other Causes of Action of the Debtors and/or

Reorganized Debtors that are <u>not</u> Reorganized Debtor Causes of Action, Purchased Assets, or expressly released or discharged in this Plan; <u>and</u>

(b)     the Liquidating Trust Funding Payment.

On and after the Effective Date, except as otherwise provided in the Plan, and subject to the Reorganized Organizational Documents, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Interests, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all Reorganized Debtor Causes of Action, Ship Loader Insurance Claims, Silo Burn Insurance Claims, Port Reimbursement Action, Other Indemnity/Reimbursement Actions, and/or Sale Proceeds Action. Subject to the Reorganized Organizational Documents, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Reorganized Debtor Causes of Action, Ship Loader Insurance Claims, Silo Burn Insurance Claims, Port Reimbursement Action, Other Indemnity/Reimbursement Actions, and/or Sale Proceeds Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court. The Distribution Reserve shall be administered by the Reorganized Debtors for the purposes set forth in Section 6.1.7 of this Plan and under the requirements of this Plan.

Notwithstanding the foregoing or any other provision of this Plan, the Sale Proceeds Action shall be retained in, and shall remain vested in, the Reorganized Debtors, with all Sale Proceeds to be distributed and paid as required under the Sale Order and this Plan.

All rights to object to and oppose Claims and Disputed Claims, as set forth under Section 9.8.1 of this Plan (including without limitation the rights to assert defenses and claims with respect to such Claims and Disputed Claims), are expressly reserved and vested as set forth in Section 9.8.1, and shall be pursued and exercised as set forth under Section 9.8.1.

### **9.4.2**     Issuance of Reorganized TPI Equity and Reorganized GTPX Equity

The issuance of the Reorganized TPI Equity and Reorganized GPTX Equity by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the holders of Claims or Interests. The Reorganized Debtors shall be authorized to issue shares, units or equity interests (as the case may be based on how the Reorganized TPI Equity and/or Reorganized GPTX Equity is denominated and the identity of the Reorganized Debtor issuing such shares, units, or equity interests) of Reorganized TPI Equity and Reorganized GPTX Equity required to be issued under the Plan and pursuant to their Reorganized Organizational Documents. On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall issue all documents required to be issued pursuant to the Plan.

All of the shares, units, or equity interests (as the case may be based on how the Reorganized TPI Equity and/or Reorganized GPTX Equity is denominated) of Reorganized TPI Equity and/or Reorganized GPTX Equity issued pursuant to the Plan shall be duly authorized,

validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article V hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance.

### 9.4.3    DIP Loan Balance Repayment

Pursuant to the DIP Loan Balance Repayment Documentation as defined below, after the Effective Date, the Reorganized Debtors shall remit to the DIP Lender the following (the "<u>DIP Loan Balance Repayment</u>"): any and all proceeds and revenues received, including but not limited to those resulting from or relating to the Ship Loader Insurance Claims and Silo Burn Insurance Claims, which proceeds shall be remitted to the DIP Lender as such proceeds are received and realized after the Effective Date, in a cumulative amount not to exceed the outstanding balance of the DIP Loans after the application of all payments made under Section 6.1.1 hereof.

As of the Effective Date, the Reorganized Debtors shall execute documentation, agreed to by the holder of the Bond Trustee Secured Claim and the DIP Lender, governing the terms of the DIP Loan Balance Repayment to be made after the Effective Date (the "<u>DIP Loan Balance Repayment Documentation</u>")

### 9.5    **Cancellation of Existing Securities and Agreements**

[Intentionally Omitted.]

### 9.6    **Corporate Action**

Subject to the approval of the Bond Trustee, each of the following matters shall be deemed authorized, approved and ratified without the need for any further corporate action or without any further action by the Debtors, Reorganized Debtors, the holders of any equity interests in either, and/or the officers, directors, or managers of the Debtors or the Reorganized Debtors: (1) selection of the Reorganized Officers and Directors; (2) the issuance and distribution of the Reorganized TPI Equity and/or Reorganized GPTX Equity to the Bond Trustee; (3) adoption of the Reorganized Organizational Documents; (4) all other matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Debtors or the Reorganized Debtors, whether taken prior to or as of the Effective Date; and (5) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).

On or immediately prior to the Effective Date, the Reorganized Organizational Documents shall be automatically adopted by the applicable Reorganized Debtors.  After the Effective Date, the Reorganized Debtors may amend and restate their respective Reorganized Organizational Documents, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the Reorganized Organizational Documents.

**9.7** **Corporate Existence**

**9.7.1** <u>Reorganized Debtors</u>

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, or corporation, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or in the Reorganized Organizational Documents, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). After the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject to applicable law and the Reorganized Organizational Documents.

**9.7.2** <u>Officers and Directors of Reorganized Debtors</u>

Upon the Effective Date, the existing boards of managers and/or directors of the Debtors shall be dissolved without any further action required on the part of such entities, their members, their managers, or their officers, and any and all remaining officers, members or managers of the Debtors shall be dismissed without any further action required on their part. For avoidance of doubt and without limiting the foregoing, any agreement, undertaking, or commitment under the Bankruptcy Court's *Order Granting Motion for Entry of Order Authorizing Payment of Compensation to German Pellets Holding USA, Inc. for Management Services* [Docket #782] is terminated as of the Effective Date.

The Reorganized Officers and Directors shall be appointed in accordance with this Plan, the Reorganized Organizational Documents, and other constituent documents of each Reorganized Debtor. The initial Reorganized Officers and Directors are set forth in the Plan Supplement. Each such director, member, manager and officer shall serve from and after the Effective Date pursuant to the terms of the Reorganized Organizational Documents and other constituent documents of the Reorganized Debtors.

The members, managers, and officers of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of the Plan.

The authorizations and approvals contemplated by this Section 9.7.1 shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

**9.8** **Objections to Claims/Administrative Claims/Interests**.

**9.8.1** <u>Objections to Claims or Interests; Prosecution of Disputed Claims or Disputed Interests</u>.

Except for the Claims of the DIP Lender, the Bond Trustee Secured Claim and the Bond Trustee's Deficiency Claim which are each an Allowed Claim and not subject to objection, setoff, surcharge, or reduction of any kind, the Debtors (before the Effective Date) and the Liquidating Trustee (after the Effective Date), shall have the exclusive right to object to the allowance, amount or classification of Claims or Interests asserted in the Reorganization Case, and such objections may be litigated to Final Order by the Liquidating Trustee who shall succeed to the rights and defenses to such claims possessed by Debtors or Reorganized Debtors; except that after the Effective Date, the Reorganized Debtors shall remain the real party in interest (and shall have the right) to oppose or object to any and all Disputed Administrative Claims including without limitation Administrative Claims asserted by the Port, NAPCO (including without limitation the right to assert all NAPCO Defenses), Louisiana Pellets, Inc., German Pellets Louisiana, LLC, and/or GP Holding, or any other claimant, as well as any Secured Ad Valorem Tax Claims, other Secured Claims, Priority Tax Claims, and/or Professional Fee Claims. As to all such Disputed Administrative Claims, Secured Ad Valorem Tax Claims, other Secured Claims, Priority Tax Claims, and/or Professional Fee Claims, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to such Claims immediately before the Effective Date. In addition, the Bond Trustee may also object to Administrative Claims, Secured Ad Valorem Tax Claims, other Secured Claims, Priority Tax Claims, and/or Professional Fee Claims.

Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims or Interests shall be filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court. Such extensions may be obtained by the Liquidating Trustee upon *ex parte* motion. **Except as otherwise provided herein, all Proofs of Claim Filed after the applicable Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtors and/or Reorganized Debtors, without the need for any objection or any further notice to or action, order, or approval of the Bankruptcy Court.**

### 9.8.2    Estimation of Disputed Claims

Except for Allowed Claims (including the Claims of the DIP Lender, the Bond Trustee Secured Claim and the Bond Trustee's Deficiency Claim, which are not subject to objections, setoff, surcharge, or reduction of any kind, and shall be paid and discharged as provided herein), the Debtors (before the Effective Date) and the Liquidating Trustee (after the Effective Date) may, at any time, request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

### 9.8.3    No Distribution on Account of Disputed Claims

Except for Allowed Claims (including the Claims of the DIP Lender, the Bond Trustee Secured Claim and the Bond Trustee's Deficiency Claim, which are not subject to objections,

setoff, surcharge, or reduction of any kind, and shall be paid and discharged as provided herein), no distribution under this Plan shall be made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim or Interest (including but not limited any Disputed, contingent or unliquidated Administrative Claim, Secured Ad Valorem Tax Claim, or Priority Tax Claim) until the entire Claim or Interest becomes an Allowed Claim or an Allowed Interest.

As to holders of Disputed Unsecured Claims who have timely executed the Class 3 Election Form electing the Class 3 Election, no 10% Distribution shall be made with respect to such Claim until and unless the Claim becomes an Allowed Claim, and pending Allowance or Disallowance, the corresponding amount of such 10% Distribution shall be held in the Distribution Reserve.

As to holders of Disputed Unsecured Claims who do not timely execute the Class 3 Election Form electing the Class 3 Election, the Liquidating Trustee shall set aside or reserve in a segregated bank account at a federally insured financial institution (maintained by the Liquidating Trustee) a portion of the consideration payable to the holders of Allowed Claims to be held in the Disputed Claims reserve for Unsecured Claims in an amount sufficient to pay to the holders of all Disputed Unsecured Claims the full distributions they may be entitled to if their respective Claims were Allowed in full (such reserved amounts being the "Reserved Distributions"). To the extent that a Disputed Unsecured Claim ultimately is Disallowed or Allowed in an amount less than the amount of the reserves for such Disputed Unsecured Claim, any resulting surplus in the reserve shall be transferred from the reserve to the Liquidating Trust.

### 9.9 No Substantive Consolidation

Although the Plan is presented as a joint plan, the Plan does not provide for substantive consolidation of Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Allowed Claims against one Debtor will be satisfied solely from the cash and recoveries of the Liquidating Trust attributable to that Estate. Under the terms of the Liquidating Trust Agreement, each holder of an Allowed Unsecured Claim shall receive distributions from the Liquidating Trust assets that are attributable to the Estate against which such Allowed Unsecured Claim is asserted, on a Pro Rata basis.

Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed to constitute an admission that any one or all the Debtors is subject to or liable for any Claims against any other Debtors. A Claim against multiple Debtors will be treated as a separate Claim against each Debtor's Estate for all purposes including, but not limited to, voting and distribution; provided however, that no Unsecured Claim will receive value in excess of 100% of the Allowed amount of such Claim.

### 9.10 Creation of Liquidating Trust

On the Effective Date, the Liquidating Trust shall be created. The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order. The terms of the employment of the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement and the Confirmation Order. On the Effective Date, the Debtors and Reorganized

Debtors shall transfer and assign to the Liquidating Trust the Liquidating Trust Assets assigned under Section 9.4.1 hereof. All transfers to the Liquidating Trust shall be subject to all Liens, claims, interests and encumbrances, including but not limited to the Liens of the DIP Lender and the Bond Trustee. Except as specifically set forth herein, holders of Allowed Unsecured Claims shall look solely to the Liquidating Trust for the satisfaction of their Claims. For federal income tax purposes, the transfer of the identified assets to the Liquidating Trust will be deemed to be a transfer to the holders of Allowed Claims (who are the Liquidating Trust beneficiaries), followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

### 9.11    General Powers of the Liquidating Trustee

Subject to any express limitations, and subject to the provisions and requirements of Section 9.12.2 below, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order and the Liquidating Trust Agreement. Subject to the provisions and requirements of Section 9.12.2 below, the Liquidating Trustee is authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

**9.11.1** Reserve all or part of any Sale Proceeds transferred to the Liquidating Trustee (other than the Distribution Reserve which shall be treated as set forth herein) under the provisions of this Plan to fund the Liquidating Trust;

**9.11.2** Make all Distributions contemplated under the Plan;

**9.11.3** Consistent with maintaining the value and liquidating the residual assets of the Liquidating Trust, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof;

**9.11.4** Supervise and administer the resolution, settlement and payment of Claims and Interests and the distributions to the holders of Allowed Claims and Allowed Interests in accordance with this Plan;

**9.11.5** Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Liquidating Trust or this Plan;

**9.11.6** Transfer to the holder of any Allowed Secured Claim the Collateral (if part of the Excluded Assets) securing that Claim, or the proceeds from the sale of such Collateral to be paid in the same order of priority as were the Liens on such Collateral prior to the sale;

**9.11.7** Abandon any other of the assets of the Liquidating Trust if the Liquidating Trustee concludes that such assets are of no material benefit to the Creditors; provided, however, that the Liquidating Trustee will not abandon assets with a value in excess of $10,000 without first obtaining the written consent of the Liquidating Trust Committee and the Bond Trustee;

**9.11.8** Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any Legal Proceeding, proceeding involving the Chapter 11 Cases, administrative proceeding, arbitrative proceeding or other non-judicial proceeding and litigate claims on behalf of the Liquidating Trust, including without limitation all state and federal causes of action or any other litigation which constitute an asset of the Liquidating Trust and pursue to settlement or judgment such actions;

**9.11.9** Act in the name of or in the place of the Liquidating Trust in any action before the Bankruptcy Court or any other judicial or administrative body;

**9.11.10** Take actions and exercise remedies against any entity that owes money to the Liquidating Trust, including without limitation, the remedies available under any deed of trust, security agreement, contract, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

**9.11.11** File and prosecute any Liquidating Trust Causes of Action;

**9.11.12** Select and employ such professionals, consultants, agents or employees as the Liquidating Trustee deems necessary to assist in the administration of the affairs of the Liquidating Trust and compensate such persons subject to the compensation procedures of Section 9.15;

**9.11.13** Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan;

**9.11.14** Propose any amendment, modification or supplement to this Plan or the Liquidating Trust's governance documents;

**9.11.15** File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

**9.11.16** Receive, conserve and manage the assets of the Liquidating Trust;

**9.11.17** Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

**9.11.18** Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Trust;

**9.11.19** Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust;

**9.11.20** Enforce all provisions of this Plan;

**9.11.21**      Protect, perfect and defend the title to any of the assets of the Liquidating Trust and enforce any bonds, mortgages or other obligations or Liens owned by the Liquidating Trust;

**9.11.22**      Carry insurance coverage, including insurance to protect the Liquidating Trust and the Liquidating Trustee against claims brought against the Liquidating Trust or the Liquidating Trustee acting within his capacity with the Liquidating Trust, in such amounts as he/she may deem advisable;

**9.11.23**      Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust (including without limitation the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust;

**9.11.24**      Cause to be prepared a quarterly report (to be filed with the Bankruptcy Court within twenty (20) days after the end of the relevant report preparation period) setting out (i) receipts and disbursements during the prior quarter, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, and (iv) a summary listing of the status of the resolution of objections to Claims and Liquidating Trust Causes of Action;

**9.11.25**      Maintain records and books of account relating to the Liquidating Trust's assets, the management thereof and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust;

**9.11.26**      Maintain records and books of account relating to all Distributions contemplated under the Plan; and

**9.11.27**      Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of this Plan.

**9.12      Limitations on the Powers of the Liquidating Trustee**

**9.12.1** Notwithstanding anything in the Plan or the Liquidating Trust Agreement to the contrary, the Liquidating Trust shall not receive an assignment of any of the assets of the Debtors and/or Reorganized Debtors other than the assets assigned under Section 9.4.1(ii) hereof. Without limitation, the Liquidating Trust and Liquidating Trustee shall have no power or authority over any Reorganized Debtor Assets.

**9.12.2** The powers and duties under Section 9.11 and under all other provisions of the Plan and Liquidating Trust Agreement shall be subject to the following: Any and all settlements or dispositions of Liquidating Trust Causes of Action (for matters in which the amount sought or amount at issue under such Liquidating Trust Cause of Action, or amount of the Claim for the underlying Retained Cause of Action based on the Debtors' books and records, exceeds $50,000.00) shall be subject to review and consent by the Bond Trustee. In the event that, after review, the Bond Trustee does not consent to the proposed settlement or disposition, the Liquidating Trust shall not pursue such settlement or disposition.

**9.13      Resignation/Removal of the Liquidating Trustee**

The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; or (ii) the appointment of a successor Liquidating Trustee. The Liquidating Trustee may only be removed by order of the Bankruptcy Court for cause pursuant to a motion filed by a member of the Liquidating Trust Committee or the Bond Trustee.

### 9.14    Appointment of Successor Liquidating Trustee

In the event of the death, resignation or removal of the Liquidating Trustee, the Liquidating Trust Committee (subject to the consent of the Bond Trustee) shall designate a successor Liquidating Trustee. Any successor Liquidating Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

### 9.15    Compensation Procedures

The Liquidating Trust and all professionals employed by the Liquidating Trustee shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis; provided, however, that all such fees and expenses must be consistent with the fee and compensation requirements set forth in the Liquidating Trust Agreement, and shall be paid solely from the assets of the Liquidating Trust.

### 9.16    Effect of Confirmation

Upon the occurrence of the Effective Date, 11 U.S.C. § 1141 and this Plan shall control the rights of creditors and interest holders against the Debtors.

### 9.17    Execution of Documents to Implement the Plan

The Debtors, on behalf of themselves and the Reorganized Debtors, shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

### 9.18    Retention of Jurisdiction

After Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

**9.18.1** To allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

**9.18.2**  To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

**9.18.3**  To determine the extent, validity, and priority of any Lien asserted against property of the Reorganized Debtors, Liquidating Trust, or property of the Estate;

**9.18.4**  To construe and to take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, and the Confirmation Order and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Reorganization Case on or before the Effective Date with respect to any person or entity;

**9.18.5**  To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

**9.18.6**  To determine any other request for payment of administrative expenses;

**9.18.7**  To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan and the Confirmation Order;

**9.18.8**  To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases Filed before the Effective Date and the allowance of any claims resulting therefrom;

**9.18.9**  To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the Reorganization Case whether before, on, or after the Effective Date;

**9.18.10**  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**9.18.11**  To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

**9.18.12**  Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan and the Confirmation Order or the execution or implementation by any person or entity;

**9.18.13**  To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

**9.18.14**  To hear and determine any matters relating to commissions, charges or fees claimed in connection with prepetition foreclosure actions involving the Debtors;

**9.18.15**     To consider and resolve any objections to the compensation of the Liquidating Trustee or other professionals retained by the Liquidating Trust;

**9.18.16**     To enter a final decree closing the Reorganization Case; and

**9.18.17**     To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules.

### 9.19    Successors and Assigns

The rights, benefits, and obligations of any person, entity, or individual named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such person, entity, or individual.

### 9.20    Guarantor Liability

Nothing in this Plan shall be construed so as to alter the liability or liabilities of any guarantor of a Claim, or altering the rights of a holder of a Claim against such guarantor.

### 9.21    Discharge of Debtors and Injunction

The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature, whatsoever, including, any interest accrued on such claims from and after the Petition Date against the Debtors, the Reorganized Debtors, or any of their assets or properties. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date: (i) the Debtors and Reorganized Debtors shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all Claims and Interests, including Claims and Interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not: (a) a proof of claim or proof of interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based on such debt or interest is allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of a Claim or Interest based on such debt or interest has accepted the Plan; and (ii) all persons, entities, and holders of Claims or Interests shall be precluded from asserting against the Debtors, the Reorganized Debtors, the Purchaser, their successors, or their respective assets or properties any other or future claims or interests based upon any act or omission, transaction, or other activity of any kind or nature relating to the Debtors or the Reorganized Debtors that occurred before the Effective Date. Notwithstanding the foregoing, nothing in this paragraph shall prevent the DIP Lender, the Bond Trustee and/or Purchaser, and their respective successors, heirs, executors, administrators, or assigns from enforcing their respective rights and remedies under the Plan, or Asset Purchase Agreement.

**Except as otherwise provided in the Plan and Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all persons who have held, currently hold or may hold a debt,**

**Claim or Interest are permanently enjoined from taking any of the following actions on account of any such discharge of debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, their successors, heirs, executors, administrators, or assigns or their respective properties; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties if such party's claim is treated as required pursuant to this Plan; (3) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties; (4) asserting any setoff, right of subrogation, surcharge, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.**

### 9.22 Release of the Debtors' Estates' Claims

**AS OF THE EFFECTIVE DATE, AND SUBJECT TO ITS OCCURRENCE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, ANY AND ALL CAUSES OF ACTION OF THE DEBTORS, DEBTORS IN POSSESSION, THE DEBTORS' ESTATES AND THE REORGANIZED DEBTORS AGAINST ANY OF THE RELEASED PARTIES, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE SHALL BE FOREVER RELEASED AND DISCHARGED. THE FOREGOING RELEASES, HOWEVER, SHALL NOT (1) WAIVE ANY DEFENSES TO ANY CLAIMS ASSERTED AGAINST THE DEBTORS BY ANY RELEASED PARTIES EXCEPT TO THE EXTENT SUCH CLAIMS HAVE BEEN SPECIFICALLY ALLOWED IN THE PLAN OR BY A FINAL ORDER OF THE BANKRUPTCY COURT, (2) RELEASE ANY CLAIMS OR CAUSES OF ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY, OR (3) WAIVE OR RELEASE ANY NAPCO DEFENSES.**

### 9.23 Release by Holders of Claims

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM WHO HAS VOTED TO ACCEPT THE PLAN SHALL BE DEEMED TO HAVE UNCONDITIONALLY RELEASED THE RELEASED PARTIES, FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN**

LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ON ACCOUNT OF ANY RELATIONSHIP WITH THE DEBTORS OR ON ACCOUNT OF ANY CLAIM, EXCEPT FOR (I) WITH RESPECT TO THE REORGANIZED DEBTORS, CLAIMS WHICH ARE OR BECOME ALLOWED CLAIMS AND ARE TO BE PAID AS PROVIDED PURSUANT TO THE PLAN, AND (II) ANY CLAIMS OR CAUSES OF ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY.

### 9.24  No Liability for Claims

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE ASSET PURCHASE AGREEMENT NEITHER THE DEBTORS, NOR THE RELEASED PARTIES, WILL, PURSUANT TO THIS PLAN OR OTHERWISE, HAVE ANY RESPONSIBILITIES FOR ANY LIABILITIES OR OBLIGATIONS OF THE DEBTORS RELATING TO OR ARISING OUT OF THE OPERATIONS OF OR ASSETS OF THE DEBTORS, WHETHER ARISING PRIOR TO, OR RESULTING FROM ACTIONS, EVENTS, OR CIRCUMSTANCES OCCURRING OR EXISTING AT ANY TIME PRIOR TO THE EFFECTIVE DATE AND FURTHER NONE OF THE RELEASED PARTIES SHALL HAVE ANY SUCCESSOR OR TRANSFEREE LIABILITY OF ANY KIND OR CHARACTER, FOR ANY CLAIMS EXCEPT THAT THE REORGANIZED DEBTORS SHALL HAVE THE OBLIGATIONS SPECIFICALLY AND EXPRESSLY PROVIDED IN THIS PLAN AND THE PURCHASER SHALL HAVE THE OBLIGATIONS SPECIFICALLY AND EXPRESSLY PROVIDED IN THE ASSET PURCHASE AGREEMENT.

### 9.25  Exculpation and Limitation Of Liability

NONE OF THE DEBTORS, THE DIP LENDER, THE BOND TRUSTEE, THE PURCHASER, OR THE RELEASED PARTIES SHALL HAVE OR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE NEGOTIATION OF THIS PLAN, THE GOOD FAITH SOLICITATION OF THE PLAN IN ACCORDANCE WITH SECTION 1125(E) OF THE BANKRUPTCY CODE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE CONSUMMATION OF THIS PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THE PLAN, THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES, INCLUDING BUT NOT LIMITED TO THE SALE, OR THE DEBTORS' ESTATES (EXCLUDING CAUSES OF ACTION BASED ON FRAUD, GROSS NEGLIGENCE, RECKLESS, WILLFUL, OR WANTON MISCONDUCT).

### 9.26  Amendment, Modification, and Severability

This Plan may be amended or modified before the Effective Date by the Debtors to the extent provided by section 1127 of the Bankruptcy Code.

The Debtors reserve the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code to the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code without the need to resolicit consents, and the Debtors reserve the right to sever any provisions that the Bankruptcy Court finds objectionable.

### 9.27    Delivery Of Distributions And Deliverable Or Unclaimed Distributions

#### 9.27.1  Delivery of Distributions in General

Except as provided below for holders of undeliverable distributions, distribution to holders of Allowed Claims shall be distributed by mail as follows:

(i)      At the addresses set forth on the respective proofs of claims of such holders;

(i)      At the addresses set forth in any written notices of address, changes delivered to the Liquidating Trustee after the date of any related proof of claim; or

(ii)      At the address reflected on the Schedules if no proof of claim or proof of interest is filed and the Liquidating Trustee has not received a written notice of change of address.

#### 9.27.2  Undeliverable Distributions

Any holder of an Allowed Claim which does not assert a claim for an undeliverable distribution held by the Liquidating Trustee within ninety (90) days after the delivery of any distribution shall no longer have any claim to or interest in such undeliverable distribution. After the expiration of ninety (90) days following the date a distribution is made, holders of Allowed Claims entitled to returned distributions shall no longer be entitled thereto, and such Allowed Claims shall be deemed Disallowed without further Bankruptcy Court order. Thereafter, any unclaimed distributions with respect to the Allowed Claims shall revert to and become the property of the Liquidating Trust.

No provision contained in this Section or elsewhere in the Plan shall be interpreted to require the Liquidating Trustee to attempt to locate any such person.

In the event any payment to a holder of a Claim under the Plan remains unclaimed for a period of ninety (90) days after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder and any such distributions retained by the Liquidating Trust.

Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

### 9.28  Retention of Claims and Causes of Action

Except for the Released Claims and as otherwise provided in this Plan, neither the Debtors, the Reorganized Debtors, the DIP Lender, the Bond Trustee, the Liquidating Trust, nor the Purchaser (to the extent applicable) waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Liquidating Trust Causes of Action, Reorganized Debtor Causes of Action, or other Causes of Action that constitute property of the Debtors: (a) whether or not such Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not any such Causes of Action are currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to any such Causes of Action Filed a proof of Claim in the Reorganization Case, Filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against this Plan, or received or retained any consideration under this Plan. Except for the Released Claims and as otherwise provided in this Plan, without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Causes of Action (which expressly do not include the Released Claims), or potential Causes of Action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtors', the Reorganized Debtors', or the Liquidating Trustee's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Causes of Action that the Debtors, the Reorganized Debtors, or Liquidating Trust have or may have as of or after the Effective Date.

**Without limitation, the following specific Causes of Action are expressly reserved and retained:**

**(a)  The Reorganized Debtor Causes of Action, including without limitation the Ship Loader Insurance Claims, the Silo Burn Insurance Claims, the Port Reimbursement Action, the Other Indemnity/Reimbursement Actions, and the Sale Proceeds Action, and all Causes of Action set forth on Schedule 9.28(a), are expressly reserved, and are vested in and retained by, the Reorganized Debtors.**

**(b)  The Liquidating Trust Causes of Action, including without limitation the D&O Action, the Port Dredging Action, and any and all Avoidance Actions and other Causes of Action of the Debtors and/or Reorganized Debtors that are not Reorganized Debtor Causes of Action, Purchased Assets, or expressly released or discharged in this Plan, and all Causes of Action set forth on Schedule 9.28(b), are expressly reserved, and are vested in, and transferred and assigned to, the Liquidating Trust.**

**All rights to object to and oppose Claims and Disputed Claims, as set forth under Section 9.8.1 of this Plan (including without limitation the rights to assert defenses and claims with respect to such Claims and Disputed Claims), are expressly reserved and vested as set forth in Section 9.8.1, and shall be pursued and exercised as set forth under Section 9.8.1.**

Except for the Released Claims and as otherwise provided in this Plan, the Debtors and Reorganized Debtors (and where applicable, the Purchaser, and/or the Bond Trustee) expressly reserve all Reorganized Debtor Causes of Action and Liquidating Trust Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Debtors, Reorganized Debtors, and the Liquidating Trustee on behalf of the Liquidating Trust expressly reserve the right to pursue or adopt Causes of Action (which expressly do not include the Released Claims) that are alleged in any lawsuits in which the Debtors are a defendant or an interested party, against any Person or Governmental Entity, including the plaintiffs or co-defendants in such lawsuits.

Any person or governmental entity to whom the Debtors have incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtors, or who has received money or property from the Debtors, or who has transacted business with the Debtors, or who has leased equipment or property from or to the Debtors should assume that such obligation, receipt, transfer or transaction, except for the Released Claims and as otherwise provided in this Plan, may be reviewed by the Debtors, Reorganized Debtors or the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, whether or not: (a) such person or governmental unit has Filed a Proof of Claim or Interest against the Debtors in the Reorganization Case; (b) such person's or governmental unit's Proof of Claim or Interest has been objected to by the Debtors; (c) such person's or governmental unit's Proof of Claim or Interest was included in the Debtors' Schedules; or (d) such person's or governmental unit's scheduled Claim or Interest has been objected to by the Debtors or has been identified by the Debtors as contingent, unliquidated or disputed.

### 9.29    Substitution of Liquidating Trustee For Debtors

In all pending Liquidating Trust Causes of Action, on and after the Effective Date, the Liquidating Trustee shall be substituted as party in interest in place of the Debtors in all such proceedings and Causes of Action.

### ARTICLE X
### COMPROMISES AND SETTLEMENTS

### 10.1    Compromises and Settlements

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the

49

provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

### 11.1 Withdrawal of Plan

Upon failure to consummate the transactions contemplated by the Asset Purchase Agreement, the Debtors reserve the right to withdraw this Plan at any time prior to the Confirmation Date. If the Debtors withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtors, the Estates or any other person, or to prejudice in any manner the rights of the Debtors, the Estates or any person in any further legal proceedings involving the Debtors.

### 11.2 Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

### 11.3 Conflict

Except as set forth in the Plan and as set forth below, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any agreement or order (other than the Confirmation Order or the Sale Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 11.4 Severability

The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtors and such severance would constitute a permissible modification of the Plan pursuant to § 1127 of the Bankruptcy Code.

### 11.5 Notices Under the Plan

Notices, requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent, addressed to:

The Debtors:

C. Davin Boldissar
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Fax: (504) 681-5211

The Reorganized Debtors:

C. Davin Boldissar
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5111
Fax: (504) 681-5211

Liquidating Trust/ Liquidating Trustee:
[*See* Plan Supplement for notice address(es).]

### 11.6 Withholding Taxes/Setoffs

The Reorganized Debtors and the Liquidating Trustee shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to Allowed Claims for wages of any kind. Except for the Released Claims and as otherwise provided in this Plan, the Reorganized Debtors and the Liquidating Trustee upon order of the Bankruptcy Court may, but shall not be required to, set off or recoup against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtors or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim the Debtors may have against such holder.

### 11.7 Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays arising before the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, or such later date as provided under applicable law.

### 11.8 Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer (including the filing and/or recording of any and all documents, Liens, security interests or other documents in connection with or related to the Bonds, or the assumption or modification thereof pursuant to this Plan) or of cancellation and/or releases of any Liens or security interests will not be subject to any stamp tax or similar tax to the fullest extent authorized by section 1146(a) of the Bankruptcy Code, or otherwise.

### 11.9    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan. Any agreements, documents, and instruments executed in connection with the Plan shall be construed in accordance with the governing law provisions contained in such documents.

### 11.10   Dissolution of UCC

On the Effective Date, the UCC shall dissolve automatically, and its members shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Reorganization Case.

### 11.11   Exhibits and Headings

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein. All headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

Dated: February 22, 2019 (Immaterial Modifications as of August 30, 2019)

**Texas Pellets, Inc.**                        **German Pellets Texas, LLC**

By: _____            By: _____

_____           _____
Chip Cummins                              Chip Cummins
Its:   Chief Restructuring Officer        Its:   Chief Restructuring Officer
Date: August 30, 2019 _____      Date: August 30, 2019 _____

81300825v.1

## SCHEDULE 1.12[1]

| Defendant | Adversary Case Number | Demand Amount | Status |
|-----------|-----------------------|---------------|--------|
| North American Procurement Company | 16-09003 | $2,660,365.11 | Pending |
| DKFM Switzerland AG | 18-09002 | $1,100,000.00 | Pending |
| Jasper Oil, Inc. | 18-09010 | $131,855.58 | Pending |
| C & I Oil Company, Inc. | 18-09012 | $31,483.34 | Pending |
| North American Biomass | 18-09014 | $125,119.40 | Judgment Issued by Bankruptcy Court |
| GreCon, Inc. | 18-09016 | $26,265.40 | Pending |
| Southern Tire Mart, LLC | 18-09017 | $24,486.44 | Pending |
| City of Woodville | 18-09023 | $24,858.43 | Pending |
| Bates-Williamette, LLC | 18-09024 | $19,320.00 | Pending |

In addition to the foregoing, all of the Debtors' and Estates' rights and claims for recovery and/or avoidance of preferential and/or fraudulent transfers subject to avoidance under sections 547, 548, and/or 550 of the Bankruptcy Code, 11 U.S.C. §§ 547, 548, and 550 against the following parties: SSA Gulf, Inc. / SSA Marine; Smart's Truck & Trailer Equipment, Inc.; RAB of Louisiana, LLC / RAB of Louisiana, Inc.; Lakeway Tire & Service; Louisiana Workers' Compensation Corporation; California Pellet Mill / CPM Europe B.V.; Kice Industries, Inc.; and German Pellets Holding USA, Inc.

---

[1] For actions with an Adversary case number, these are filed before the Bankruptcy Court and are pending actions with the listed case number.

# SCHEDULE 1.71

## COMMERCIAL GENERAL LIABILITY

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 01-01-2018/19 | G28202222-002 | $1M/occ; $4M/agg | Westchester Surplus Lines Ins. Co. | | OCC |
| 01-01-2017/18 | G28202222-001 | $1M/occ; $4M/agg | Westchester Surplus Lines Ins. Co. | | OCC |
| 01-01-2016/17 | 263-82-65 | $1M/occ; $2M/agg | Illinois National Ins. Co. (AIG) | | OCC |
| 01-01-2015/16 | 600-81-59 | $1M/occ; $2M/agg | Illinois National Ins. Co. (AIG) | | OCC |
| 07-01-2013 to 01-01-15 | 459-41-48 | $1M/occ; $2M/agg | Illinois National Ins. Co. (AIG) | | OCC |
| 11-21-11 to 10-1-13 | AR5361023 | $1M/occ; $2M/agg | Colony Ins. Co. | | OCC |
| 11-21-11 to 11-21-12 | 1200700247 | $1M/occ; $2M/agg | Catlin Specialty Ins. Co. | | OCC - Woodville only |
| 11-21-12 to 11-21-13 | 1200700433 | $1M/occ; $2M/agg | Catlin Specialty Ins. Co. | | OCC - Woodville only |

## UMBRELLA / EXCESS

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 03-31-2018/19 | EXC2274783 | $10M xs $15M | Great Am. Assurance Co. | | OCC |
| 03-31-2018/19 | 23627403 | $15M xs CGL, Auto, EL | Lexington Ins. Co. | | OCC |
| 01-01-2017 to 03-31-2018 | ZUP-41M70858-17-NF | $25M xs CGL, Auto, EL, EBL | The Travelers Indem. Co. | | OCC |
| 5-11-2012 to 10-1-2013 | G24279911001 | $10M xs $10M | Illinois Union Ins. Co. (ACE) | | OCC |
| 11-21-2011 to 9-1-2013 | AR5461118 | $10M xs CGL | Colony Insuarnce Co. | | OCC |

## POLLUTION

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 05-11-2018/2019 | PRE E317258 00 | $5,000,000 | Great Am. E&S Ins. Co. | | Claims-Made |
| 05-11-2015/2018 | PLS18947808 | $5,000,000 | AIG Specialty Ins. Co. | | |

## DIRECTORS & OFFICERS

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 1-1-2017 to 7-1-2019 | DOP10010503300 | $5,000,000 | Endurance Am. Ins. Co. | | Claims-Made |

## EMPLOYMENT PRACTICES LIABILITY

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 12-16-2018/19 | 8224-9115 | $1,000,000 | Federal Insurance Co. | | Claims-Made |
| 12-16-2017/18 | 8224-9115 | $1,000,000 | Federal Insurance Co. | | Claims-Made |
| 12-16-2016/17 | 8224-9115 | $1,000,000 | Federal Insurance Co. | | Claims-Made |
| 12-16-2015/16 | 8224-9115 | $1,000,000 | Federal Insurance Co. | | Claims-Made |

## INLAND MARINE (CONTRACTORS EQUIPMENT)

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 07-01-2018/19 | 22 MS NL2070 | $2,461,178 | Hartford Fire Ins. Co. | | OCC |
| 07-01-2017/18 | 22 MS NL2070 | $2,461,178 | Hartford Fire Ins. Co. | | OCC |
| 07-01-2016/17 | 22 MS NL2070 | $2,191,285 | Hartford Fire Ins. Co. | | OCC |

## BUSINESS AUTO (INCLUDING LIABILITY)

| PERIOD | NUMBER | LIMITS | | INSURER | TYPE (OCC/CM) |
|---|---|---|---|---|---|
| 01-05-2018/19 | 01 APM 015655-01 | $1,000,000 | Redwood Fire and Cas. Ins. Co. | | OCC |
| 08-19-2017/18 | 02 TRM 024963-01 | $1,000,000 | Berkshire Hathaway Homestate Ins. C | | OCC |
| 08-19-2016/17 | 02 APM 010445-01 | $1,000,000 | Berkshire Hathaway Homestate Ins. C | | OCC |

* TYPE (OCC/CM) - "OCC" is an occurrence-based policy, which is usually triggered by events occurring during the policy period. "CM" is a claims-made policy, which is triggered by claims that are made during the policy period for events that occurred in the past.

<u>**SCHEDULE 1.128**</u>

All claims, Causes of Action, and rights of recovery under insurance policies issued by the insurance carriers listed below, for policy periods in effect from March 31, 2016 to March 31, 2017, relating to or arising from the Ship Loader Fire:

Evanston Insurance Co. Policy No. MKLV11XP004465

Maxum Indemnity Co. Policy No. MSP-6028445-01

Steadfast Insurance Co. Policy No. XPP019245200

Aspen Specialty Insurance Co. Policy No. PXAGDNP16

James River Insurance Co. Policy No. 00067501-1

Partner Re Insurance Co. Policy No. F580793

Swiss Re Insurance Co. Policy No. NAP200112400

Ironshore Insurance Co. Policy No. 002711200

Lloyds Syndicate BO595 Policy No. NODC43449016

Lloyds Syndicate BO595 Policy No. NODC43463016

## <u>SCHEDULE 1.131</u>

All claims, Causes of Action, and rights of recovery under insurance policies issued by the insurance carriers listed below, for policy periods in effect from March 31, 2017 to March 31, 2018, relating to or arising from the Silo Burn and/or Silo Collapse:

Evanston Insurance Co. Policy No. MKLV11XPO004465

Steadfast Insurance Co. Policy No. XPP019245201

Aspen Specialty Insurance Co. Policy No. PXAH9NL17

Scottsdale Insurance Co. Policy No. AJS0000515

Hallmark Specialty Insurance Co. Policy No. 73PRX17EEDB

Everest Indemnity Insurance Co. Policy No. CA3X001115171

Lloyds Novae 2007 Syndicate Policy No. 93PRX17EEDC

Ironshore Insurance Co. Policy No. 002711201

Maxum Indemnity Co. Policy No. MSP-6028445-02

Lloyds Syndicate BO595 Policy No. NODC44467017

Lloyds Syndicate BO595 Policy No. NODC 44468017

## SCHEDULE 5.3.4

### Disputed Class 3(a) and Class 3(b) Claims

| Debtor | Claimant | Amount | |
|--------|----------|--------|---|
| GPTX | ADM Germany GmbH | $1,631,166.83 | Disputed |
| GPTX | AIG Property Casualty Inc. (dba Illinois National Insurance) | $0.00 / $62,604.75 | Disputed / Satisfied |
| GPTX | Ardent Mills, LLC | $308,890.00 | Disputed |
| GPTX | Cogbill Construction LLC | $44,712.24 | Disputed |
| GPTX | Fastenal Company | $269.16 | Disputed |
| GPTX | German Pellets Holding USA, Inc | $1,391,314.30 | Disputed |
| GPTX | German Pellets Louisiana LLC | $838,718.04 | Disputed |
| GPTX | NES Rentals - Nederland | $40,399.22 | Disputed |
| GPTX | Patterson Wood Products, Inc. | $10,750.18 | Disputed |
| GPTX | Pelletaire, LLC | $18,801.61 | Disputed |
| GPTX | Red Ball Oxygen | $392.61 | Disputed |
| GPTX | Smart's Truck and Trailer | $9,053.26 | Disputed |
| GPTX | Teal Sales, Inc. / TSI Responsible Innovation | $259,843.19 | Disputed |
| GPTX | Texas Comptroller of Public Accounts | | Disputed / Withdrawn |
| GPTX | Texas Comptroller of Public Accounts (Franchise Tax) | | Disputed / Withdrawn |
| GPTX | TSI Responsible Innovation | $259,843.19 | Disputed |
| GPTX | Tyler County | $81,190.85 | Disputed / Satisfied / Disallowed |
| GPTX | Tyler County | $192.39 | Disputed / Satisfied / Disallowed |
| GPTX | UPS Supply Chain Solutions | $5.89 | Disputed |
| GPTX | VFS Leasing Co. | $0.00 | Disputed / Satisfied / Withdrawn |
| GPTX | Winstead PC | $30,000.00 | Disputed |
| GPTX | Yhana Abdullah | $1,000,000.00 | Disputed |
| GPTX | Texas Mutual Insurance Company | $24,227.90 | Disputed |
| TPI | AIG Property Casualty Inc. (dba Illinois National Insurance) | $0.00 | Disputed |
| TPI | Cogbill Construction LLC | $44,712.24 | Disputed |
| TPI | CPM Europe B.V. | $116,622.00 | Disputed |
| TPI | Cummings Westlake, LLC | $8,999.99 | Disputed |
| TPI | FedEx Corporate Services Inc. | $4,329.65 | Disputed |
| TPI | German Pellets GmbH | $10,421,258.85 | Disputed |
| TPI | German Pellets Holding USA, Inc | $1,391,314.30 | Disputed |
| TPI | German Pellets Louisiana LLC | $838,718.04 | Disputed |
| TPI | Janet Hemphill | $0.00 | Disputed |
| TPI | Jefferson County | $92,898.75 | Disputed / Satisfied |
| TPI | Keenan Dancy | $0.00 | Disputed |

| Debtor | Claimant | Amount | |
|--------|----------|--------|---|
| TPI | MFC Commodities GmbH | $7,292,151.75 | Disputed |
| TPI | Montgomery County | $1,558.71 / $632.15 | Disputed |
| TPI | North American Procurement Company | $2,660,365.11 | Disputed |
| TPI | Port of Port Arthur Navigation District | | Disputed / Satisfied |
| TPI | Specialized Maintenance Services | $11,640.00 | Disputed |
| TPI | Tyler County | $13,779.81 | Disputed / Satisfied / Disallowed |
| TPI | Tyler County | $192.39 | Disputed / Satisfied / Disallowed |
| TPI | Tyler County | $14,301.87 | Disputed / Satisfied |
| TPI | Wanda Howard | $0.00 | Disputed |
| TPI | Wells Fargo Insurance Services USA, | $0.00 | Disputed / Satisfied |
| TPI | Wingfoot Commercial Tire Systems (dba Goodyear Commercial Tire and Service Centers) | $9,428.31 | Disputed |
| TPI | WINSTEAD PC | $0.00 | Disputed |

**<u>SCHEDULE 6.2</u>**

**Disputed Priority Tax Claims**


Any and all Claims asserted as Priority Tax Claims, if any.

As of the date of this Plan, no known Priority Tax Claims are outstanding other than resolved, withdrawn, or Disallowed Claims.

## **SCHEDULE 8.2(a)**

(1) All contracts and agreements with Louisiana Pellets, Inc. / German Pellets Louisiana, LLC, including without limitation Port Arthur Facility Option Agreement and Storage Handling Agreement; and

(2) All other contracts and agreements rejected through one or more orders entered by the Bankruptcy Court in the Reorganization Case.

## SCHEDULE 9.28(a)

Without limitation, the following Causes of Action are expressly reserved, and are vested in and retained by, the Reorganized Debtors:

(1) The Ship Loader Insurance Claims;

(2) The Silo Burn Insurance Claims;

(3) The Port Reimbursement Action;

(4) The Other Indemnity/Reimbursement Actions; and

(5) The Sale Proceeds Action; and

(6) All Causes of Action of the Debtors other than those set forth in Schedule 9.28(b) below

# <u>SCHEDULE 9.28(b)</u>

Without limitation, the following Causes of Action are expressly reserved, and are vested in and transferred and assigned to, the Liquidating Trust:

(1) All Avoidance Actions, including without limitation those set forth on Schedule 1.12 (but not including those Avoidance Actions that are Purchased Assets);

(2) The D&O Action, and any and all Causes of Action under §§ 542, 544, 545, 547, 548, 550, 551, 553, or other sections of the Bankruptcy Code, and/or under other similar federal or state statute, case and/or common law (including, e.g., and without limitation, constructive and intentional fraud and fraudulent transfer) against German Pellets GmbH, German Pellets Holding USA, Inc., GP Lumber, LLC, IPBG Pellets Beteiligungs GmbH, Woodville Lumber II, LLC, Woodville Lumber, Inc., All officers, directors, and or managers of GPTX between 2012 and the Petition Date, including without limitation Peter Leibold, Anne Leibold and/or Michael Leibold, and/or All officers, directors, and or managers of TPI between 2012 and the Petition Date, including without limitation Peter Leibold, Anne Leibold and/or Michael Leibold; and

(3) The Port Dredging Action.