**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
(LUFKIN DIVISION)**

| | |
|---|---|
| In re: ) | |
| ) | **JOINTLY ADMINISTERED** |
| TEXAS PELLETS, INC.[1] ) | under Case No. 16-90126 |
| ) | |
| Debtors. ) | Chapter 11 |
| ) | |

**REORGANIZED DEBTORS' OBJECTION AND RESPONSE TO
PORT OF PORT ARTHUR NAVIGATION DISTRICT OF JEFFERSON COUNTY,
TEXAS' MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE
CLAIM PURSUANT TO 11 USC SECTION 503
[Relates to Docket # 1291]**

TEXAS PELLETS, INC. and GERMAN PELLETS TEXAS, LLC (respectively, "TPI" and "GPTX", and collectively, the "Reorganized Debtors") file this *Objection and Response* (the "Objection") to *the Port of Port Arthur Navigation District of Jefferson County, Texas' Motion for Allowance and Payment of Administrative Claim Pursuant to 11 U.S.C. Section 503* [Docket #1291] (the "Administrative Claim") filed in the above-styled, jointly administered bankruptcy cases (the "Bankruptcy Cases") on November 7, 2019 by Port of Port Arthur Navigation District of Jefferson County, Texas (the "Port"). Accordingly, the Reorganized Debtors state as follows:

### I. FORMAL OBJECTION

1. The Reorganized Debtors admit the allegations in Paragraphs 1 and 2 of the Administrative Claim (but deny that any recovery is owing to the Port and deny that any claim should be allowed).

2. With respect to the allegations in Paragraph 3 of the Administrative Claim, the

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are Texas Pellets, Inc. (3478) and German Pellets Texas, LLC (9084). The corporate headquarters and service address for the jointly-administered is: 164 CR 1040, Woodville, TX 75979.

1

Reorganized Debtors admit the allegations but note a typographical error in the name of Texas Pellets, Inc.

3. With respect to the allegations in Paragraph 4 of the Administrative Claim, the Reorganized Debtors state that the Port is a Texas local government entity;[2] and is on information and belief the owner of the underlying real property (the "Property") in connection with the Reorganized Debtors' former storage facility ("Storage Facility") under the February 28, 2012 *Ground Lease*, as amended ("Lease") and July 25, 2012 Easement Agreement, as amended ("Easement") between the Port, as lessor, and TPI as lessee (with the Reorganized Debtors having owned certain improvements and other property as set forth in the Lease and elsewhere), and any remaining allegations are denied.

4. With respect to the allegations in Paragraph 5 of the Administrative Claim, the Reorganized Debtors state that the Lease speaks for itself and is the best evidence of its contents, and any remaining allegations are denied.

5. With respect to the allegations in Paragraph 6 of the Administrative Claim, the Reorganized Debtors state that the Lease and referenced amendments speak for themselves and are the best evidence of their contents, and any remaining allegations are denied.

6. With respect to the allegations in Paragraph 7 of the Administrative Claim, the Reorganized Debtors state that the Easement and referenced amendment speak for themselves and are the best evidence of their contents, and any remaining allegations are denied.

7. With respect to the allegations contained in the first sentence of Paragraph 8 of the Administrative Claim, the Reorganized Debtors state that the referenced Order speaks for itself and is the best evidence of its contents, and any remaining allegations are denied. With

---

[2] On information and belief, the Port is a navigation district created pursuant to Acts of the 58th Legislative, Regular Session, 1964, Chapter 197, as amended.

2
81734800v.1

respect to the allegations contained in the second sentence of Paragraph 8 of the Administrative Claim, such allegations are legal or other allegations for which no response is required, such allegations are denied.

8. With respect to the allegations contained in the first sentence of Paragraph 9 of the Administrative Claim, the Reorganized Debtors state that the Reorganized Debtors loaded pellets at the Storage Facility on respectively, May 19-24, and June 4-11, 2019; any remaining allegations are denied, and the Reorganized Debtors specifically deny any liability under the referenced invoices. With respect to the allegations contained in the second sentence of Paragraph 9 of the Administrative Claim, the Reorganized Debtors state that the referenced invoices speak for themselves and are the best evidence of their contents, and any remaining allegations are denied, and the Reorganized Debtors specifically deny any liability under the referenced invoices. With respect to the allegations contained in the third sentence of Paragraph 9 of the Administrative Claim, the Reorganized Debtors state that the operations conducted on respectively, May 19-24, and June 4 to June 11, 2019, were conducted under the Lease and pursuant to the contractual arrangement between the parties, and any remaining allegations are denied. The allegations contained in the fourth sentence of Paragraph 9 of the Administrative Claim are denied.

9. The allegations contained in Paragraph 10 of the Administrative Claim are requests for relief and/or legal allegations to which no response is required; all such allegations are denied.

10. The Reorganized Debtors deny the allegations contained in the WHEREFORE closing paragraph of the Administrative Claim and further deny any liability or responsibility for any such "Claim" or amounts referenced.

11. In further response to the Administrative Claim, the Reorganized Debtors deny any fault or liability in connection with any claim under the invoices attached to the Administrative Claim. The Port cites no provision of the Lease, but to the extent applicable, any liability or responsibility under the Lease is also denied.

12. In further response, and in an abundance of caution, the Reorganized Debtors assert any and all affirmative defenses as may be available, including without limitation any defense and/or right under the Lease and Easement (all of which are expressly reserved), as well as the defenses and affirmative defenses[3] as follows: (i) failure to mitigate damages; (ii) estoppel; (iii) no breach of duty / no breach of any standard of care; (iv) no acts of Reorganized Debtors (or for which Reorganized Debtors were responsible) caused damages; (v) failure of cause; (vi) failure of consent and/or consideration; (vii) waiver and/or acquiescence; (viii) extinguishment of obligations; (ix) settlement and release; (x) res judicata, accord and satisfaction, and/or collateral estoppel; (xi) intervening and/or superseding causes as the proximate and/or sole cause of any injuries and damages; (xii) the fault or negligence of others and/or unclean hands; (xiii) comparative negligence or fault; (xiv) claims arising from acts or conditions which were not foreseeable; (xv) allocation of fault including to parties that have settled, are immune, or are discharged; (xvi) limitations and claims as being time barred; (xvii) failure to state a claim upon which relief can be granted as against the Reorganized Debtors; (xviii) force majeure and/or acts of God; (xix) laches; (xx) any breach of Lease or contract (which is denied) is excused by claimant's own breach or breach of others; and/or (xxi) prematurity.[4]

---

[3] Inclusion of any such matter or defense herein is not an admission as to the burden of proof.

[4] Any and all such matters are pled in an abundance of caution, and without acknowledgment or admission that such matters may or may not be applicable. The Debtors reserve the right to amend and/or supplement the foregoing matters to assert such other claims and/or affirmative defenses as may become known.

81734800v.1

## III. FURTHER RESPONSE

13. Further responding, and without limiting the defenses as set forth above, the Reorganized Debtors specifically assert setoff of obligations (and/or recoupment) due to significant sums being owed under the Lease to the Reorganized Debtors.[5] Any such amounts sought by the Port are under the Lease, and arise from the same transaction. The obligations and/or claims are held by the same parties, in the same right or capacity, and all arise postpetition (after April 30, 2016).

14. Amounts are due (in an amount exceeding $400,000) from the Port under the Lease based on the Port's failure to maintain the vessel berth and adequately dredge the navigation channel immediately adjacent to the Storage Facility during 2018 and 2019.[6]

15. At the Storage Facility, the Reorganized Debtors stored all their manufactured pellets for eventual loading on to vessels—the means by which the Reorganized Debtors' products reached the international marketplace. The Storage Facility consists of a five-silo wood pellet Storage Facility and shipping terminal. At the Storage Facility, the Reorganized Debtors gathered their product (wood pellets), shipped via truck from the Manufacturing Facility and other sources. The product was then loaded onto ocean going shipping vessels ("Vessels") docked at the shipping terminal. In order to dock at the Storage Facility's shipping terminal, and utilize the docking features of the Storage Facility, it is necessary for the vessels

---

[5] The Lease and Easement were assumed under Section 365 of the Bankruptcy Code by TPI under the Court's Order dated September 26, 2018 [Docket #907], and assigned to the Purchaser through the Sale Order. However, under the Sale Order and Asset Purchase Agreement (as defined under the Sale Order), all of the Reorganized Debtors' claims and causes of action against the Port accruing before June 18, 2019 (including without limitation claims and causes of action under the Lease) were retained by the Reorganized Debtors. Under Sections 9.4.1, 1.92, and 1.93 of the Plan, the Reorganized Debtors retain (and are vested with) this cause of action.

[6] The Liquidating Trust maintains a similar claim for matters arising in 2016. All rights are reserved.

81734800v.1

to utilize the vessel berth ("Vessel Berth") and navigation channel immediately adjacent to the Storage Facility ("Navigation Channel"). The Vessel Berth utilized at the Storage Facility is also known as "Berth 4" at the Port's facilities.

16. Under Special Stipulation No. 5 and Paragraph 9 of the Lease, the Port committed and agreed to maintain the Vessel Berth and dredge the Navigation Channel and allow Vessels to fully utilize, at all times, the Storage Facility; and further, the Port agreed to indemnify the Reorganized Debtors for charges and expenses incurred by the Reorganized Debtors as a result of the Port's construction activities and its operations at the Port property. During 2019, the Port failed to honor these obligations.

17. Commencing in early 2019, the Port began a major construction project, unrelated to the Storage Facility (but having significant impacts on the Reorganized Debtors' operations, as set forth below), known as the "Berth 5 Expansion Project." In the Berth 5 Expansion Project, the Port's contractors removed and modified hardware, mooring infrastructure, and other components of the dock and Vessel Berth, such that vessels larger than 550 feet in length could not be properly moored at the Vessel Berth. (Exhibit D, Special Stipulation No. 5 of the Lease states that the Reorganized Debtors are entitled to utilize the Vessel Berth for vessels up to 738 feet in length).

18. Once the Reorganized Debtors were informed that the Berth 5 Expansion Project would impact loading of vessels at the Storage Facility, the Reorganized Debtors endeavored to work with their customer, the vessel agents, and representatives of the Port to facilitate loading in the most effective and efficient manner possible. The Reorganized Debtors were able to load three vessels during 2019 at the Storage Facility and Vessel Berth, but such loading required significant additional costs. Specifically, tugboats were required. In addition, the vessel

loading took longer than it would have if the Vessel Berth had been in the condition contractually required under the Lease. The Debtors estimate the costs – payable by the Port – to exceed $400,000.00, plus attorney fees under the Lease. Investigation continues and all rights are reserved.[7]

19. The Reorganized Debtors reserve the right, under separate motion, to request that Lease-related matters (including other claims asserted by the Port) be consolidated to promote administrative convenience, fairness, and judicial efficiency.

### III. RESERVATION OF RIGHTS

20. The Reorganized Debtors reserve all rights and arguments with respect to the Administrative Claim, including the rights to supplement this Objection and oppose the Administrative Claim on any ground at any hearing or hearings.

WHEREFORE the Reorganized Debtors request: 1) that this Objection be considered, 2) that the Administrative Claim be denied, and 3) that the Reorganized Debtors be granted all other proper relief under law or at equity.

Dated: November 27, 2019.	Respectfully submitted,

*/s/ C. Davin Boldissar*
C. Davin Boldissar (La. #29094)
*(admitted pro hac vice)*
Bradley C. Knapp (Tex. #24060101)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 681-5211
dboldissar@lockelord.com
bknapp@lockelord.com

---

[7] All affirmative claims (through a separate lawsuit, adversary proceeding, or other action) are reserved, and will be pursued separately. The Reorganized Debtors have made demand on the Port for these amounts, but the Port has generally denied liability.

81734800v.1

-and-

W. Steven Bryant
Texas Bar. No. 24027413
Federal I.D. No. 32913
Locke Lord LLP
600 Congress Avenue, St. 2200
Austin, Texas 78701
Telephone: (512) 305-4726
Fax: (713) 229-2536
sbryant@lockelord.com

**COUNSEL FOR TEXAS PELLETS, INC. AND GERMAN PELLETS TEXAS, LLC**

## CERTIFICATE OF SERVICE

I hereby caused a true and correct copy of the foregoing *Objection* to be served on November 27, 2019 upon all parties identified in the attached Post-Confirmation Service List by electronic case filing for those parties receiving notice via the Court's Electronic Case Filing system, and on all other parties not receiving ECF notice via first-class United States mail, postage prepaid.

 */s/ C. Davin Boldissar*
C. Davin Boldissar